1  EUGENE G. IREDALE: SBN 75292
2  JULIA YOO:  SBN 231163
   GRACE JUN, SBN 287973
3  IREDALE & YOO, APC
4  105 West F Street, Fourth Floor
   San Diego, CA 92101-6036
5  TEL: (619) 233-1525   FAX: (619) 233-3221

6
   R. STAN MORRIS
7  CARTEE & MORRIS, LLC
   2325 Henry Street
8  Guntersville, AL 35976

9
10 Attorneys for Plaintiffs, the Estate of Bernard Victorianne,
   Bernard Victorianne II and Zelda Victorianne

11
12                  UNITED STATES DISTRICT COURT
           IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA
13

14 THE ESTATE OF BERNARD              ) Case no. 14-cv-02170-WQH-BLM
   VICTORIANNE by and through its    )
15 successor-in-interest ZELDA        )
   VICTORIANNE, BERNARD               )
16 VICTORIANNE II, and ZELDA          )
                                      ) PLAINTIFFS' REPLY TO
17 VICTORIANNE,                       ) DEFENDANTS' OPPOSITION TO
                                      ) PLAINTIFFS' *EX PARTE* MOTION TO
18        Plaintiffs,                 ) AMEND THE COMPLAINT
                                      )
19 v.                                 )
                                      )
20 COUNTY OF SAN DIEGO,               )
21 WILLIAM GORE, and DOES 1 - 50,     )
                                      )
22                                    )
                                      )
23        Defendants.                 )
   _____
24

25

26

27

28

**BACKGROUND OF THE CASE**

Decedent Bernard Victorianne died on September 18, 2012, face down and naked on his jail cell, after deputies repeatedly ignored his desperate pleas for help; placed him in administrative segregation; failed to transport him to the hospital for his appointment; and left him to die. Plaintiffs Zelda Victorianne and Bernard Victorianne II, the parents of Bernard Victorianne, discovered the circumstances of their son's death almost two years after Bernard's death, on September 5, 2014. On September 11, 2014, Zelda and Bernard Victorianne II, filed the Notice of Claim with the County of San Diego. Plaintiffs filed the original Complaint on September 11, 2014. On September 25, 2014, the County of San Diego rejected the claims as to Zelda and Bernard Victorianne II. The County rejected the claim as to the Estate of Bernard Victorianne on October 24, 2014.

At the time of Bernard's death, his parents were told that Bernard had died of drug overdose. Defendants provided no additional information. There is no mechanism in the County of San Diego in which family members can obtain investigation reports of custodial deaths. San Diego considers the Internal Affairs materials to be "confidential internal affairs investigations and information pertaining to remedial measures taken as a result of investigations; non-discoverable and inadmissible information pertaining to disciplinary recommendations; disclosure of privileged information pertaining to Defendant's right of self-critical analysis; and/or disclosure of training, personnel and similar files." (Exhibit A, County of San Diego's Response to Request for Production of

Documents in *Lacy v. County of San Diego*, Response to Request No. 1)

Even if there had been a procedure by which Plaintiffs could obtain information regarding the circumstances of Bernard's death, they would have received nothing, because 1) deputies lied about their actions and inaction; and 2) the investigators failed or refused to conduct an investigation regarding the deputies' actions. (Exhibit B, Findings of Citizens' Law Enforcement Review Board (CLERB))  Officials from the County affirmatively misled and deterred Plaintiffs from timely claim presentation by lying about the circumstances of Bernard's death during the investigation; failing or ordering other deputies not to take witness statements; failing to disclose critical facts to the Medical Examiner's office regarding Bernard's death, resulting in an incomplete report by the ME's office; and failing to disclose any facts to Bernard's family regarding his death.

Until September 5, 2014, when CLERB made public their initial findings of the misconduct of San Diego Sheriff deputies, Plaintiffs Zelda and Bernard Victorianne II only knew that their son died of drug overdose.  They had no way of knowing or suspecting that 1) deputies and staff failed to conduct appropriate medical screening, diagnosis, testing, and treatment when they were aware that Bernard had ingested drugs; 2) Bernard had told deputies and jail staff that his insides were on fire; 3) Bernard had begged for help for five days and that he had told deputies and jail staff that something was burning his insides; 4) deputies and medical staff failed to properly communicate regarding the health and welfare of Bernard; 5) deputies and staff punished Bernard by placing him in administrative

2

segregation ("ad seg") in retaliation for Bernard's repeated complaints about his pain and medical problems; 6) deputies failed to conduct adequate safety and welfare checks on Bernard, who was placed in ad seg instead of medical observation; 7) deputies and staff failed to transport Bernard to a hospital for medical treatment despite their knowledge of his pain and medical problems and the fact that he was scheduled to go to a hospital; 8) deputies and staff administered powerful drugs, including Benadryl, the sedative Ativan, and the antipsychotic Haldol instead of transporting Bernarnd to a hospital; 9) deputies failed to conduct proper cell checks, even after seeing Bernard naked, lying face down on the floor of his cell and left him there for hours; and 10) deputies and their supervisors failed to conduct a proper investigation of Bernarnd's death, violating the Sheriff Department's own policies. Plaintiffs had no way of knowing that deputies failed to take any action to prevent Bernard's pain and death.

The facts and circumstances surrounding the treatment of Bernard Victorianne became publicly available for the first time after CLERB issued its preliminary findings on September 5, 2014. On September 14, 2014, the entire CLERB Board affirmed seven separate counts of misconduct by the Jail Deputies related to the death of Bernard Victorianne.

**PLAINTIFFS ARE ENTITLED TO BRING SUIT AFTER THE RETURN OF THEIR CLAIMS AS "UNTIMELY"**

Plaintiffs discovered the acts and omissions of Defendants on September 5, 2014 and filed their claims within six months of the discovery. County of San

Diego rejected their claims as "untimely." Plaintiffs are not required to file a late claim under Section 945.4, because their claims were not late.

Under the delayed discovery doctrine, accrual of a cause of action is postponed until the plaintiff discovers, or has reason to discover, the cause of action. *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 397 (1999); *Curtis T. v. County of Los Angeles*, 123 Cal.App.4th 1405, 1418 (2004); *V.C. v. Los Angeles Unified School Dist.*, 139 Cal.App.4th 499, 515 (2006)). Where a claim is timely filed under the delayed discovery rule, a plaintiff may file suit immediately after the public entity's response that the claim is untimely. The Court will consider the public entity's return of the claim as "untimely," when the claim was actually timely under the delayed discovery rule, to be a rejection of the claim. *K.J. v. Arcadia Unified School District*, 172 Cal. App. 4th 1229, 1243 (Cal. Ct. App. 2009). Plaintiffs are not required to take any further procedural steps under California Government Code. *Id.* ("We reject the District's contention that K.J. was required to take these procedural steps prior to filing suit.") The date of accrual of a cause of action marks the starting point for calculating the statute of limitations period. *Id* at 1233 (*citing* Gov.Code, § 901); *Mosesian v. County of Fresno*, 28 Cal.App.3d 493, 500 (1972)).

**DEFENDANTS ARE ESTOPPED FROM ASSERTING THE GOVERNMENT CLAIMS ACT**

A public entity may be estopped from asserting the limitations of the claims statute where its agents or employees have prevented or deterred the filing of a

4

1  timely claim through some affirmative act.  *Doe v. Bakersfield City Sch. Dist.*, 136
2  Cal. App. 4th 556, 567 (2006).  The question of whether plaintiff acted within a
3  reasonable time is measured from the time the deterrent effect of the
4
5  unconscionable conduct of the District or its agent ceased.  *Id*. (*citing Ortega v.*
6  *Pajaro Valley Unified Sch. Dist.*, 64 Cal. App. 4th 1023, 1044 (1998), as modified
7  on denial of reh'g (July 10, 1998*)*).
8
9       Four elements must be present in order to apply the doctrine of equitable
10 estoppel: (1) the public entity was apprised of the facts, (2) it intended its conduct
11 to be acted upon, (3) plaintiff was ignorant of the true state of facts, and (4) relied
12 upon the conduct to his detriment.  *K.J.*, 172 Cal. App. 4th at 1233 (2009) (*citing*
13
14 *Christopher P. v. Mojave Unified School Dist.*, 19 Cal.App.4th 165, 170 (1993)).
15 Defendants were apprised of the facts and circumstances of Bernard Victorianne's
16 death and the actions of their employees; Defendants released the limited
17 information to the Victorianne family, intending on their conduct to be acted upon;
18
19 Plaintiffs were ignorant as to the treatment their son received in custody; and
20 Plaintiffs relied on the information given to them which was that their son died
21 from overdose in jail.
22
23      Defendants' interpretation of the holding in *Fredrichsen v. City of*
24 *Lakewood*, 6 Cal. 3d 353 (1971) is at best, questionable.  The *Fredrichsen* plaintiff
25 telephoned the City of Lakewood to request a claim form.  The city sent plaintiff a
26 copy of a letter signed by the city clerk addressed to a private corporation, which
27 stated that the responsibility for maintenance of the defective sidewalk in question
28

1 rested with the Corporation.  The mistake was not intentional.  Relying on the
2 mistake, the plaintiff in *Fredrichsen* took no further action to investigate and did
3 not file the prerequisite claim.
4
5 The *Fredrichsen* Court did not, as Defendants seem to suggest, find that the
6 plaintiff was entitled to estoppel **because** "she made affirmative contacts with the
7 city to try to timely comply with claims filing requirements..." [Docket No. 4, 4:20-
8 5:2]  The *Fredrichsen* Court found "the information as to who bore responsibility
9 for the sidewalk maintenance was uniquely and readily available to the city through
10 its public works department." 6 Cal. 3d 353, 358.  The Court found that although
11 plaintiff merely requested a form, the city, by its failure to furnish the form and by
12 sending her a letter addressed to the private company, purported to give plaintiff
13 procedural directions and substantive advice. "The fact that the letter purports to
14 rely on the advice of the city official who would be the most knowledgeable on the
15 matter indicates the city's intent that plaintiff rely on this information." *Id* at 359.
16
17 There was no indication in *Fredrichsen* that the clerk intentionally misled
18 the Plaintiff with the purpose of preventing her from filing a suit against the
19 Defendant City.  Plaintiff took no further action against the City within the
20 statutory period and made no other inquiry.  The *Fredrichsen* Court found:

> " As to the question of responsibility for
> maintenance of the sidewalk, it is apparent that there was
> no reason to believe that plaintiff would have any
> knowledge in this regard, and it is obvious that not only
> should the city have known the facts, especially its
> public works department, but that in the May 15, 1969,
> letter it held itself out as having such special knowledge.

6

> The city's advice to plaintiff's request for information as to the proper claim procedure served to frustrate her attempt to file her claim and save her remedy. The right to sue on a legitimate cause of action is a fundamental right which the city should not be allowed to frustrate."

*Id.*

Zelda and Bernard Victorianne were told by County officials "having special knowledge" that their son died of a drug overdose. They were given an autopsy report signed by the San Diego County Medical Examiner's Office that indicated drug overdose as the cause of death. They were given no further information around Bernard's treatment in jail or his death. Conduct on behalf of a public agency, which would induce a reasonably prudent person to avoid seeking legal advice or personally commencing litigation, may estop the public agency from asserting a claims defense. *Bertorelli v. City of Tulare*, 180 Cal. App. 3d 432, 440 (Ct. App. 1986) Actual fraud or the intent to mislead is not essential. *John R. v. Oakland Unified Sch. Dist.*, 48 Cal. 3d 438, 445 (1989).

Defendants' reliance on, and comparison with, *Munoz v. State of California*, 33 Cal. App. 4th 1767 (1995) is unavailing. In *Munoz*, the decedent died from cancer and the plaintiff-daughter retained an attorney one month after the decedent's death in order to file a medical malpractice case. The *Munoz* Court specifically noted:

> "Curiously, appellant offered no evidence that she was unaware, or not suspicious, that her father was receiving 'inadequate' medical care in prison or elsewhere. To the contrary, appellant wasted no time in hiring an attorney to pursue a claim.... Since appellant made a choice not to

7

          present evidence, she cannot now complain that she
          failed to meet her burden of proof." *Id.* at 1784.

Defendants County of San Diego and William Gore argue that Plaintiffs are at fault for not conducting their own investigation into their son's death. This is despite the fact that the Office of County Counsel objects to discovery requests for Internal Affairs investigations even in **on-going litigation,** asserting that "this request [for IA files] also constitutes an invasion of personal privacy and seeks material protected from disclosure by the California Peace Officers Bill of Rights." (Exhibit A, Response to Request No. 1) It is mystifying how Zelda and Bernard Victorianne could have conducted an investigation by interviewing Sheriff deputies, obtaining videos from a secured facility, and reviewing nonexistent evidence. Defendants' argument is especially troubling given that CLERB, the official body entrusted to conduct jail death investigations, found that deputies in this case repeatedly lied about their conduct to CLERB investigators and that the supervisors failed to investigate the deputies' actions.

Defendants argue in their Opposition that "they did not assume any duty to conduct an investigation for the benefit of plaintiffs; plaintiffs cannot seek relief on account of negligent investigation or investigatory conduct." [Docket No. 24, p.4, ll. 15-19] County of San Diego's own policies and procedures and the State of California's Code of Regulations require investigations of in-custody deaths. County of San Diego Sheriff's Policy M.7, "Inmate Deaths," provides direction to Detentions Bureau personnel that the Homicide and Detentions Investigations Unit

8

to conduct interviews of possible witnesses. "Per department information sources and investigating detectives on scene, all involved deputies are considered possible witnesses, and will typically write a deputy's report detailing their involvement and/or any information they may have regarding the incident. Sheriff's Policy 6.33, further requires that department personnel responding to and involved in the investigation of any major crime… secure all evidence and information and identify and interview victims and witnesses."  (Exhibit B, p.3)

The State of California's Code of Regulations Title 15 § 1046, "Death in Custody," is available on the San Diego Sheriff's website: https://www.sdsheriff.net/jailinfo/title15.pdf.  Title 15 § 1046 states in part:

> "Minimum Standards for Local Detention Facilities
>
> (a) Death in Custody Reviews for Adults and Minors.
>
> The facility administrator, in cooperation with the health administrator, shall develop written policy and procedures to assure that there is a review of every in-custody death. The review team shall include the facility administrator and/or the facility manager, the health administrator, the responsible physician and other health care and supervision staff who are relevant to the incident."

**CONCLUSION**

Plaintiffs filed their Notice of Claim within several days of the discovery of the misconduct of Defendants.  Their claims are timely.  "One cannot justly or equitably lull his adversary into a false sense of security, and thereby cause him to subject his claim to the bar of the statute of limitations, and then be permitted to

9

plead the very delay caused by his conduct as a defense to the action when brought." *Carruth v. Fritch*, 36 Cal.2d 426, 433  (1950).  Defendants, having misled the Plaintiffs into believing that Bernard Victorianne died from overdose without any misconduct on the part of their employees and having failed to investigate or document the misconduct and negligence of deputies and medical staff, should be estopped from taking advantage of the act or omission caused by their own acts.  Plaintiffs respectfully request leave to amend the Complaint to add the state tort causes of action.

                                    Respectfully Submitted

                                    IREDALE & YOO, APC

Dated: December 1, 2014        /s/  *Julia Yoo*
                                    Eugene G. Iredale
                                    Julia Yoo
                                    Attorneys for Plaintiffs, the Estate of Bernard Victorianne, Zelda Victorianne, and Bernard Victorianne II