UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF BERNARD VICTORIANNE, et al.,<br><br>            Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, WILLIAM GORE, LESLEE HALL, AND DOES 1-50,<br><br>            Defendants | Case No. 14cv2170-WQH(BLM)<br><br>**ORDER ON JOINT DISCOVERY MOTION**<br><br>**[ECF No. 58]** |

On February 26, 2015, Julia Yoo, counsel for Plaintiffs, and Ricky R. Sanchez, counsel for Defendants, contacted the Court's chambers regarding a discovery dispute. ECF. No. 49. Counsel informed the Court's chambers that Defendants objected to the production of a number of documents based on the "official information" privilege. Id. at 1.

On February 27, 2015, the Court ordered a special briefing schedule for the discovery dispute and pursuant to the Court's order, the parties filed a Joint Discovery Conference Statement on March 20, 2015. ECF Nos. 49 and 58. Also on March 20, 2015, Defendants delivered the disputed documents to the Court's chambers for *in camera* review.

The Court has reviewed *in camera* all of the documents submitted by the parties. For the reasons detailed below, Plaintiffs' request for documents is **GRANTED**.

**FACTUAL BACKGROUND**

On September 11, 2014, Plaintiff initiated the instant matter by filing a complaint alleging (1) deliberate indifference to serious medical needs; (2) wrongful death, (3) right of association, (4) failure to properly train, (5) failure to properly supervise and discipline, (6) failure to properly investigate, and (7) Monell municipal liability civil rights action. ECF No. 1. Defendants filed an answer on October 14, 2014. ECF No. 6.

On February 9, 2015, Plaintiffs filed a First Amended Complaint adding Leslee Hall as a Defendant and alleging (1) deliberate indifference to serious medical needs; (2) wrongful death, (3) right of association, (4) failure to properly train, (5) failure to properly supervise and discipline, (6) failure to properly investigate, (7) Monell municipal liability civil rights action, (8) wrongful death, (9) negligence, and (10) California Civil Code § 52.1. ECF No. 39 ("FAC"). Specifically, Plaintiffs allege that decedent Bernard Victorianne was arrested for driving under the influence on September 12, 2012 and that the jail staff - who knew that Mr. Victorianne had ingested drugs prior to being booked - failed to provide Mr. Victorianne with medical care. FAC at 2. Plaintiffs also allege that Mr. Victorianne should have been housed in the medical observation unit where he would have been monitored instead of being placed in solitary confinement. Id. Plaintiffs highlight the fact that a deputy incorrectly reported that he had personally observed Mr. Victorianne's well-being on the evening of September 18, 2012. Id. Plaintiffs state that on September 19, 2012, Mr. Victorianne failed to retrieve his breakfast and when a deputy checked on him, Mr. Victorianne was found lying face down and naked on the floor. Id. Plaintiffs further allege that the deputies only spent 41 seconds in Mr. Victorianne's cell, which violated Defendants' policy requiring confirmation from Mr. Victorianne that he was okay. Id. Plaintiffs claim that no one checked on Mr. Victorianne for approximately three more hours and that he was later found dead, with rigor mortis already setting in. Id. Plaintiffs claim that the evidence shows that at least one deputy lied during the investigation into Mr. Victorianne's death and that no homicide investigators interviewed or took reports from the last two deputies to see Mr. Victorianne alive. Id. Plaintiffs, Mr. Victorianne's parents, allege they learned about the facts of Mr. Victorianne's case from the Citizens' Law Enforcement Review

Board's ("CLERB") findings and recommendations nearly two years after his death as "the Sheriff's Department failed to let [Mr. Victorianne's] parents know the circumstances surrounding his death." Id. at 3.

## PROCEDURAL BACKGROUND

On November 7, 2014, Defendants filed a motion to dismiss Plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 15. That same day, Plaintiffs filed a motion to amend the complaint. ECF No. 18. The Court held a telephonic, attorneys-only Early Neutral Evaluation Conference ("ENE") on November 20, 2014. Id. at 21. After the ENE, the Court issued an Order Directing Rule 26 Compliance and Setting Case Management Conference ("CMC"). ECF No. 22. The Court held a telephonic CMC on December 17, 2014 and issued a Case Management Conference Order Regulating Discovery and Other Pretrial Proceedings that same day. ECF Nos. 30 & 31. On January 30, 2015, the Court issued an order granting Plaintiffs' motion to amend the complaint and denying as moot, Defendants' motion to dismiss the complaint. ECF No. 36.

On February 23, 2015, Defendants filed a motion to dismiss and to strike portions of the FAC. ECF No. 42. On February 26, 2015, Plaintiffs filed an *Ex Parte* Motion to Amend the Scheduling Order. ECF No. 47. Plaintiffs sought to continue the deadline to amend the pleadings or file additional pleadings from February 27, 2015 to seven days after this Court issues an order on the instant discovery dispute. ECF No. 47. The motion was granted the next day. ECF No. 48. On March 5, 2015, Plaintiffs filed an *ex parte* motion to hold Defendants' motion to dismiss and to strike "in abeyance pending resolution of the parties' discovery dispute and the filing of Plaintiffs' second amended complaint." ECF No. 50 at 2. That motion is still pending.

## LEGAL STANDARD

The federal rules generally allow for broad discovery authorizing parties to obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, and "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). To the extent that the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is

more convenient, less burdensome, or less expensive," the court is directed to limit the scope of the request. Fed. R. Civ. P. 26(b)(2)(i). Limits should also be imposed where the burden or expense outweighs the likely benefits. Fed. R. Civ. P. 26(b)(2)(iii). How and when to so limit discovery, however, remains in the court's discretion.

Federal common law recognizes a "qualified privilege for official information." Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir. 1990) (citing Kerr v. U.S. Dist. Ct., 511 F.2d 192, 198 (9th Cir. 1975), aff'd, 426 U.S. 394 (1976)). The party asserting the privilege has the burden of proving the privilege. Kelly v. City of San Jose, 114 F.R.D. 653, 662 (N.D. Cal. 1987); see also Hampton v. City of San Diego, 147 F.R.D. 227, 231 (S.D. Cal. 1993) ("Through this opinion, this court is hereby joining the Northern District's and Central District's procedures outlined in Kelly v. City of San Jose, 114 F.R.D. 653 (N.D. Cal. 1987) and Miller v. Pancucci, 141 F.R.D. 292 (C.D. Cal. 1992) for invoking the official information privilege"); Stewart v. City of San Diego, 2010 WL 4909630, at *1 (S.D. Cal. 2010) (applying Kelly). To determine whether the privilege applies in a particular case, "courts must weigh the potential benefits of disclosure against the potential disadvantages." Sanchez, 936 F.2d at 1033-1034. The Kelly court provided a non-exhaustive list of factors (taken from Frankenhauser v. Rizzo, 59 F.R.D. 339 (E.D. Pa. 1973)) that may be considered when engaging in this weighing process: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which government self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case. Kelly, 114 F.R.D. at 663.

In making this determination, courts must conduct "a situation specific analysis of the factors made relevant by the request in issue and the objection to it." Id. In civil rights cases against police departments, the balancing test should be "moderately pre-weighted in favor of disclosure." Soto v. City of Concord, 162 F.R.D. 603, 613 (N.D. Cal. 1995) (quoting Kelly, 114 F.R.D. at 661).

## DISCUSSION

Plaintiffs seek to compel production of the majority of the documents listed in Defendants' privilege log [see ECF No. 57]. ECF No. 58 at 6-7. In support, Plaintiffs argue that the requested information is relevant to the litigation. Id. at 8. Specifically, Plaintiffs explain that they have no information available to them regarding the identities of various people who (1) observed Mr. Victorianne prior to his death, (2) authorized the his placement in Administrative Segregation, (3) failed to perform an inmate night count, (4) failed to verify inmate breathing, (5) failed to truthfully complete the Sheriff's Employee Response Form, (6) observed the mental condition of Mr. Victorianne on September 18, 2012, (7) observed Mr. Victorianne's interactions with deputies on September 18th and 19th, 2012, and (8) decided what and how information would be provided to Mr. Victorianne's family regarding his death. Id. Plaintiffs also argue that they will be substantially harmed if the requested information is not disclosed as there is no alternative means of obtaining the information. Id. at 9. Plaintiffs note that since there was no investigation by the Homicide Division, the Internal Affairs ("IA") and CLERB files are the only source of the information and the requests are reasonably calculated to lead to the discovery of admissible evidence. Id. Additionally, Plaintiffs argue that they are entitled to the San Diego Sheriff's Detention Policies and Procedures which they believe were violated and, are therefore, "relevant and critical" to Plaintiffs' case. Id. at 10. Plaintiffs also argue that Defendants should produce the audio recordings, statements, and Sheriff's Employee Response Forms of the deputies who allegedly denied care to Mr. Victorianne. Id. In further support, Plaintiffs argue that Defendants fail to meet the burden required to show that the requested discovery should be denied under other privileges or objections. Id. Plaintiffs contend that the governmental privilege does not preclude discovery and that the production of the requested documents under

a protective order with redactions of certain personal information will not "disrupt the operations of the San Diego Sheriff's Department." Id. at 11. Plaintiffs further contend that privacy under that California state law and constitution is not controlling here and that the "[n]eed for the [d]iscovery [o]utweighs any [p]otential [p]rivacy [r]ights under the Federal Privacy Act." Id. at 12-13. Because Mr. Victorianne himself cannot testify as to what occurred and because the only source of information regarding the deputies involved is contained in the IA and CLERB files, the discovery being sought is critical to Plaintiffs' case. Id. at 13.

Defendants do not challenge the relevancy of the withheld documents and merely state that the requested documents cannot be released without a court order. Id. at 15-17. Initially, Defendants explain that they already have produced to Plaintiffs some "documentation generated by the Homicide Division's portion of the investigation" and all other requested documents "excepting Internal Affairs and CLERB documents." Id. at 15. Defendants state that they provided Plaintiffs with an appropriate privilege log, notified Plaintiffs of the bases on which they are withholding documents, and advised Plaintiffs that non-defendant deputies have not consented to the release of documents involving them so the documents cannot be produced. Id. at 15-16. Finally, Defendants acknowledge the requirements of the official information privilege and conclude "that an official information privilege analysis would weigh in favor of disclosure," but contend that pursuant to California Penal Code, they are unable to release the requested documents absent a court order and that if disclosure is ordered, it should only be permitted pursuant to a protective order. Id. at 17. Defendants do not object to producing Detention Policies I.43, I.43C.1, I.64, and M.5. Id.

A.     **Analysis/Documents Reviewed**

Before the Court undertakes an *in camera* review of the lodged documents and conducts a balancing of interests, Defendants must make a substantial threshold showing in order to invoke the official information privilege. See ECF No. 49 at 3; see also Soto, 162 F.R.D. at 613; Hampton 147 F.R.D. at 231; and Dowell v. Griffin, 275 F.R.D. 613, *616 (S.D. Cal. Aug. 17, 2011). To meet this showing, Defendants "must submit a declaration or affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit."

<u>Dowel</u>, 275 F.R.D. at *616 (quoting <u>Soto</u>, 162 F.R.D. at 613). Specifically, "[i]n order to fulfill the threshold requirement, the party asserting the privilege must submit a declaration or affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit. The affidavit must include: (1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made." <u>Soto</u>, 162 F.R.D. at 613 (quoting <u>Kelly</u>, 114 F.R.D. at 670).

Here, Defendants have failed to meet the threshold burden because they have not included elements four or five in their affidavit. <u>See</u> ECF No. 58-2 ("Decl. of Christine Harvel"). The affiant does not explain why a protective order would be insufficient to protect significant governmental or privacy interest, or project how much harm would be done to the threatened interests if disclosure were made. <u>Id.</u> Since Defendants have not met their burden, the Court is not required to conduct an *in camera* review and may require production of the requested documents. Nevertheless, the Court has performed an *in camera* review of the requested documents and determines that all of the requested documents and materials relate directly to the conduct at issue in this litigation. The Court must next consider whether the asserted privileges prevent the production of the relevant information.

Initially, the Court notes that Defendants have failed to adequately explain how disclosure of the relevant files would harm a significant government or privacy interest with the employment of a protective order and appropriate redactions. Decl. of Christine Harvel. In fact, Ms. Harvel states that if the requested documents are released, "the Court should fashion a protective order to preclude any disclosure or dissemination of any records, documents, or information ordered disclosed for any purpose other than the express and specific purpose for which the Court has ordered such disclosure." <u>Id.</u> at 5. With respect to the governmental or

privacy interest at stake, Ms. Harvel's declaration merely states that the worthwhile objectives of constructive or negative criticism necessary to evaluating people's performances

> are not served when deputies' confidential records can be used for purposes outside their intended purpose and scope.  Consistency and confidence in the Department's internal affairs process enhances critical and candid assessments and is vital to deputies, their superiors and the public.
>
> Indiscriminate disclosure and uncontrolled dissemination of confidential records kept by the Sheriff's Department can potentially discourage those persons who may provide information, diminish the confidentiality of others who have provided information to the Department, disrupt the vital, day to day operations of the department; divert department personnel from their regular duties; erode the integrity and security of such records; affect morale of many departmental employees; consume inordinate time, expense and resources.

Id. at 4. However, Defendants fail to provide any support for this assertion and, in fact, courts have rejected the theory. See Soto, 162 F.R.D. at 612 (noting that Kelly "debunks the theory that officers will be less truthful or forthright in expressing their opinions if there is a risk of future disclosure" and concurring with Kelly's reasoning) (quoting Kelly, 114 F.R.D. at 665-666)[1]; see also Watson v. Albin, 2008 WL 1925257 (N.D. Cal. Apr. 30, 2008) ("[Defendant's] arguments that disclosure would discourage exhaustive internal investigations are unpersuasive. Courts in this district have previously rejected such claims, and there is no reason to depart from that reasoning here.") (citing Kelly, 114 F.R.D at 672).  This Court agrees and finds that Defendants have not established that disclosure in this case would harm a significant government or privacy interest.

Additionally, a weighing of "the potential benefits of disclosure against the potential disadvantages" and consideration of the Kelly factors strongly supports the disclosure of the relevant documents. Sanchez, 936 F. 2d at 1034. Specifically, with regard to each Kelly factor, the Court finds as follows:

1. Disclosure will not thwart governmental processes by discouraging citizens from

---

[1] The quoted section of Kelly reads "since there is no empirical support for the contention that the possibility of disclosure would reduce the candor of officers who contribute to internal affairs investigations, and since there are solid reasons to believe that that possibility might have the opposite effect (improving accuracy and honesty), there is no justification for offering near absolute protection to the statements that go into such reports or the opinions and recommendations that conclude them. In fact … such material should be presumptively discoverable when a plaintiff makes a proper showing of relevance." Kelly, 114 F.R.D. at 665-666.

giving the government information because the identifying information will be limited to the name of the reporting individual, all personal information will be redacted as described in section B, and the records at issue contain statements from employees and inmates at the prison where Mr. Victorianne died not from private citizens;

2. There will be little impact upon persons who have given information as a result of having their identities disclosed because the Court will allow Defendants to redact personal information as set forth in section B;

3. There is no support for the contention that government self-evaluation or other communications will be chilled by disclosure;

4. The fact that the information sought is both factual data and evaluative summary does not favor either side as the data is still based on factual investigations which are relevant and likely trustworthy[2];

5. Defendants have not provided any evidence indicating that Plaintiffs are "actual or potential defendant[s] in any criminal proceeding either pending or reasonably likely to follow from the incident in question";

6. There was no police investigation, but the CLERB review has been completed[3];

7. The Internal Affairs investigation has been completed[4];

8. Defendants do not provide any evidence indicating that Plaintiffs' suit is frivolous or has been brought in bad faith;

9. Plaintiffs have established that the information Plaintiffs seek is not available

---

[2] See Estate of Bui v. Westminster Police Department, 244 F.R.D. 591, 596 (C.D. Cal. Aug. 3, 2007) (finding that "The fourth Kelly factor does not conclusively weigh for or against application of the privilege. While the WPD's IA report includes opinions, conclusions and evaluative summaries, it is still based on factual investigations. These investigations are highly relevant and likely trustworthy given their protection against use in criminal proceedings and the relatively immediate timing of the investigations after the incident"); see also Dowell, 275 F.R.D. at 618 (finding that the fourth factor was not instructive because"[w]hile the report includes opinions, conclusions, and evaluative summaries, it is still based on factual investigations. As articulated in Kelly, there is no reason to doubt the veracity of the investigating officers any more than there is to doubt the veracity of the witnesses).

[3] See CSDP0000238-241.

[4] See CSDP000055-71, 73-102, 278.

through other discovery means or from other sources and Defendants have not countered this showing; and

10. The information being sought is extremely important to Plaintiffs' case. Kelly, 114 F.R.D. at 663. Because all of the Kelly factors either favor disclosure or are neutral, the Court finds that the potential benefits of disclosure greatly outweigh the potential disadvantages and disclosure is warranted.

Accordingly, Defendants are **ORDERED** to produce the documents identified by Plaintiffs in the Joint Discovery Motion [see ECF No. 58 at 6-7] as well as the audio recordings and statements of the deputies at issue, subject to the stipulated protective order which will be filed along with this Order.

**B.      Redaction**

Defendants seek to redact "all personal information regarding the deputy, spouse and children, such as their social security, driver's license number, address, etc." Decl. of Christine Harvel at 5.   The Court **GRANTS** Defendants' request to redact all personal information regarding the Deputy including: spouse and children names, date of birth, social security numbers, medical records, driver's license numbers, vehicle license plate numbers, telephone numbers, and addresses.   Defendants are ordered to also redact the personal information of any witnesses.

## CONCLUSION

Plaintiffs' request for documents and the audio recordings and statements of the deputies at issue  is **GRANTED** as follows:

1. Within in ten (10) days of the date this Order is filed, Defendants shall produce all requested documents to Plaintiffs, subject to the stipulated protective order which will be filed along with this Order with the following redactions: personal information of Deputies and witnesses including: spouse and children names, date of birth, social security numbers, medical records, driver's license numbers, vehicle license plate numbers, telephone numbers, and addresses, but **not** the names of witnesses and officers.

2. Within five (5) days of the date this Order is filed, Defendants shall retrieve from

the Court's chambers all documents submitted for *in camera* review.

**IT IS SO ORDERED**.

DATED: April 17, 2015

*[signature: Barbara L. Major]*

BARBARA L. MAJOR
United States Magistrate Judge