THOMAS E. MONTGOMERY, County Counsel
County of San Diego
By RICKY R. SANCHEZ, Senior Deputy (SBN 107559)
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
Telephone: (619) 531-4874  Fax: (619) 531-6005
E-mail: ricky.sanchez@sdcounty.ca.gov

Attorneys for Defendants County of San Diego, William Gore, and Leslee Hall

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF BERNARD VICTORIANNE by and through its successor-in-interest ZELDA VICTORIANNE, BERNARD VICTORIANNE II, and ZELDA VICTORIANNE,<br><br>                    Plaintiffs,<br><br>     v.<br><br>COUNTY OF SAN DIEGO, WILLIAM GORE, in his individual capacity; PATRICK GARDNER, an individual, LESLEE HALL, an individual, EDMUNDO GARCIA, an individual; LAUDENTE GALLEGOS, an individual, GUYNEMER ALMAZAN, an individual, DEPUTY FLORES, an individual, DEPUTY LIEN, an individual, KEITH RUSSELL, an individual, ARTHUR AYALA, an individual, KENNETH RICHTER, an individual, PETER HUANG, an individual, ZVJEZDAN NUHIC, an individual, ELLEN GABEL, an individual, ELLEN GABEL, an individual, AILEEN LONGNO, an individual, REBECCA SIVILAY, an individual, CORAZON ROQUE, an individual, DEBORAH BELL, an individual, BRUCE LEICHT, an individual, EARL GOLDSTEIN, an individual, and DOES 1 - 50,<br><br>                    Defendants. | No. 14-cv-2170-WQH (BLM)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND TO STRIKE PARTS OF THE SECOND AMENDED COMPLAINT<br><br><br>Date: July 27, 2015<br>Hon. William Q. Hayes<br><br><br><br>NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT |

# TOPICAL INDEX

Page

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ................................................................ 1

LEGAL STANDARD FOR DISMISSAL.................................................2

ARGUMENT:

I.   THE SHERIFF SHOULD BE DISMISSED BECAUSE THE SECOND
     AMENDED COMPLAINT ALLEGES CLAIMS AGAINST THE
     SHERIFF ONLY IN HIS OFFICIAL CAPACITY WHICH ARE
     DUPLICATIVE OF THE CLAIMS AGAINST THE COUNTY .................4

II.  NO CLAIM IS STATED AGAINST LESLEE HALL WITH RESPECT TO
     THE INVESTIGATION OF DECEDENT'S DEATH ..................................7

III. GOVERNMENT CLAIMS ACT NON-COMPLIANCE BARS ALL
     STATE TORT CLAIMS ..............................................................8

IV.  NO CLAIM FOR NEGLIGENT TRAINING IS STATED BY THE
     COMPLAINT BECAUSE IT IS NOT A CLAIM COGNIZABLE UNDER
     THE CALIFORNIA TORT CLAIMS ACT...................................13

V.   THE COUNTY IS IMMUNE TO SUIT FOR WRONGFUL DEATH
     UNDER GOVERNMENT CODE SECTION 844.6 ....................................14

VI.  NO 52.1 CLAIM IS STATED AGAINST DEFENDANT COUNTY OF
     SAN DIEGO ..............................................................................15

VII. THE COUNTY IS STATUTORILY IMMUNE TO ANY CLAIM FOR
     PUNITIVE DAMAGES UNDER GOVERNMENT CODE
     SECTION 818 ..........................................................................17

VIII. REFERENCES TO THE ESTATE OF BERNARD VICTORIANNE ARE
     IMPROPER AND SHOULD BE STRICKEN ............................................17

CONCLUSION ....................................................................................18

ii

**TABLE OF AUTHORITIES**

Page

4 *Cal.L.Rev.Comm. Reports* 801 (1963)....................................................................17

*Amylou R. v. County of Riverside*, 28 Cal.App.4th 1205 (1994).........................8, 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................3

*Austin B. v. Escondido Union School Dist.*, 149 Cal.App.4th 860 (2007) .............16

*Baker v. McCollan*, 443 U.S. 137 (1979) ................................................................7

*Datil v. City of Los Angeles*, 263 Cal.App.2d 655 (1968) ......................................14

*DeVillers v. County of San Diego*, 156 Cal.App.4th 238 (2007) .............. 13, 14, 15

*Dilts v. Cantua Elem. Sch. Dist.*, 189 Cal. App. 3d 27 (1987) ................................9

*Fantasy, Inc. v. Fogerty*, 984 F.2d 1424 (9th Cir. 1993).......................................18

*Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797 (2005) ...................................11

*Fredrichsen v. City of Lakewood*, 6 Cal. 3d 353 (1971)........................................10

*Gates* v. *Superior Court*, 32 Cal.App.4th 481 (1995)...............................................15

*Guyton v. Phillips*, 606 F.2d 248 (9th Cir.1979) ....................................................8

*Howard Jarvis Taxpayers Assn. v. City of La Habra*, 25 Cal.4th 809 (2001) ........11

*Ileto v. Glock Inc.*, 349 F.3d 1191 (9th Cir. 2003)...................................................3

*John R. v. Oakland Unified School Dist.,* 48 Cal.3d 438 (1989)............................9

*Jones v. Kmart Corp.*, 17 Cal. 4th 329 (1998)........................................................16

*Justin v. City & County of San Francisco*, 2008 U.S. Dist. LEXIS 36468, * 26 (N.D. CA 2008) ......................................................................................................16

*K.J. v. Arcadia Unified School District*, 172 Cal. App.4th 1229 (2009)..................11

*Kemmerer v. County of Fresno*, 200 Cal.App.3d 1426 (1988)................................8

*Kentucky v. Graham*, 473 U.S. 159 (1985)...............................................................5

*Lowman* v. *County of Los Angeles,* 127 Cal App 3d 613 (1982) ...........................15

*Luke v. Abbott*, 954 F. Supp. 202 (C.D. Cal. 1997).................................................7

*McQurter v. City of Atlanta*, 572 F.Supp. 1401 (N.D.Ga.1983) .............................8

*Mitchell v. Dupnik*, 75 F.3d 517 (9th Cir. 1996) .....................................................5

iii

**TABLE OF AUTHORITIES**
(Continued)

Page

*Moss v. United States Secret Serv.*, 572 F.3d 962 (9th Cir. 2009) ...........................3

*Munoz v. State of California*, 33 Cal.App.4th 1767 (1994)....................................11

*Navarro v. Block*, 250 F.3d 729 (2001) .................................................................2

*Norgart v. Upjohn Co.*, 21 Cal.4th 383 (1999).......................................................11

*Ovando v. City of Los Angeles*, 159 Cal.App.4th 42 (2008) ...............................13

*Ovando v. City of Los Angeles*, 92 F. Supp. 2d 1011 (C.D. Cal. 2000) .................12

*Palmer v. Sanderson*, 9 F.3d 1433 (9th Cir. 1993)....................................................4

*Ponce v. Lloyd*, 46 F.3d 1144 (9th Cir. 1995) ..........................................................5

*Reed v. County of Santa Cruz,* 37 Cal.App.4th 1274 (1995)..............................15

*Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530 (9th Cir. 1984) .................3

*Rojas v. Sonoma Cnty.*, No. C-11-1358 EMC, 2011 WL 5024551, at *2 (N.D. Cal. Oct. 21, 2011) .........................................................................................................5

*Rosa R. v. Connelly*, 889 F.2d 435 (2nd Cir.1989).....................................................6

*Rose v. County of Plumas* (1984) 152 Cal.App.3d ...................................................7

*Savitt v. Jordan* 142 Cal.App.3d 820 (1983).........................................................15

*Searcy v. Hemet Unified School Dist.*, 177 Cal.App.3d 792 (1986) ......................14

*Smith v. City and County of San Francisco*, 68 Cal.App.3d 227 (1977)..................8

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001)...........................3

*Taylor v. List*, 880 F.2d 1040 (9th Cir. 1989) ..........................................................4

*Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993 (N.D. Cal. 1996).........................6

*Venegas v. County of Los Angeles*, 153 Cal.App.4th 1230 (2007).........................16

*Whitehurst v. Wright*, 592 F.2d 834 (5th Cir.1979)..................................................8

*Williams v. Horvath*, 16 Cal.3d 834 (1976)..........................................................14

*Williams v. State of California* (1983) 34 Cal.3d 18 ...............................................7

*Ybarra v. Reno Thunderbird Mobile Homes Village*, 723 F.2d 675 (9th Cir. 1984) .........................................................................................................5

iv

# **RULES/STATUTES**

**California Code of Civil Procedures**
Section 14 ...............................................................................................16
Section 377.10 .......................................................................................17
Section 377.11 .......................................................................................17
Section 377.30 .......................................................................................17
Section 377.60 .......................................................................................15
Section 3294 ..........................................................................................17
Section 52.1 ................................................................................ 1, 15, 16

**California Evidence Code**
Section 623 ..............................................................................................9

**California Probate Code**
Section 9820 ..........................................................................................17

**Federal Rules of Civil Procedures**
Rule 12(b)(6) ...........................................................................................3
Rule 17(b) .............................................................................................18
Rule 8(a)(2) .............................................................................................4
Rule12(f) ...............................................................................................19

**Government Code**
Section 810 et seq ..................................................................................14
Section 814 ............................................................................................14
Section 815(a) ........................................................................................14
Section 818 ................................................................................ 2, 17, 18
Section 820.2 ...........................................................................................8
Section 821.6 ...........................................................................................8
Section 844.6 .........................................................................................18
Section 844.6(a)(2) ...................................................................... 2, 14, 15
Section 845 ............................................................................................15
Section 911.2(a) ...................................................................................8, 10
Section 911.4(b) .......................................................................................9
Section 945.4 ............................................................................................9
Section 945.6(a) .......................................................................................9

INTRODUCTION

Bernard Victorianne, age 28, died in his cell one week after he was booked into the San Diego Central jail.  The original complaint alleges police officers took Victorianne to Alvarado Hospital when he was seen swallowing a baggie of drugs during his arrest, that Victorianne was later discharged by the hospital for booking into jail, and subsequently died because jail personnel failed to treat him for a methamphetamine overdose.

The Complaint contained seven 42 U.S.C. section 1983 ("§1983") claims against defendants County of San Diego ("County") and Sheriff William Gore ("Gore") in his official capacity  for: (1) deliberate indifference to serious medical needs; (2) wrongful death; (3) right of association; (4) failure to properly train; (5) failure to properly supervise and discipline; (6) failure to properly investigate; and (7) *Monell* municipal liability.  (ECF No. 1).  Defendants moved to dismiss the Complaint in part because it failed to allege that Gore knew of or had any interaction with Victorianne when he was in custody.  (ECF No. 15 and 15-1.)

Plaintiffs then filed an amended complaint containing the original seven section 1983 claims plus three state law claims for wrongful death, negligence, and violation of Civil Code section 52.1.  (ECF No. 39).  The First Amended Complaint  ("FAC") alleges the same basic factual circumstances alleged in the original complaint with the most notable differences being the alteration of the caption to include the phrase "in his individual capacity" following Sheriff Gore's name, adding Leslee Hall (lead Sheriff's Department investigator into Victorianne's death) as an individual defendant for failing to conduct a proper investigation, and referencing several excessive force lawsuits against Sheriff's deputies in which there were no final adjudications of liability (FAC ¶¶ 117-139) and other lawsuits alleging some refusals by the Sheriff's Department to investigate citizens' complaints.  (FAC ¶¶ 152-161).

Sheriff Gore moved for his dismissal because the allegations of the FAC showed he is being sued in his official capacity and so the claims against him and the County are duplicative.  Leslee Hall moved for dismissal because the FAC did not state any viable

federal constitutional or state law claim against her relative to her role in investigating the circumstances of decedent's death.  The County also moved to dismiss the newly-alleged state law tort claims due to non-compliance with California Government Code claim-filing requirements and the fourth claim for failure to properly train, for the County's dismissal on the Civil Code section 52.1claim, and to strike references to the Estate of Bernard Victorianne and other lawsuits regarding excessive force and failure to investigate citizen complaints.  (ECF No. 42.)  Plaintiffs now file a Second Amended Complaint ("SAC") alleging additional facts in support of the same claims previously alleged in the FAC.

Defendants move to dismiss or strike on various grounds.  Gore moves for his dismissal because the SAC still fails to allege that he had any personal involvement with decedent that would subject him to personal liability.  Defendant Hall seeks dismissal because the SAC does not state any viable federal constitutional or state law claim relating to her role in investigating the circumstances of decedent's death.  The County seeks dismissal of all state tort claims due to non-compliance with the California Government Code claim filing requirements, dismissal of the eighth claim for wrongful death brought under state law on the grounds the County is immune to suit under Government Code section 844.6(a)(2), and dismissal of the claim for punitive damages as to the County under Government Code section 818.  All Defendants move to strike certain allegations in the SAC regarding excessive force lawsuits against Sheriff Deputies in which there were no final adjudications of liability and lawsuits alleging a refusal to investigate citizens' complaints because no citizen complaint was made regarding decedent during his incarceration.

## LEGAL STANDARD FOR DISMISSAL

A Rule 12(b)(6) motion tests whether a plaintiff's claims are legally sufficient. See Fed.R.Civ.P. Rule 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (2001).  Dismissal is appropriate when the complaint fails to allege a cognizable legal theory or sufficient facts to support such a theory.  *Robertson v. Dean Witter Reynolds, Inc*., 749 F.2d 530,

533 (9th Cir. 1984).  Under Federal Rule of Civil Procedure, rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," and although Rule 8 "does not require 'detailed factual allegations,' it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009).  "[T]he tenet a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. at 678. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Id*. at 679.  Also, the court is not obliged to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit" or those which are "merely conclusory," require "unwarranted deductions" or "unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) [citation omitted], amended on other grounds, 275 F.3d 1187 (9th Cir. 2001); see also *Ileto v. Glock Inc*., 349 F.3d 1191, 1200 (9th Cir. 2003) (court need not accept as true unreasonable inferences or conclusions of law cast in the form of factual allegations).  To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter, which when taken as true, demonstrates the claim is "plausible on its face." *Ashcroft*, 556 U.S. at 678.

> "A claim has facial plausibility," the Court explained, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting  *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).
>
> In sum, for a complaint to survive a motion to dismiss, the non-conclusory "factual content," and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief. *Id*.

*Moss v. United States Secret Serv*., 572 F.3d 962, 969 (9th Cir. 2009).

/ / /

3

I

## THE SHERIFF SHOULD BE DISMISSED BECAUSE THE SECOND AMENDED COMPLAINT ALLEGES CLAIMS AGAINST THE SHERIFF ONLY IN HIS OFFICIAL CAPACITY WHICH ARE DUPLICATIVE OF THE CLAIMS AGAINST THE COUNTY

The SAC alleges that in his capacity as County Sheriff, Defendant Gore was at all relevant times responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all Sheriff's Department custodial employees and medical staff, and the policy-maker for the San Diego Sheriff's Department responsible for promulgation of the policies and procedures and allowance of the practices/customs of the Sheriff's Department as well as the supervision and control of officers employed under his command and/or who report to him.  (ECF No. 82, ¶¶ 8-9.)  The SAC further alleges Gore was "aware of the systemic problems with preventable deaths in the jails, but took no action to prevent further Constitutional violations" (ECF No. 82 ¶ 91), "was personally aware of a longstanding pattern of failing to properly investigate staff misconduct that led to the actions or inactions of the deputies who denied medical care" to Victorianne but took no action to prevent harm (ECF No. 82, ¶¶ 242-243), "refused to properly investigate the misconduct of Defendant Garcia", "refused to discipline Garcia" after the fact of his alleged misconduct, and intentionally failed to investigate decedent's death and misconduct by deputies (ECF No. 82, ¶¶ 249-250).

These are all policy-based allegations relating to Gore's official duties and based upon Gore's alleged failure to act in his official capacity rather than upon his personal knowledge of Victorianne's medical condition or involvement in his ongoing treatment. The SAC nowhere alleges facts that Gore ever personally contacted decedent, or knew of his condition at any time, or instructed any individual to deliver or withhold any services to decedent.

The Sheriff is not subject to vicarious liability.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Palmer v. Sanderson*, 9 F.3d 1433, 1437-1438 (9th Cir. 1993).  A superior cannot be held personally liable under section 1983 for constitutional deprivations

4

allegedly caused by his subordinates absent his participation in or specific issuance of directions regarding the alleged deprivation. *Ybarra v. Reno Thunderbird Mobile Homes Village*, 723 F.2d 675, 680 (9th Cir. 1984). Here there are no allegations of personal involvement so as to subject the Sheriff to personal liability. Rather the allegations all pertain to his role as the Sheriff and policy maker and thus are official capacity allegations.

A lawsuit against the Sheriff in his official capacity is but a lawsuit against the County itself; it is therefore unnecessary to name as defendants both the entity and the official capacity defendant. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996). Therefore there is but one proper defendant in this lawsuit regarding the Sheriff's alleged policy-based failure to act in an official capacity, and that is the County of San Diego.

The complaint allegations make clear that this lawsuit was brought against Sheriff Gore in his official capacity. "'Official capacity suits generally represent only another way of pleading an action against the entity of which the officer is an agent.' *Chew v. Gates*, 27 F.3d 1432, 1446 n.15 (9th Cir. 1994) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)), petition for cert. filed, 63 U.S.L.W. 3463 (U.S. Nov. 28, 1994) (No. 94-980); see also *Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358, 361-62 (1991). Thus, the district court [would be] correct in dismissing the action [against the Sheriff] as duplicative of the cause of action against the county. See *Id*." *Ponce v. Lloyd*, 46 F.3d 1144 (9th Cir. 1995).

It is proper to dismiss Sheriff Gore from this lawsuit because he is being sued in his official capacity as opposed to individual capacity. See *Rojas v. Sonoma Cnty*., No. C-11-1358 EMC, 2011 WL 5024551, at *2 (N.D. Cal. Oct. 21, 2011) [dismissal of Sheriff who was sued in his official capacity along with the County of Sonoma.]

/ / /

/ / /

"In an official-capacity suit, the government entity is the real party in interest and the plaintiff must show that the entity's policy or custom played a part in the federal law violation. In contrast, in a personal-capacity suit, the plaintiff is trying to place liability directly on the state officer for actions taken under the color of state law. *Hafer v. Melo*, 502 U.S. 21, 25–27, 112 S.Ct. 358, 362, 116 L.Ed.2d 301 (1991); *Brandon v. Holt*, 469 U.S. 464, 471–73, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985). The Court follows other District Courts in holding that if individuals are being sued in their official capacity as municipal officials and the municipal entity itself is also being sued, then the claims against the individuals are duplicative and should be dismissed. See e.g. *Carnell v. Grimm*, 872 F.Supp. 746 (D.Haw.1994)."

*Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996).

The government entity is the real party in interest in a municipal federal civil rights action, therefore naming its official capacity officer as a defendant is unnecessary and duplicative.

"Following *Monell*, the Supreme Court first appeared to indicate a § 1983 plaintiff could proceed against a local government entity directly as a named defendant, or indirectly through an "official capacity" officer. *Brandon v. Holt*, 469 U.S. 464, 470–72, 105 S.Ct. 873, 877–78, 83 L.Ed.2d 878 (1985). Later that year, however, the Supreme Court noted the *Monell* decision rendered official-capacity suits against local officers unnecessary:

There is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, ..., local government units can be sued directly for damages and injunctive or declaratory relief.

*Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985).

One circuit has interpreted this case as establishing the local government entity as the real party in interest. Unless a plaintiff intends to state a cause of action against a local government official in a personal capacity, the local government entity, not the official, should be named:

Because [the plaintiffs] sought to sue [the officer] in his official rather than personal capacity, the [local government entity], and not [the officer], was the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985).

*Rosa R. v. Connelly*, 889 F.2d 435, 437 (2nd Cir.1989).

> After the *Monell* holding, it is no longer necessary or proper to name as a defendant a particular local government officer acting in official capacity.  To do so only leads to a duplication of documents and pleadings, as well as wasted public resources for increased attorneys fees.  A plaintiff cannot elect which of the defendant formats to use.  If both are named, it is proper upon request for the Court to dismiss the official-capacity officer, leaving the local government entity as the correct defendant.  If only the official-capacity officer is named, it would be proper for the Court upon request to dismiss the officer and substitute instead the local government entity as the correct defendant."

*Luke v. Abbott*, 954 F. Supp. 202, 203-204 (C.D. Cal. 1997).

Accordingly Sheriff William Gore should be dismissed from this lawsuit.

II

NO CLAIM IS STATED AGAINST LESLEE HALL WITH RESPECT TO THE INVESTIGATION OF DECEDENT'S DEATH

The SAC purports to assert a section 1983 claim against Leslee Hall for conducting an inadequate investigation into decedent's death, but plaintiffs fail to identify what constitutional right was vested in decedent or plaintiffs that she violated and which caused decedent's death.  Although Title "42 U.S.C. § 1983 authorizes redress; that section is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 fn. 3 (1979).

No claim is stated against Hall not only because she is not alleged to have violated any constitutional right, but also because she owed no duty to plaintiffs as she did not know or interact with decedent or plaintiffs, and also because the investigation occurred after the death.  A law enforcement officer owes no duty to any member of the public absent existence of a special relationship between the officer and the member of the public. *Williams v. State of California* (1983) 34 Cal.3d 18; *Rose v. County of Plumas* (1984) 152 Cal.App.3d 999.  Here, there was no special relationship.  Hall therefore owed no duty to plaintiffs to conduct the investigation.  Furthermore, because a person's civil rights cannot be violated after death, and the investigation was conducted after

7

1    decedent's death, the plaintiffs' claim against Hall regarding the adequacy of the

2    investigation conducted by her is not actionable.  *Guyton v. Phillips*, 606 F.2d 248, 250

3    (9th Cir.1979); *Whitehurst v. Wright*, 592 F.2d 834, 840–841 (5th Cir.1979); *McQurter v.*

4    *City of Atlanta*, 572 F.Supp. 1401, 1419 (N.D.Ga.1983).

5          Plaintiffs allege Hall's investigation was inadequate.  The allegation suggests

6    negligence or other tort liability.  However, under state law Hall owed no duty to

7    plaintiffs and would otherwise also be immune to liability for the investigation conducted

8    because plaintiffs cannot seek relief on account of a negligent investigation or negligent

9    investigatory conduct.  Cal. Gov't. Code § 821.6; *Amylou R. v. County of Riverside*, 28

10   Cal.App.4th 1205, 1210, 1214 (1994).  Also, [no tort liability arises from] investigations

11   undertaken by law enforcement officers conducting criminal investigations because they

12   are discretionary acts that fall within the immunity protection set forth in Government

13   Code section 820.2.  *Kemmerer v. County of Fresno*, 200 Cal.App.3d 1426 (1988).

14         Hall is not alleged to have violated any recognized constitutional right.  Neither

15   does the SAC allege that she knew or interacted with decedent or plaintiffs, and so Hall

16   owed plaintiffs no duty.  Finally, all Hall's acts or omissions during the investigation

17   occurred only after the decedent's death.  Hall should therefore be dismissed as a

18   defendant with prejudice.

19                                              III

20              GOVERNMENT CLAIMS ACT NON-COMPLIANCE BARS

21                      ALL STATE TORT CLAIMS

22         The submission of a claim to a government entity is a condition precedent to any

23   claim for money damages against the entity or its employees.  (Cal. Gov't Code § 945.4.)

24   Pursuant to Cal. Gov't Code § 911.2(a), the claim must be presented within six months of

25   accrual of cause of action.  Statutes for commencement of actions against public entities

26   "'are mandatory and must be strictly complied with...'[citations omitted.]"  *Smith v. City*

27   *and County of San Francisco*, 68 Cal.App.3d 227, 230 (1977).  "[F]ailure to file a claim

28   is fatal to a cause of action." *Dilts v. Cantua Elem. Sch. Dist.*, 189 Cal. App. 3d 27, 31

                                              8

1   (1987).  In this matter, plaintiffs did not file a claim within six months of decedent's

2   death.  Plaintiffs allege they did not file a claim until September 11, 2014, almost 2 years

3   after decedent's death.  (FAC ¶ 55.)

4          Where a claim for the death of an individual is not timely filed, the claimant may

5   file with the public entity a written application for leave to present the late claim to the

6   public entity; however, that late claim application must be submitted no later than one

7   year after the accrual of the cause of action upon which the claim is made.  Cal. Gov't.

8   Code § 911.4(b).  In this matter plaintiffs did not file a late claim application with the

9   County within one year of decedent's death.

10         Where a late claim application under section 911.4 has been denied by the public

11   entity, the claimant may then file a petition to the superior court to be relieved of the

12   claim filing requirements of section 945.4 as a prerequisite to a lawsuit.  Cal. Gov't. Code

13   § 945.6(a).  The superior court that would be the proper court for the trial of an action on

14   the cause of action to which the claim relates has sole jurisdiction to rule upon the

15   petition.  *Id.*  In this matter plaintiffs did not file a 945.6 petition to be relieved of having

16   to comply with the claims filing requirement.

17         Plaintiffs allege that the County should be estopped from asserting plaintiffs' non-

18   compliance with the Government Claims Act as bar to plaintiffs' intended state claims.

19   (FAC ¶ 56-66, fn. 1 to 8th c/a).  Estoppel is here inapplicable.  California Evidence Code

20   section 623 codifies the doctrine of estoppel: "Whenever a party has , by his own

21   statement or conduct, intentionally and deliberately led another to believe a particular

22   thing true and to act upon such belief, he is not, in any litigation arising out of such

23   statement or conduct, permitted to contradict it."  Estoppel most commonly results from

24   misleading statements about the need for or advisability of a claim.  *John R. v. Oakland*

25   *Unified School Dist.,* 48 Cal.3d 438, 445 (1989).  "[W]hether an agency, which had been

26   put on notice of a pending claim, should be estopped because of advice given to the

27   claimant 'concerning his substantive rights against the agency, depends upon whether the

28   public agency acted in an unconscionable manner or otherwise set out to, or did take

9

unfair advantage of plaintiff.'" *Fredrichsen v. City of Lakewood*, 6 Cal. 3d 353, 358 (1971).

The plaintiff in *Fredrichsen* was found to be entitled to assert estoppel in rebuttal to the city's claims non-compliance defense because she made affirmative contacts with the city to try and timely comply with claims filing requirements, but was deterred by the city's failure to provide her with a claim form and directed her to seek relief from a private company. The plaintiffs here do not allege any facts to show they took any steps towards filing a claim within six months of decedent's death or filing an application to submit a late claim within one year of decedent's death, or even petitioned the superior court for relief of having to file a claim, or that the County did anything to deter them from filing a claim.

There is no allegation that the County provided any statement to plaintiffs to advise them about or deter them from pursuing a claim for the death of decedent. There are no facts that the County inhibited plaintiffs from pursuing their own investigation into the circumstances of the death, or obstructed plaintiffs from filing a claim on a timely basis. The SAC contends only that the defendants' investigation into the death was lacking, and that it therefore estops the defendants from asserting the claim filing requirements as a bar to plaintiffs' tort claims. Not so, because the defendants did not assume any duty to conduct an investigation for the benefit of plaintiffs; plaintiffs cannot seek relief on account of a negligent investigation or investigatory conduct. Cal. Gov't. Code § 821.6; *Amylou R. v. County of Riverside*, 28 Cal.App.4th 1205, 1210, 1214 (1994).

Estoppel is also here inapplicable.

Plaintiffs alternatively contend that submission of a claim in September 2014 should be deemed timely under the delayed discovery doctrine. Plaintiffs contend their claim was timely because they did not find out the circumstances of decedent's death until the Citizens' Law Enforcement Review Board issued its preliminary allegations and findings regarding the death. (FAC ¶ 51.) A cause of action ordinarily accrues when the wrongful act occurs, the liability arises, and the plaintiff is entitled to prosecute an action.

*Howard Jarvis Taxpayers Assn. v. City of La Habra*, 25 Cal.4th 809, 815 (2001); *Norgart v. Upjohn Co*., 21 Cal.4th 383, 397 (1999).  In other words, a cause of action accrues "upon the occurrence of the last element essential to the cause of action."  *Howard Jarvis Taxpayers Assn*., *supra,* 25 Cal.4th at 815.  The delayed discovery rule is an exception to the general rule, and provides that a cause of action does not accrue until a plaintiff discovers, or reasonably should discover, the cause of action. "A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.' (Citations)" *Fox v. Ethicon Endo-Surgery, Inc*., 35 Cal.4th 797, 807 (2005). The elements that the plaintiff must suspect are the generic elements of wrongdoing, causation, and harm.  (*Ibid*.)  A plaintiff who suspects that he or she has suffered an injury caused by the wrongdoing of another is charged with the knowledge that a reasonable investigation would reveal, and the limitations period begins to run at that time. *Id*. at 807-08 & n.2.  Here plaintiffs were aware of the decedent's death when it occurred and so could have conducted their own investigation or filed a timely claim.

Plaintiffs' cite to *K.J. v. Arcadia Unified School District*, 172 Cal. App.4th 1229 (2009), does not assist their delayed discovery contention in this matter.  *K.J.* was a minor who was sexually exploited by a school employee.  It was not until years later that she became aware that she had been victimized and thus had incurred a loss for which a claim could ensue.  The claim she filed some four years after she was exploited was considered timely due to her delayed discovery of the harm she incurred.  The present matter is completely different in that there is no factual basis to indicate that plaintiffs were delayed in becoming aware of the decedent's death, and unable to conduct their own investigation.  In *Munoz v. State of California*, 33 Cal.App.4th 1767 (1994), plaintiff's decedent died in prison.  Plaintiff sought but did not receive the decedent's medical records.  Plaintiff argued that until plaintiff could acquire the medical records for plaintiff's deceased father, plaintiff could not file a claim in good faith.  The trial court's ruling, which was affirmed on appeal, rejected the argument noting that such specificity is not required for a claim under the Government Claim Act.

11

1     According to *Ovando v. City of Los Angeles*, 92 F. Supp. 2d 1011, 1023 (C.D. Cal.

2   2000), one of the cases cited by plaintiffs in support of their argument that their tort

3   claims should be deemed timely under the discovery principle, that principle applies

4   "when the plaintiffs neither had information of the circumstances sufficient to put a

5   reasonable person on inquiry notice nor had the opportunity to obtain such knowledge

6   from sources available upon reasonable investigation." *Ovando v. City of Los Angeles*,

7   *supra,* 92 F. Supp. 2d at 1023.  Whether plaintiffs have exercised due diligence in

8   discovering their tort claim is one of fact. *Id*.  Here, plaintiffs do not allege that they were

9   not aware of their decedent's death within the six-month claims period.  Neither do they

10   allege any facts to show they did not have reasonable person inquiry notice or the ability

11   to conduct a reasonable inquiry.

12     With respect to their estoppel argument, *Ovando v. City of Los Angeles*, 92 F.

13   Supp. 2d 1011, does not apply to forgive them from their non-compliance with the claim

14   filing requirements, because there is no allegation that affirmative action was taken to

15   deter plaintiffs from filing a claim.  "A public entity may be estopped from asserting non-

16   compliance with the CTCA when affirmative acts of its agents, especially authority

17   figures, deterred the filing of a timely claim.  *Christopher P.*, 19 Cal.App.4th at 170–73,

18   23 Cal.Rptr.2d at 357–59 (allegation that authority figure directed child not to tell about

19   molestation, thereby delaying filing of claim, sufficient to invoke equitable estoppel)."

20   *Ovando v. City of Los Angeles*, *supra,* 92 F. Supp. 2d at 1024.  In *Ovando,* the child and

21   her mother were under principles of delayed discovery and estoppel allowed to proceed

22   on their negligence and emotional distress claims arising out of the wrongful conviction

23   of the child's father Javier Ovando.  Javier was convicted on the false testimony of one

24   Officer Perez who was involved in the "Rampart" police corruption scandal.  Perez'

25   conduct was not revealed until  after expiration of the claim and relief from claim

26   periods.  The principles of delayed discovery and estoppel were deemed applicable

27   because Officer Perez' affirmative conduct was intended to make the prosecutor, judges

28   and others rely on his false information as the truth.  The present matter is distinguishable

because the investigation of decedent's death was only allegedly inadequate.  Neither is there any allegation that the investigation was conducted with intent that plaintiffs rely thereon.  Neither delayed discovery nor delayed accrual or estoppel apply to save plaintiffs tort claims.

In the related case of *Ovando v. City of Los Angeles*, 159 Cal.App.4th 42 (2008), the appellate court rejected Javier Ovando's contention that the legal malpractice claim he sought to pursue against his public defender for wrongful conviction did not accrue until his convictions were set aside.  The Court of Appeal concluding that any impediment to his ability to *prove* his cause of action did not delay *accrual* of that cause of action.  A plaintiff's inability to prove an element of a cause of action does not compel the conclusion that the plaintiff does not *suspect, or have reason to suspect, a factual basis* for such an element.  *Ovando*, *supra,* 159 Cal.App.4th at 69-70.  The fact that the *Ovando* plaintiff had been criminally convicted did not prevent him from knowing he was innocent, or at least suspecting that he was innocent.  Similarly once aware of decedent's death, plaintiffs were obliged to file a claim within six months of the death and to conduct such investigation as may have allowed them to prove the claim.

Plaintiffs' tort claims are barred by their failure to file a timely claim, and are not saved by the doctrines of estoppel or delayed discovery.

IV

NO CLAIM FOR NEGLIGENT TRAINING IS STATED BY THE COMPLAINT BECAUSE IT IS NOT A CLAIM COGNIZABLE UNDER THE CALIFORNIA TORT CLAIMS ACT

The ninth cause of action contains an allegation of negligent hiring, training and supervision.  (FAC ¶¶ 204-207).  No cause of action is stated because negligent hiring, training, and supervision is not a cognizable statutory theory of recovery that can be maintained against the County under the California Tort Claims Act ("CTCA").  *DeVillers v. County of San Diego*, 156 Cal.App.4th 238, 253, 256 (2007).  The CTCA provides the exclusive scope of tort liability for government entities and employees.  Gov't. Code § 810 et seq.; see also Legislative Committee Comment to Govt. Code

13

§ 814.  "[T]he intent of the [CTCA] is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances." *Williams v. Horvath*, 16 Cal.3d 834, 838 (1976).  Common law governmental tort liability was eliminated by the CTCA.  *Datil v. City of Los Angeles*, 263 Cal.App.2d 655, 660 (1968).  As a result, in California all governmental tort liability whether against a public entity or its employees is dependent on the existence of an authorizing statute.  *Searcy v. Hemet Unified School Dist.*, 177 Cal.App.3d 792, 802 (1986); Gov't. Code § 815(a).  Plaintiffs' cause of action for negligent training is directed against the County as an employer, and ". . . there is no statutory basis for declaring a governmental entity liable for negligence in its hiring and supervision practices and, accordingly, plaintiffs' claim against County based on that theory is barred." *DeVillers*, 156 Cal.App.4th at 253.

Because under the CTCA there is no statutory basis for public entity liability for negligent hiring, training, and supervision no such cause of action can be stated by the complaint.  "We conclude that a direct claim against a governmental entity asserting negligent hiring and supervision, when not grounded in the breach of a statutorily imposed duty owed by the entity to the injured party, may not be maintained." *DeVillers*, 156 Cal.App.4th at 256.  The motion to dismiss should be granted to the ninth cause of action for negligent training.

V

THE COUNTY IS IMMUNE TO SUIT FOR WRONGFUL DEATH
UNDER GOVERNMENT CODE SECTION 844.6

Government Code Section 844.6(a)(2) provides in pertinent part that a public entity is not liable for an injury to any prisoner.  Victorianne, who at all relevant times was lawfully confined in the Central jail, is a prisoner as a matter of law within the meaning of section 844.6(a)(2), and the immunity from suit for the entity is absolute. *Reed* v. *County of Santa Cruz,* 37 Cal.App.4th 1274 (1995); *Savitt* v. *Jordan* 142 Cal.App.3d 820 (1983).

14

1    Plaintiffs may contend that a public entity immunity like that in Gov't. Code

2  section 844.6(a)(2) does not apply to C.C.P. section 377.60 or Civil Code section 52.1

3  actions.  That contention has been rejected by the courts of this state.  A wrongful death

4  action brought by the wife of a prisoner who died while being treated at a county hospital

5  was barred by the doctrine of governmental immunity (Gov't. C. § 844.6, subd. (a)(2)),

6  under which liability for the death of a prisoner caused by the negligence of a public

7  entity was precluded.  *Lowman* v. *County of Los Angeles,* 127 Cal App 3d 613 (1982).  In

8  *Gates* v. *Superior Court*, 32 Cal.App.4th 481 (1995), the court rejected the contention that

9  the provisions of the Unruh Civil Rights Act superseded entity immunities proscribed by

10  the Tort Claims Act for two reasons: the government immunity was a jurisdictional bar to

11  pursuing any claim for money damages, and there is no evidence that the Legislature ever

12  intended to obviate governmental immunities set out in the Tort Claims Act and therefore

13  vest the courts with jurisdiction to hear such claims for monetary relief.   While *Gates*

14  related only to the immunity provided in Government Code section 845, the *Gates* court's

15  reasoning regarding the jurisdictional effect of government immunity on the provisions of

16  Civil Code section 52.1 applies here with equal force.  The County must therefore be

17  dismissed without further leave to amend.

18                                     VI

19              NO 52.1 CLAIM IS STATED AGAINST DEFENDANT
                         COUNTY OF SAN DIEGO
20

21    No claim under Civil Code section 52.1 can be asserted directly against the County

22  of San Diego.  First, because there is no express statutory authority under the California

23  Tort Claims Act (CTCA) that allows a damage claim under section 52.1 to be asserted

24  directly against public entities, the County of San Diego cannot be subject to section 52.1

25  liability.  See *DeVillers v. County of San Diego*, 156 Cal. App. 4th 238, 252 (2007)

26  [CTCA requires statute authorizing the damage claim to be asserted against public

27  entity].  Second, the County is entitled to dismissal of the 52.1 cause of action since it is

28  not a "person" within the meaning of section 52.1.  California Civil Code section 14

                                     15

states, "the word person includes a corporation as well as a natural person." The County is neither a corporation nor natural person. Also, the statute was enacted to combat hate crimes, and "the statute applies to private actors as well as government agents." *Venegas v. County of Los Angeles*, 153 Cal.App.4th 1230, 1242 (2007). The section does not apply to government entities.

Finally, no Civil Code section 52.1 claim is stated because there is no allegation of "an attempted or completed act of interference with a legal right, accompanied by a form of coercion." *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (1998). "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., "threats, intimidation or coercion"), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was no required to do under the law." *Austin B. v. Escondido Union School Dist.*, 149 Cal.App.4th 860, 883 (2007). As was explained in *Justin v. City & County of San Francisco*, 2008 U.S. Dist. LEXIS 36468, * 26 (N.D. CA 2008):

> "[A] claim under section 52.1 cannot be predicated on allegations that Defendants used force to interfere with Mr. Brown's right to be free from bodily restraint or harm. [citation omitted]. Section 52.1 is only applicable when a defendant intends by his or her conduct to interfere with a separate, affirmative right enjoyed by a plaintiff; it does not apply to a plaintiffs allegation of use of excessive force absent a showing that the act was done to interfere with a separate state or federal constitutional right."

See also *Austin B. v. Escondido Union School Dist.*, 149 Cal.App.4th 860 (2007) [nonsuit granted teacher of autistic children who was sued for battery and violation of section 52.1; although the alleged battery could be construed as threats, violence, or intimidation, there was no corresponding evidence that it caused students to lose their constitutional right to an education.] No 52.1 claim stated because defendants did not by threat, intimidation or coercion prevent plaintiffs or decedent from engaging in any constitutionally protected activity.

/ / /

/ / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VII

### THE COUNTY IS STATUTORILY IMMUNE TO ANY CLAIM FOR PUNITIVE DAMAGES UNDER GOVERNMENT CODE SECTION 818

A public entity is not liable for exemplary damages awarded under Section 3294 of the Civil Code or other damages imposed primarily to punish a public entity defendant. (Gov't. Code § 818.)  Section 818 absolutely immunizes the County from liability for punitive or exemplary damages.  [4 Cal.L.Rev.Comm. Reports 801 (1963).]

## VIII

### REFERENCES TO THE ESTATE OF BERNARD VICTORIANNE ARE IMPROPER AND SHOULD BE STRICKEN

Rule 17(b) of the Federal Rules of Civil Procedure provides that the capacity of an individual to sue or be sued shall be determined by the law of the individual's domicile, or law of the state in which the court is located; which is California.  Only a duly appointed estate representative or a successor in interest has standing to litigate a claim on behalf of a decedent.  Cal. Code Civ. Proc. § 377.30; Cal. Prob. Code § 9820.  In the present matter Zelda Victorianne has been allowed to proceed as the successor in interest to the claims surviving decedent's death.  The "decedent's successor in interest" means the beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action.  Cal. Code Civ. Proc. § 377.11.  "Beneficiary of the decedent's estate" means the sole person (or if the person died with a will then the named beneficiary) or all of the persons (beneficiaries) who succeed to a cause of action of the decedent.  Cal. Code Civ. Proc. § 377.10.  In seeking to be recognized as the decedent's successor in interest, Zelda Victorianne informed the court that no probate proceeding was instituted by reason of decedent's death.  As a result there is no estate existing.   However, both the caption of the first amended complaint, the first unnumbered paragraph of the amended complaint, and paragraph 4 reference the "Estate of Bernard Victorianne" as a plaintiff, with decedent's mother, Zelda Victorianne, proceeding as the successor in interest to the decedent's estate.

1    Immaterial, impertinent, or scandalous matters may be stricken from a complaint.

2    Fed.R.Civ.P., Rule12(f) .  Immaterial means the matter has no bearing on the controversy

3    before the court.  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1424, 1527 (9th Cir. 1993).

4    Impertinent means the matter is not relevant to issues involved in the action and could be

5    excluded as evidence in the action.  *Id*.  Because there is no estate, references to the

6    Estate of Bernard Victorianne as a plaintiff and to Zelda Victorianne proceeding as

7    successor in interest to the Estate of Bernard Victorianne are improper and should be

8    stricken from the complaint.

9    <center>CONCLUSION</center>

10    For all the foregoing reasons, the SAC should be dismissed against Sheriff Gore

11    because the claims against him are brought in his official capacity and are duplicative of

12    the claims against the County.  The SAC should also be dismissed as to Leslee Hall for

13    failure to state a claim.  All tort causes of action should be dismissed for non-compliance

14    with Government Code claim filing requirements.  In alternative to outright dismissal of

15    the entire state law claim for wrongful death, the County should be dismissed on the

16    grounds it is immune to suit for injury to Victorianne under Government Code section

17    844.6.  The allegations of the ninth claim for negligent supervision should be dismissed

18    as it is not a cognizable claim under the Tort Claims Act.  The claim against the County

19    for punitive damages should be dismissed under California Government Code section

20    818.  Finally, any references to the Estate of Bernard Victorianne and the other lawsuits

21    alleged in the SAC should be stricken.

22    DATED: June 16, 2015                    THOMAS E. MONTGOMERY, County Counsel

23

24                                                    By: /s/ RICKY R. SANCHEZ, Senior Deputy
                                                      Attorneys for Defendants County of San Diego,
25                                                    William Gore, and Leslee Hall

26

27

28