1  THOMAS E. MONTGOMERY, County Counsel
   County of San Diego
2  By RICKY R. SANCHEZ, Senior Deputy (SBN 107559)
   1600 Pacific Highway, Room 355
3  San Diego, California 92101-2469
   Telephone: (619) 531-4874   Fax: (619) 531-6005
4  E-mail: ricky.sanchez@sdcounty.ca.gov

5  Attorneys for Defendants County of San Diego, William Gore, Leslee Hall, and Earl
   Goldstein, M.D.
6

7

8              **IN THE UNITED STATES DISTRICT COURT**

9           **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

11  THE ESTATE OF BERNARD                    )  No. 14-cv-2170-WQH (BLM)
    VICTORIANNE by and through its           )
12  successor-in-interest ZELDA              )  MEMORANDUM OF POINTS AND
    VICTORIANNE, BERNARD                     )  AUTHORITIES IN SUPPORT OF
13  VICTORIANNE II, and ZELDA                )  MOTION TO DISMISS AND TO
    VICTORIANNE,                             )  STRIKE PARTS OF THE SECOND
14                                           )  AMENDED COMPLAINT BY EARL
           Plaintiffs,                       )  GOLDSTEIN, M.D.
15                                           )
           v.                                )
16                                           )
    COUNTY OF SAN DIEGO,                     )
17  WILLIAM GORE, in his individual          )  Date: Aug 24, 2015
    capacity; PATRICK GARDNER, an            )  Hon. William Q. Hayes
18  individual, LESLEE HALL, an individual,  )
    EDMUNDO GARCIA, an individual;           )
19  LAUDENTE GALLEGOS, an individual,        )
    GUYNEMER ALMAZAN, an individual,         )
20  DEPUTY FLORES, an individual,            )  NO ORAL ARGUMENT UNLESS
    DEPUTY LIEN, an individual, KEITH        )  REQUESTED BY THE COURT
21  RUSSELL, an individual, ARTHUR           )
    AYALA, an individual, KENNETH            )
22  RICHTER, an individual, PETER HUANG,     )
    an individual, ZVJEZDAN NUHIC, an        )
23  individual, ELLEN GABEL, an individual,  )
    ELLEN GABEL, an individual, AILEEN       )
24  LONGNO, an individual, REBECCA           )
    SIVILAY, an individual, CORAZON          )
25  ROQUE, an individual, DEBORAH BELL,      )
    an individual, BRUCE LEICHT, an          )
26  individual, EARL GOLDSTEIN, an           )
    individual, and DOES 1 - 50,            )
27                                           )
           Defendants.                       )
28  _____ )

# TOPICAL INDEX

Page

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ............................................................................. 1

LEGAL STANDARD FOR DISMISSAL............................................. 1

ARGUMENT:

    I.    ALL FEDERAL CLAIMS SHOULD BE DISMISSED AGAINST DR. GOLDSTEIN BECAUSE THE SECOND AMENDED COMPLAINT ALLEGES CLAIMS AGAINST HIM ONLY IN HIS OFFICIAL CAPACITY WHICH CLAIMS ARE DUPLICATIVE OF THE MUNICIPAL FEDERAL CIVIL RIGHTS CLAIM AGAINST THE COUNTY AND THERE IS NO FACTUAL BASIS FOR PERSONAL LIABILITY ................................................................................ 2

        A. An Official Capacity Claim Is But A Claim Against The Entity ......... 2

        B. No Personal Liability Claim Is Stated Against Dr. Goldstein ............. 5

        C. Absent a Constitutional Right to the Implementation of Particular Medical Policies No Constitutional Claim Is Stated Against Dr. Goldstein ................................................................................. 8

    II.   DR. GOLDSTEIN IS NOT LIABLE FOR WRONGFUL DEATH BECAUSE THERE IS NO FACTUAL ALLEGATION THAT HE PERSONALLY INTERACTED WITH VICTORIANNE ....................... 9

    III.  NO CLAIM FOR NEGLIGENT TRAINING IS STATED BY THE SAC BECAUSE IT IS NOT A CLAIM COGNIZABLE UNDER THE CALIFORNIA TORT CLAIMS ACT ..................................................... 10

    IV.  GOVERNMENT CLAIMS ACT NON-COMPLIANCE BARS ALL STATE TORT CLAIMS ........................................................................ 11

    V.   REFERENCES TO THE ESTATE OF BERNARD VICTORIANNE ARE IMPROPER AND SHOULD BE STRICKEN ............................... 14

CONCLUSION ................................................................................. 15

ii

1
2

# TABLE OF AUTHORITIES
## Cases

3

Page

4   *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................... 1, 2

5   *Canton v. Harris*, 489 U.S. 378 (1989) .................................................................6

6   *Datil v. City of Los Angeles*, 263 Cal.App.2d 655 (1968) ..................................11

    *Davis v. City of Ellensburg*, 869 F.2d 1230 (9th Cir. 1989) .................................6

7   *DeVillers v. County of San Diego*, 156 Cal.App.4th 238 (2007) ............... 10, 11

8   *Dilts v. Cantua Elem. Sch. Dist.*, 189 Cal. App. 3d 27 (1987) ..........................11

9   *Estelle v. Gamble*, 429 U.S. 97 (1976) .................................................................7

10  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1424 (9th Cir. 1993)....................................14

11  *Farmer v. Brennan*, 511 U.S. 825 (1994) .............................................................7

12  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797 (2005) ...............................13

    *Frost v. Agnos*, 152 F.3d 1124 (9th Cir. 1998)......................................................7

13  *Howard Jarvis Taxpayers Assn. v. City of La Habra*, 25 Cal.4th 809 (2001) .................12

14  *Ileto v. Glock Inc.*, 349 F.3d 1191 (9th Cir. 2003)................................................2

15  *Jeffers v. Gomez,* 267 F.3d 895 (9th Cir. 2001)....................................................7

16  *K.J. v. Arcadia Unified School District*, 172 Cal. App.4th 1229 (2009)...........13

17  *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)....................................3, 4, 5, 8

    *Luke v. Abbott*, 954 F. Supp. 202 (C.D. Cal. 1997)...............................................5

18  *McGuckin v. Smith*, 974 F.2d 1050 (9th Cir. 1992)...............................................7

19  *Michael v. Smith*, 188 Cal. 199, 201 (1922) .......................................................10

20  *Mitchell v. Dupnik*, 75 F.3d 517 (9th Cir. 1996) ..................................................3

21  *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978) ..............3, 4, 5, 6

22  *Moss v. United States Secret Serv.*, 572 F.3d 962 (9th Cir. 2009) .......................2

23  *Munoz v. State of California*, 33 Cal.App.4th 1767 (1994).................................13

    *Navarro v. Block*, 250 F.3d 729 (2001) .................................................................1

24  *Norgart v. Upjohn Co.*, 21 Cal.4th 383 (1999).....................................................12

25  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530 (9th Cir. 1984) .............1

26  *Searcy v. Hemet Unified School Dist.*, 177 Cal.App.3d 792 (1986) ...................11

27  *Smith v. City and County of San Francisco*, 68 Cal.App.3d 227 (1977)............11

28  *Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) .......................2

iii

**TABLE OF AUTHORITIES**
Cases
**(Continued)**

Page

*Taylor v. List*, 880 F.2d 1040 (9th Cir. 1989) .............................................6, 9

*Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993 (N.D. Cal. 1996) ...................4

*Williams v. Horvath*, 16 Cal.3d 834 (1976) ........................................................10

*Wilson v. Seiter*, 501 U.S. 294 (1991) ..................................................................7

*WMX Tech., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) .................................7

*Ybarra v. Reno Thunderbird Mobile Homes Village*, 723 F.2d 675 (9th Cir. 1984)............6

## **RULES/STATUTES**

**Government Code**
    Section 810 et seq.........................................................................................10
    Section 814....................................................................................................10
    Section 815(a) .........................................................................................11, 12
    Section 911.2(a) ...........................................................................................11
    Section 911.4................................................................................................12
    Section 911.4................................................................................................12
    Section 911.8................................................................................................12
    Section 945.4.........................................................................................11, 12
    Section 946.6................................................................................................12

**Federal Rules of Civil Procedure**
    Rule 12(b)(6) ..................................................................................................1
    Rule 17(b).....................................................................................................14
    Rule 8(a)(2) .....................................................................................................1

**California Code of Civil Procedure**
    Section 377.10..............................................................................................14
    Section 377.11..............................................................................................14
    Section 377.30..............................................................................................14

**California Probation Code**
    Section 9820..................................................................................................14

iv

INTRODUCTION

Bernard Victorianne, age 28, died in his cell one week after he was booked into the San Diego Central jail.  The original complaint alleges police officers took Victorianne to Alvarado Hospital when he was seen swallowing a baggie of drugs during his arrest, that the hospital cleared him for booking into jail, and one week thereafter he died in jail because jail personnel failed to treat him for a methamphetamine overdose.

The Second Amended Complaint (SAC) adds Dr. Earl Goldstein and others as defendants.  The SAC lists 10 claims, each having a header listing the defendants against whom the claim is directed.  The following claims are directed at Dr. Goldstein: 1st C/A (deliberate indifference to serious medical needs); 4th C/A (failure to properly train); 5th C/A (failure to properly supervise and discipline); 6th C/A (failure to properly investigate); 8th C/A (wrongful death); and 9th C/A (negligence). Dr. Earl Goldstein hereby moves for dismissal of the SAC against him because it fails to state a claim against him and fails to allege facts showing he had any personal involvement with Victorianne that would subject him to personal liability.  Defendant also moves to strike references to the Estate of Bernard Victorianne.

LEGAL STANDARD FOR DISMISSAL

A Rule 12(b)(6) motion tests whether a plaintiff's claims are legally sufficient. See Fed.R.Civ.P. Rule 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (2001).  Dismissal is appropriate when the complaint fails to allege a cognizable legal theory or sufficient facts to support such a theory.  *Robertson v. Dean Witter Reynolds, Inc*., 749 F.2d 530, 533 (9th Cir. 1984).  Under Federal Rule of Civil Procedure, rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," and although Rule 8 "does not require 'detailed factual allegations,' it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009).  "[T]he tenet a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. at 678. While legal conclusions can provide the framework of a complaint, they must be

1

supported by factual allegations. *Id.* at 679. Also, the court is not obliged to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit" or those which are "merely conclusory," require "unwarranted deductions" or "unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) [citation omitted], amended on other grounds, 275 F.3d 1187 (9th Cir. 2001); see also *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) (court need not accept as true unreasonable inferences or conclusions of law cast in the form of factual allegations). To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter, which when taken as true, demonstrates the claim is "plausible on its face." *Ashcroft*, 556 U.S. at 678.

> "A claim has facial plausibility," the Court explained, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In sum, for a complaint to survive a motion to dismiss, the non-conclusory "factual content," and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief. *Id.*

*Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

## I

ALL FEDERAL CLAIMS SHOULD BE DISMISSED AGAINST DR. GOLDSTEIN BECAUSE THE SECOND AMENDED COMPLAINT ALLEGES CLAIMS AGAINST HIM ONLY IN HIS OFFICIAL CAPACITY WHICH CLAIMS ARE DUPLICATIVE OF THE MUNICIPAL FEDERAL CIVIL RIGHTS CLAIM AGAINST THE COUNTY AND THERE IS NO FACTUAL BASIS FOR PERSONAL LIABILITY

A.   An Official Capacity Claim Is But A Claim Against The Entity.

The first, fourth, fifth and sixth causes of action allege alternative policies as a basis for municipal federal civil rights liability. No facts are alleged that Dr. Goldstein

2

14-cv-2170-WQH (BLM)

1    personally interacted with Victorianne, or was aware of Victorianne's medical condition

2    when he was in the jail, or himself provided medical treatment to Victorianne, or directed

3    others on what care to administer to Victorianne.

4           The SAC alleges that in his capacity as the Medical Director for the Sheriff's

5    Department, Dr. Goldstein oversaw the development and implementation of quality

6    assurance and utilization review policies and procedures (SAC ¶ 11); that he failed to set

7    forth policies and procedures for the proper care of inmates in medical distress (SAC ¶

8    142) and in particular failed to implement policies with respect to the evaluation and

9    treatment of inmates suffering from drug overdose (SAC ¶ 144); failed to train medical

10   and psychiatric doctors and nurses on the necessary care of inmates suffering from

11   serious medical conditions including drug overdose and failed to implement policies and

12   procedures with respect to proper training (¶ 169); failed to provide adequate supervision

13   and discipline to the medical staff and to promulgate and enforce adequate policies and

14   procedures related to misconduct and civil rights violations by medical staff (¶ 178, 180);

15   and failed to properly investigate the misconduct of medical staff (¶ 244) all of which

16   plaintiffs allege was deliberately indifferent to Victorianne's constitutional rights and the

17   moving force of his death.

18          These are all policy-based allegations relating to Dr. Goldstein's alleged failure to

19   act in his official capacity rather than upon his personal knowledge of Victorianne's

20   medical condition or involvement in his ongoing treatment.  The SAC does not allege

21   facts that Dr. Goldstein ever contacted Victorianne, knew of his condition, or instructed

22   anyone to deliver or withhold any medical services.

23          A lawsuit against an entity's official policy maker in his or her official capacity is

24   but a lawsuit against the entity itself; it is therefore unnecessary to name as defendants

25   both the entity and the official capacity defendant.  *Kentucky v. Graham*, 473 U.S. 159,

26   167 n.14 (1985); *Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996).  "Official-capacity

27   suits . . . 'generally represent only another way of pleading an action against an entity of

28   which an officer is an agent.' *Monell v. New York City Dept. of Social Services*, 436 U.S.

                                            3

658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 1978). . . .  It is not a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham,* 473 U.S. at 165-66.

> "In an official-capacity suit, the government entity is the real party in interest and the plaintiff must show that the entity's policy or custom played a part in the federal law violation. In contrast, in a personal-capacity suit, the plaintiff is trying to place liability directly on the state officer for actions taken under the color of state law.  *Hafer v. Melo*, 502 U.S. 21, 25–27, 112 S.Ct. 358, 362, 116 L.Ed.2d 301 (1991); *Brandon v. Holt*, 469 U.S. 464, 471–73, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985). The Court follows other District Courts in holding that if individuals are being sued in their official capacity as municipal officials and the municipal entity itself is also being sued, then the claims against the individuals are duplicative and should be dismissed. See e.g. *Carnell v. Grimm*, 872 F.Supp. 746 (D.Haw.1994)."

*Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996).

Because the government entity is the real party in interest in a municipal federal civil rights action, naming its official capacity officer as a defendant is unnecessary and duplicative.

> "Following *Monell*, the Supreme Court first appeared to indicate a § 1983 plaintiff could proceed against a local government entity directly as a named defendant, or indirectly through an "official capacity" officer. *Brandon v. Holt*, 469 U.S. 464, 470–72, 105 S.Ct. 873, 877–78, 83 L.Ed.2d 878 (1985). Later that year, however, the Supreme Court noted the *Monell* decision rendered official-capacity suits against local officers unnecessary:

>> There is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, ..., local government units can be sued directly for damages and injunctive or declaratory relief.

> *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985).

One circuit has interpreted this case as establishing the local government entity as the real party in interest. Unless a plaintiff intends to state a cause of action against a local government official in a personal capacity, the local government entity, not the official, should be named:

4

> Because [the plaintiffs] sought to sue [the officer] in his official rather than personal capacity, the [local government entity], and not [the officer], was the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985).

*Rosa R. v. Connelly*, 889 F.2d 435, 437 (2nd Cir.1989).

> After the *Monell* holding, it is no longer necessary or proper to name as a defendant a particular local government officer acting in official capacity.  To do so only leads to a duplication of documents and pleadings, as well as wasted public resources for increased attorney's fees.  A plaintiff cannot elect which of the defendant formats to use.  If both are named, it is proper upon request for the Court to dismiss the official-capacity officer, leaving the local government entity as the correct defendant.  If only the official-capacity officer is named, it would be proper for the Court upon request to dismiss the officer and substitute instead the local government entity as the correct defendant."

*Luke v. Abbott*, 954 F. Supp. 202, 203-204 (C.D. Cal. 1997)

See also *Rojas v. Sonoma Cnty.*, No. C-11-1358 EMC, 2011 WL 5024551, at *2 (N.D. Cal. Oct. 21, 2011) [Sheriff who was sued in his official capacity dismissed from action also filed against the County of Sonoma.]

There is but one proper defendant relative to the first, forth, fifth and sixth causes of action of the SAC and that is the County of San Diego.  It is therefore proper to dismiss the federal claims against Dr. Goldstein because he is being sued in his official capacity as opposed to individual capacity.

B.   No Personal Liability Claim Is Stated Against Dr. Goldstein.

As to Dr. Goldstein, the question presented by the SAC is whether personal liability can be imposed on a municipal policy maker for the official capacity act of making municipal policy.  The answer must be a resounding "No".  All allegations in the SAC against Dr. Goldstein pertain only to his alleged adoption and alleged failure to adopt policies in his official capacity as the Sheriff's Department Medical Director.  As an alleged official policy maker for the County of San Diego's Sheriff's Department, its policies and customs would allegedly be County policies upon which municipal federal civil rights liability can be imposed on the County if the policies can be proven to have

5

14-cv-2170-WQH (BLM)

directed the commission of a violation of plaintiffs' constitutional rights. *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690-691 (1978). A systemically inadequate program could also be considered a "policy or custom" for municipal civil rights liability claims, if the inadequate program evidences deliberate indifference to a constitutional right, was the moving force of the employee's commission of a constitutional violation, and was adopted by one of the defendant entity's authorized policy makers. *Canton v. Harris*, 489 U.S. 378, 389-391 (1989). It is insufficient to show that a particular officer inappropriately reacted to a situation or was unsatisfactorily trained or supervised; rather the plaintiff must prove a "widespread practice" of inadequately training officers under circumstances showing deliberate indifference to the need for new or additional training. *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989); *Canton*, 489 U.S. at 390-391.

In contrast to a municipal federal civil rights claim there is individual federal civil rights liability. Regardless of what rank a local government employee holds in the government hierarchy, whether called a subordinate or supervisor, that employee may only be subject to individual personal section 1983 liability for his or her own acts under color of law because there is no vicarious section 1983 liability. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Palmer v. Sanderson*, 9 F.3d 1433, 1437-1438 (9th Cir. 1993). Thus a constitutional injury can be inflicted by a government employee during physical interaction with the plaintiff for which there could be personal liability. An employee who does not physically interact with the plaintiff can also be subject to individual liability if he or she instructs another person to harm the plaintiff. *Ybarra v. Reno Thunderbird Mobile Homes Village*, 723 F.2d 675, 680 (9th Cir. 1984) [superior not personally liable under section 1983 for constitutional deprivations by subordinates absent his participation in or specific issuance of directions regarding the alleged deprivation]. In either situation, a necessary prerequisite to personal individual liability is knowledge of or actual contact with the plaintiff by the defendant government employee. / / /

For purposes of a claim against an individual for deliberate indifference to serious medical needs, the claim arises from the Eighth Amendment which proscribes jail officials from denying, delaying or interfering with prisoners' receipt of medical care for known serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104, 105 (1976). The Eighth Amendment sets the standard for evaluating both convicted prisoners' and pretrial detainees' claims of being denied medical care. *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Eighth Amendment liability, however, attaches only if the denial, delay or interference resulted from jail personnel's deliberate indifference to the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. at 104, 105. To establish deliberate indifference the evidence must show that the defendant jail personnel purposefully acted or purposefully failed to act so as to deny, delay or interfere with the prisoner's receipt of care for the serious medical condition. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) [partially overruled on unrelated issue concerning appeals of dismissals without prejudice - *WMX Tech., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997)]. An individual acts with deliberate indifference only if the person acts with a "culpable" state of mind, such that he or she "knows of and disregards an excessive risk to inmate health and safety." *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). It is not enough that the individual was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, he must also draw that inference." *Farmer*, 511 U.S. at 837. If the individual should have known about the risk but was not, then the person has not violated the Eighth Amendment no matter how severe the risk. *Jeffers v. Gomez,* 267 F.3d 895, 914 (9th Cir. 2001). A person's "failure to alleviate a significant risk that he should have perceived but did not, . . . cannot . . . be condemned as the infliction of punishment." *Farmer,* 511 U.S. at 838.

Here, there is no allegation that Dr. Goldstein knew, met, interacted with, or knew of Victorianne's medical condition in the jail, or that he instructed anyone to render or withhold medical services from him, or to ignore his need for medical services, or to harm him in any fashion. Therefore, there is no factual basis for any claim against Dr.

Goldstein in his individual capacity.  The SAC alleges only that Dr. Goldstein by virtue of his policy making position adopted or failed to adopt policies that allegedly caused plaintiffs to incur a constitutional deprivation.  Such allegations are but the basis for an official capacity claim, that is, a municipal federal civil rights claim against the County.

The allegations that Dr. Goldstein adopted or failed to adopt policies also cannot be the basis of a claim against him in his individual capacity because in his individual capacity he would be entitled to claim qualified immunity for his policy making actions. *Kentucky v. Graham*, 473 U.S. at 167.  [Because it is not clearly established law that individual liability can be imposed on an official policy maker for the official capacity act of adopting policy the SAC cannot state a claim for personal liability based thereon.]  But qualified immunity is not available to a person sued in his or her official capacity, for to do so would extend qualified immunity to the entity, which immunity is inapplicable to public entities. *Id*.  It is this context, that any claim against Dr. Goldstein in his individual capacity for making policy is internally inconsistent and legally infirm.

Because the allegations against Dr. Goldstein in the SAC are confined to his adoption of policies that form the basis of plaintiffs' municipal federal civil rights liability claim, those very allegations along with the absence of factual allegations regarding personal interaction between him and Victorianne, establish that he is not being sued in his individual capacity, but only in an official capacity and therefore is without personal liability for any of the matters alleged. Dr. Goldstein should therefore be dismissed because the claim against him in his official capacity is duplicative of the municipal federal civil right claim against the County, and there is no basis for asserting personal liability against him.

C.   Absent a Constitutional Right to the Implementation of Particular Medical Policies No Constitutional Claim Is Stated Against Dr. Goldstein.

Plaintiffs' premise their civil rights claim against Dr. Goldstein on his alleged failure to implement proper policies with respect to the evaluation and treatment of

14-cv-2170-WQH (BLM)

1   inmates suffering from drug overdose and training of medical staff.  The SAC does not

2   allege what particular policies are constitutionally required.  The generalized allegation of

3   the SAC is thus insufficient to state a claim.

4       On June 1, 2015, the United States Supreme Court decided *Taylor v. Barkes*, 135

5   S. Ct. 2042 (2015), a section 1983 action brought by the widow of a deceased inmate

6   who hanged himself; the widow claimed that defendant prison officials violated the

7   inmate's Eighth Amendment right in failing to prevent his suicide by failing to supervise

8   and monitor the private contractor medical providers —including the intake suicide

9   screening—at the prison.  The defendant prison officials' motion for summary judgment

10  was denied by the district court which the Third Circuit Court of Appeals affirmed the

11  finding that an incarcerated individual had a clearly established Eighth Amendment right

12  to the proper implementation of adequate suicide prevention protocols.  The Supreme

13  Court reversed and ordered judgment in favor of the defendants stating:  "No decision of

14  this Court establishes a right to the proper implementation of adequate suicide prevention

15  protocols. No decision of this Court even discusses suicide screening or prevention

16  protocols. *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015).

17      Because plaintiffs' civil rights claim against defendants is premised on the alleged

18  maintenance of a deficient medical evaluation protocols, it would appear incumbent on

19  plaintiffs to factually allege what specific medical policy is constitutionally required to be

20  implemented to state a claim for inadequate policies.  The SAC has no allegations beyond

21  the conclusory allegations regarding policy inadequacy.  The federal claims in the SAC

22  should therefore be dismissed as to Dr. Goldstein.

23          II

24      DR. GOLDSTEIN IS NOT LIABLE FOR WRONGFUL
    DEATH BECAUSE THERE IS NO FACTUAL ALLEGATION THAT HE
25      PERSONALLY INTERACTED WITH VICTORIANNE

26      As stated previously, there is no allegation that Dr. Goldstein knew, met, interacted

27  with, or knew Victorianne or his parents, or that he instructed anyone to render or

28  withhold medical services from Victorianne, or to ignore his need for medical services, or

harm him in any fashion.  Under state tort law there is no vicarious liability.  Cal. Gov't. Code § 820.8.  Section 820.8 states:  "Except as otherwise provided by statute, a public employee is not liable for an injury caused by the act or omission of another person.  Nothing in this section exonerates a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission."  Neither the head of a law enforcement agency nor government co-employees are responsible for the acts of subordinates or co-workers: "A public officer is not responsible for the acts or omissions of subordinates properly employed by or under him, if such subordinates are not in his private service, but are themselves servants of the government, unless he has directed such acts to be done or has personally co-operated therein." *Michael v. Smith*, 188 Cal. 199, 201 (1922). Because there is no vicarious liability, where there are multiple defendants, the acts and omissions of each must be separately analyzed to determine the existence of individual liability.  Because there are no factual allegations regarding personal tortious conduct by Dr. Goldstein that is causally connected to Victorianne's death no wrongful death tort claim is stated against him.

## III

### NO CLAIM FOR NEGLIGENT TRAINING IS STATED BY THE SAC BECAUSE IT IS NOT A CLAIM COGNIZABLE UNDER THE CALIFORNIA TORT CLAIMS ACT

The ninth cause of action for negligence alleges negligent supervision of medical staff by Dr. Goldstein.  (SAC ¶ 292).  No cause of action is stated because negligent hiring, training, and supervision is not a cognizable statutory theory of recovery that can be maintained against the County or its employees under the California Tort Claims Act ("CTCA").  *DeVillers v. County of San Diego*, 156 Cal.App.4th 238, 253, 256 (2007). The CTCA provides the exclusive scope of tort liability for government entities and employees.  Gov't. Code § 810 et seq.; see also Legislative Committee Comment to Govt. Code § 814.  "[T]he intent of the [CTCA] is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances."  *Williams v. Horvath*, 16 Cal.3d 834, 838 (1976).

14-cv-2170-WQH (BLM)

Common law governmental tort liability was eliminated by the CTCA. *Datil v. City of Los Angeles*, 263 Cal.App.2d 655, 660 (1968). As a result, in California all governmental tort liability whether against a public entity or its employees is dependent on the existence of an authorizing statute. *Searcy v. Hemet Unified School Dist.*, 177 Cal.App.3d 792, 802 (1986); Gov't. Code § 815(a). Plaintiffs' cause of action for negligent training is an employer directed claim, the employer in this instance is the County of San Diego and ". . . there is no statutory basis for declaring a governmental entity liable for negligence in its hiring and supervision practices and, accordingly, plaintiffs' claim against County based on that theory is barred." *DeVillers*, 156 Cal.App.4th at 253.

Because under the CTCA there is no statutory basis for public entity or employee liability for negligent hiring, training, and supervision no such cause of action can be stated. "We conclude that a direct claim against a governmental entity asserting negligent hiring and supervision, when not grounded in the breach of a statutorily imposed duty owed by the entity to the injured party, may not be maintained." *DeVillers*, 156 Cal.App.4th at 256. The motion to dismiss should be granted to the ninth cause of action for negligent training.

IV

GOVERNMENT CLAIMS ACT NON-COMPLIANCE BARS
ALL STATE TORT CLAIMS

The submission of a claim to a government entity is a condition precedent to any claim for money damages against the entity or its employees. (Cal. Gov't Code § 945.4.) Pursuant to Cal. Gov't Code § 911.2(a), the claim must be presented within six months of accrual of cause of action. Statutes for commencement of actions against public entities "'are mandatory and must be strictly complied with...'[citations omitted.]" *Smith v. City and County of San Francisco*, 68 Cal.App.3d 227, 230 (1977). "[F]ailure to file a claim is fatal to a cause of action." *Dilts v. Cantua Elem. Sch. Dist.*, 189 Cal. App. 3d 27, 31 (1987). In this matter, plaintiffs did not file a claim within six months of decedent's

1    death.  Plaintiffs allege they did not file a claim until September 11, 2014, almost 2 years

2    after decedent's death.  (SAC ¶ 105.)

3          Where a claim for the death of an individual is not timely filed, the claimant may

4    file with the public entity a written application for leave to present the late claim to the

5    public entity; however, that late claim application must be submitted no later than one

6    year after the accrual of the cause of action upon which the claim is made.  Cal. Gov't.

7    Code § 911.4(b).  In this matter plaintiffs did not file a late claim application with the

8    County within one year of decedent's death.

9          Where a late claim application under section 911.4 has been denied by the public

10   entity, the claimant may then file a petition to the superior court to be relieved of the

11   claim filing requirements of section 945.4 as a prerequisite to a lawsuit.  Cal. Gov't. Code

12   §§ 946.6, 911.8.  The superior court that would be the proper court for the trial of an

13   action on the cause of action to which the claim relates had jurisdiction to rule upon the

14   petition.  Cal. Gov't Code § 946.6.  In this matter plaintiffs did not file a 946.6 petition to

15   be relieved of having to comply with the claims filing requirement.

16         Plaintiffs allege that submission of their claim in September 2014 should be

17   deemed timely under the delayed discovery doctrine.  (SAC fn. 1 to 8th c/a).  Plaintiffs

18   contend their claim was timely because they did not find out the circumstances of

19   decedent's death until the Citizens' Law Enforcement Review Board issued its

20   preliminary allegations and findings regarding the death.  (SAC ¶ 99.)  A cause of action

21   ordinarily accrues when the wrongful act occurs, the liability arises, and the plaintiff is

22   entitled to prosecute an action.  *Howard Jarvis Taxpayers Assn. v. City of La Habra*, 25

23   Cal.4th 809, 815 (2001); *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 397 (1999).  In other

24   words, a cause of action accrues "upon the occurrence of the last element essential to the

25   cause of action."  *Howard Jarvis Taxpayers Assn.*, *supra,* 25 Cal.4th at 815.  The delayed

26   discovery rule is an exception to the general rule, and provides that a cause of action does

27   not accrue until a plaintiff discovers, or reasonably should discover, the cause of action.

28   "A plaintiff has reason to discover a cause of action when he or she 'has reason at least to

12

suspect a factual basis for its elements.' (Citations)" *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 807 (2005).  The elements that the plaintiff must suspect are the generic elements of wrongdoing, causation, and harm.  (*Id*.)  A plaintiff who suspects that he or she has suffered an injury caused by the wrongdoing of another is charged with the knowledge that a reasonable investigation would reveal, and the limitations period begins to run at that time.  *Id*. at 807-08.  Here plaintiffs were aware of the decedent's death when it occurred and so could have conducted their own investigation or filed a timely claim.

Plaintiffs' cite to *K.J. v. Arcadia Unified School District*, 172 Cal. App.4th 1229 (2009), which case does not assist their delayed discovery contention in this matter.  *K.J.* was a minor who was sexually exploited by a school employee.  It was not until years later that she became aware that she had been victimized and thus had incurred a loss for which a claim could ensue.  The claim she filed some four years after she was exploited was considered timely due to her delayed discovery of the harm she incurred.  The present matter is completely different in that there is no factual basis to indicate that plaintiffs were delayed in becoming aware of the decedent's death, and unable to conduct their own investigation.  In *Munoz v. State of California*, 33 Cal.App.4th 1767 (1994), plaintiff's decedent died in prison.  Plaintiff sought but did not receive the decedent's medical records.  Plaintiff argued that until plaintiff could acquire the medical records for plaintiff's deceased father, plaintiff could not file a claim in good faith.  The trial court's ruling, which was affirmed on appeal, rejected the argument noting that such specificity is not required for a claim under the CTCA.

Plaintiffs' tort claims are barred by their failure to file a timely claim, and are not saved by the doctrine of delayed discovery.

/ / /

/ / /

/ / /

/ / /

13

V

## REFERENCES TO THE ESTATE OF BERNARD VICTORIANNE
### ARE IMPROPER AND SHOULD BE STRICKEN

Rule 17(b) of the Federal Rules of Civil Procedure provides that the capacity of an individual to sue or be sued shall be determined by the law of the individual's domicile, or law of the state in which the court is located; which is California.  Only a duly appointed estate representative or a successor in interest has standing to litigate a claim on behalf of a decedent.  Cal. Code Civ. Proc. § 377.30; Cal. Prob. Code § 9820.  In the present matter Zelda Victorianne has been allowed to proceed as the successor in interest to the claims surviving decedent's death.  The "decedent's successor in interest" means the beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action.  Cal. Code Civ. Proc. § 377.11.  "Beneficiary of the decedent's estate" means the sole person (or if the person died with a will then the named beneficiary) or all of the persons (beneficiaries) who succeed to a cause of action of the decedent.  Cal. Code Civ. Proc. § 377.10.  In seeking to be recognized as the decedent's successor in interest, Zelda Victorianne informed the court that no probate proceeding was instituted by reason of decedent's death.  As a result there is no estate existing.   However, both the caption of the SAC, the first unnumbered paragraph of the SAC, and paragraph 4 reference the "Estate of Bernard Victorianne" as a plaintiff, with decedent's mother, Zelda Victorianne, proceeding as the successor in interest to the decedent's estate.

Immaterial, impertinent, or scandalous matters may be stricken from a complaint.  Fed.R.Civ.P., Rule12(f).  Immaterial means the matter has no bearing on the controversy before the court.  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1424, 1527 (9th Cir. 1993).  Impertinent means the matter is not relevant to issues involved in the action and could be excluded as evidence in the action.  *Id*.  Because there is no estate, references to the Estate of Bernard Victorianne are improper and should be stricken from the SAC.

/ / /

/ / /

14-cv-2170-WQH (BLM)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CONCLUSION

For all the foregoing reasons, the SAC should be dismissed against Dr. Goldstein because the federal claims against him are brought in his official capacity and are duplicative of the claims against the County; there is no factual allegation regarding personal conduct by Dr. Goldstein that would subject him to personal liability on the federal or state tort claims; no claim for negligent supervision is stated by the SAC because it is not a cognizable claim under the Tort Claims Act, and no tort claim is stated because of non-compliance with Government Code claim filing requirements.  Finally, references to the Estate of Bernard Victorianne should be stricken.

DATED: July 15, 2015                    THOMAS E. MONTGOMERY, County Counsel

                                        By: /s/ RICKY R. SANCHEZ, Senior Deputy
                                        Attorneys for Defendants County of San Diego,
                                        William Gore, Leslee Hall and Earl Goldstein, M.D.

15