1  EUGENE G. IREDALE: SBN 75292
2  JULIA YOO:  SBN 231163
   GRACE JUN: SBN 287973
3  IREDALE & YOO, APC
   105 West F Street, Fourth Floor
4  San Diego, CA 92101-6036
   TEL: (619) 233-1525   FAX: (619) 233-3221
5
6  R. STAN MORRIS
   CARTEE & MORRIS, LLAC
7  2325 Henry Street
   Guntersville, AL 35976
8  Attorneys for Plaintiffs
9
              UNITED STATES DISTRICT COURT
10            THE SOUTHERN DISTRICT OF CALIFORNIA
11
   THE ESTATE OF BERNARD              )
12 VICTORIANNE by and through         ) Case No. 14CV2170 WQH BLM
   its successor-in-interest ZELDA    )
13 VICTORIANNE, BERNARD               ) **PLAINTIFFS' OPPOSITION TO**
   VICTORIANNE II, and ZELDA          ) **DEFENDANTS' MOTION TO DISMISS**
14 VICTORIANNE,                       ) **AND TO STRIKE PARTS OF THE**
                                      ) **SECOND AMENDED COMPLAINT**
15            Plaintiffs,             )
                                      )
16 v.                                 )
                                      )
17 COUNTY OF SAN DIEGO,               ) Date: August 3, 2015
18 WILLIAM GORE, LESLEE               )
   HALL and DOES 1 - 50,              )
19                                    )
              Defendants.             )
20                                    ) NO ORAL ARGUMENT UNLESS
                                      )
21                                    ) REQUESTED BY THE COURT
                                      )
22                                    )
                                      )
23                                    )
                                      )
24                                    )
                                      )
25                                    )
                                      )
26                                    )
                                      )
27                                    )
                                      )
28 _____  )

# TABLE OF CONTENTS

I.     INTRODUCTION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    WILLIAM GORE IS SUED IN HIS INDIVIDUAL CAPACITY.. . . . . . . . 2

III.   PLAINTIFFS PROPERLY ALLEGED FAILURE TO INVESTIGATE. . . . .

       A.   The Estate of Bernard Victorianne Has Properly Alleged a

            Constitutional Violation.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

       B.   Bernard and Zelda Victorianne Have Properly Alleged a Constitutional

            Violation.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV.    PLAINTIFFS HAVE COMPLIED WITH THE TORT CLAIMS ACT. . .  11

V.     ALLEGATIONS OF NEGLIGENT TRAINING OR SUPERVISION

       AGAINST THE COUNTY IN THE NINTH CAUSE OF ACTION SHOULD

       BE STRICKEN. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

VI.    THE COUNTY IS LIABLE FOR THE WRONGFUL DEATH OF

       BERNARD VICTORIANNE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

VII.   THE COUNTY IS VICARIOUSLY LIABLE FOR THE VIOLATIONS OF

       CIVIL CODE § 52.1 COMMITTED BY ITS EMPLOYEES    . . . . . . . .  18

VIII.  DEFENDANTS' ARGUMENT THAT REFERENCES TO THE "ESTATE"

       SHOULD BE STRICKEN ARE FRIVOLOUS AND WITHOUT

       SUPPORT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

IX.    CONCLUSION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

i

# TABLE OF AUTHORITIES

**Cases**

*Bell v. City of Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984). . . . . . . . . . . . . .   10

*Chambers v. Baltimore & Ohio Railroad*, 207 U.S. 142 (1907). . . . . . . . . . . . . . .   9

*Crews v. Petrosky*, 509 F.Supp. at 1204. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

*Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir.2000). . . . . . . . . . . . . . . . .   8

*Christopher P. v. Mojave Unified School Dist.*, 19 Cal. App. 4th 165, 170 (Cal.
App. 5th Dist. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*DeVillers v. County of San Diego* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*Frary v. County of Marin*, 2015 U.S. Dist. LEXIS 24115, *51-52 (N.D. Cal.
February. 25, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

*Gates v. Superior Court*, 32 Cal. App. 4th 481 (Cal. App. 2d Dist. 1995). . . . . . .   18

*Guyton v. Phillips*, 606 F.2d 248 (9th Cir.1979). . . . . . . . . . . . . . . . . . . . . . . . .   10

*Hanna v. Plumer*, 380 U.S. 460, 464 (1965). . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*Harris v. Pate,* 440 F.2d 315 (7th Cir.1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

*Hickenbottom v. Nassan*, 2007 U.S. Dist. LEXIS 24336, *117-118 (W.D. Pa. Mar.
30, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

*In re Conservatorship of Estate of Hume*, 139 Cal. App. 4th 393 (2006). . . . . .   19, 20

*John R. v. Oakland Unified School Dist.*, 48 Cal. 3d 438, 446 (Cal. 1989). . . .   13, 14

*J.P. v. Carlsbad Unified School Dist.*, 232 Cal. App. 4th 323, 333-334 (Cal. App.
4th Dist. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14, 15

*K.J. v. Arcadia Unified.*, 172 Cal. App. 4th 1229 (Cal. Court. App.2009). . . .   12, 13

*Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir.1991). . . . . . . . . . . . . . . . . .   6

*Leon v. Cnty. of San Diego,* 115 F. Supp. 2d 1197, 1199 (S.D. Cal. 2000). . . . .   6, 7

*Lowman v. County of Los Angeles*, 127 Cal. App. 3d 613 (2d Dist. 1982). . . . . .   18

*McQurter v. City of Atlanta*, 572 F.Supp. 1401(N.D.Ga.1983). . . . . . . . . . . . . .   10

*Ryland v. Shapiro*, 708 F.2d 967 (5th Cir. La. 1983) . . . . . . . . . . . . . . . . . . . . . .   10

*Shafer v. City of Boulder*, 896 F. Supp. 2d 915 (D. Nev. 2012). . . . . . . . . . . . . .   7

1   *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir.2011). . . . . . . . . . . . . . . . . . . . . . . .   7

2   *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007).  . . . . . . .   14

3   *Uganda Knapps v. City of Oakland*, 647 F. Supp. 2d 1129 (N.D. Cal. 2009).   18, 19

4   *Whitehurst v. Wright*, 592 F.2d 834 (5th Cir.1979).  . . . . . . . . . . . . . . . . . . .   10, 11

5   *Wolff v. McDonnell,* 418 U.S. 539 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

6

7   **Statutes, Court Rules, and other Authorities**

8   Cal. Civ. Code § 52.1.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18, 19

9   Cal. Civ. Proc.  §377.30. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

10  Cal. Gov. Code § 815.2(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

11  Cal. Gov. Code § 844.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

12  Cal Gov Code § 845.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

13  Cal. Gov. Code § 911.2(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12, 13

14  Cal. Prob. Code § 6400. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

15  Title 15 § 1046.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

16  Fed. R. Civ. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14, 15

17  Fed. R. Civ. P. 12(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

18

19

20

21

22

23

24

25

26

27

28

# I.
## INTRODUCTION

On September 12, 2012, Bernard Victorianne was arrested for driving under the influence.  Jail staff knew that Bernard Victorianne had ingested drugs before being booked and was screaming that "something was burning his insides," but jail staff failed to provide him with medical care.  According to Citizens' Law Enforcement Review Board (CLERB) findings, jail staff failed to monitor Bernard, locking him up in administrative segregation; left him to die in his cell; lied about their conduct during the investigation; and failed to properly investigate Bernard's death.

Defendants Gardner and Hall intentionally failed to interview the two deputies who were the last to see Bernard alive.  Defendants failed to interview the medical staff who were responsible for rendering medical care to Bernard.  Defendants failed to provide substantive information regarding the circumstances of Bernard's death to the Medical Examiner's Office.  After Bernard's death, the Sheriff's Department withheld information regarding the circumstances surrounding Bernard's death from his parents.  Mr. and Mrs. Victorianne discovered the facts of this case from CLERB's report nearly two years after his death.  Because they did not know the circumstances around Bernard's death, Plaintiffs did not file a tort claim with the County of San Diego.

Having violated Sheriff's Policy on investigation of inmate death by refusing to interview key witnesses which resulted in the information being withheld from the family, Defendants now move to dismiss Plaintiffs' claims under California state law asserting that Plaintiffs did not timely file a Government Tort Claim.  Defendants request that the Court dismiss the state causes of action because "there are no facts that the County **inhibited plaintiffs from pursuing their own investigation** into the circumstances of the death, or obstructed plaintiffs from filing a claim on a timely basis."  [Docket No. 84-1] Defendants make this claim

1

1 despite resisting discovery efforts by Plaintiffs, asserting that documents related to
2 the investigation of the deputies' misconduct was privileged and not subject to
3 discovery.  [Docket No. 58]  Defendants' position appears to be that Plaintiffs
4 should be punished for not obtaining information from the Medical Examiners
5 office that did not exist and for not obtaining discovery from the Sheriff's
6 Department that the Defendants intentionally hid.

7     Defendants Gore and Hall mischaracterize the Plaintiffs' claims in the
8 Second Amended Complaint by claiming that Plaintiffs have sued Defendant Gore
9 in his official capacity and by claiming that Plaintiffs maintain a failure to
10 investigate claim under California law.  Neither is true.

**II.**
**WILLIAM GORE IS SUED IN HIS INDIVIDUAL CAPACITY**

12     Plaintiffs have sued Defendant William Gore in his individual capacity in the
13 Fourth, Fifth and Sixth causes of action for his own failure to properly train,
14 supervise; discipline; and investigate, apart from the County's *Monell* liability.
15 Defendant Gore declares that he is sued in his official capacity despite Plaintiffs'
16 repeated and specific allegations in the SAC that he is sued in his individual
17 capacity.  Gore then argues that the allegations against him in his official capacity,
18 which Plaintiffs did not make, are duplicative of the *Monell* claim against the
19 County.  Defendant Gore cannot prevail on a motion to dismiss by
20 mischaracterizing Plaintiffs' causes of action or arguing against legal theories that
21 do not exist.

22     Plaintiffs have alleged that Defendant William Gore was "responsible for the
23 hiring, screening, training, retention, supervision, discipline, counseling, and
24 control of all San Diego County Sheriff's Department custodial employees and/or
25 agents, medical staff and Doe Defendants."  SAC 8.  Gore was "the policy-maker
26 for the San Diego Sheriff's Department and responsible for promulgation of the
27 policies and procedures and allowance of the practices/customs pursuant to which
28 the acts of the Sheriff's Department alleged herein were committed, as well as the

2

supervision and control of officers who are or were employed by the Sheriff's, who are under his command and/or who report to him, including the Defendants to be named." *Id.* at 9. Plaintiffs have specifically alleged that Gore was aware of the repeated history of misconduct of his deputies, but took no action to train, supervise or discipline them. *Id.* at 187- 214. The SAC lists out the misconduct of Deputy Jeffrey Jackson, Deputy Marshall Abbott, and Sergeant Elizabeth Palmer as an example of Gore's subordinates who were allowed to engage in a series of misconduct. *Id.* Gore was on notice that his subordinates engaged in serious misconduct and he acted with reckless disregard in failing to take appropriate action.

Plaintiffs allege the following against Gore for his failure to properly train:

- Gore and others "have subjected decedent Bernard Victorianne and other persons similarly situated to a pattern of conduct consisting of continuing, widespread and persistent pattern of unconstitutional misconduct." *Id.* at 165.

- Defendants Gore, Goldstein, Leicht and Does have failed to maintain adequate and proper training necessary to educate deputies and medical staff as to the Constitutional rights of inmates; to prevent the consistent and systematic failure to provide medical care; and to train their deputies properly on welfare or cell checks. *Id.* at 166.

- Defendants Gore and Does, with reckless disregard, failed to train deputies on conducting proper cell checks. *Id.* at 167.

- "There has been an official policy of acquiescence in the wrongful conduct. Defendants failed to promulgate corrective policies and regulations in the face of repeated Constitutional violations" *Id.* 168.

- Defendant Gore, "[W]ith deliberate indifference, disregarded a duty to protect the public from official misconduct." *Id.* at 170.

- Despite their knowledge of previous instances of wrongful deaths in the jails, Defendants failed to properly train or retrain their deputies and medical staff to prevent deaths of inmates. *Id.* at 172.

- The constitutionally infirm lack of adequate training as to the individual defendants in this case caused Bernard Victorianne harm. *Id.* at 173.

- As a direct consequence of the failure of County of San Diego, Does, Goldstein, Leicht and Gore to properly train their officers and medical staff, Bernard Victorianne suffered unconstitutional treatment and inhumane conditions during his detention. *Id.* at 175.

3

Plaintiffs allege the following for failure to supervise and discipline:

- Gore failed to "provide adequate supervision and discipline to the medical staff who are required to render medical care that meet the standards of the Constitution." *Id.* at 178.

- Gore failed to "provide adequate supervision and discipline to officers..." *Id.* at 179.

- Gore failed to promulgate and enforce adequate policies and procedures related to misconduct and the violation of citizens' civil rights by deputies and medical staff. *Id.* at 180.

- Gore had a widespread history of ratifying deputy misconduct by failing to conduct appropriate investigations. *Id.* at 181.

- Defendants were aware of previous instances of untimely and wrongful deaths in the San Diego County Jails and failed to properly supervise and discipline their employees or agents. *Id.* at 182.

- Gore refused to investigate misconduct and/or took no remedial steps or action against deputies. *Id.* at 183.

- There has been an official policy of acquiescence in the wrongful conduct. Defendants failed to promulgate corrective policies and regulations in the face of repeated Constitutional violations. *Id.* at 185.

- Defendants condoned and acquiesced in the abusive behavior of their subordinates by refusing to retrain them, discipline them, or correct their abusive behavior. *Id.* at 186.

- Defendants were, or should have been, aware that the policy regarding supervision and discipline of officers who violated the civil rights of inmates or citizens was so inadequate that it was obvious that a failure to correct it would result in further incidents of dangerous and lawless conduct perpetrated by their subordinates. *Id.* at 216.

- In this case, Defendants County and Gore refused to take proper disciplinary action against Defendant Garcia, who lied during the investigation of Bernard's death. *Id.* at 217.

- Both CLERB and Internal Affairs sustained misconduct for dishonesty after an investigation and review of the surveillance video that directly contradicted [Defendant] Garcia's claims. *Id.* at 218.

- Defendants County and Gore refused to accept the recommended disciplinary action; changing the findings to "not sustained" for the allegation of dishonesty despite clear evidence of lying. *Id.* at 219.

- As a result of the Defendants' historical failure to properly supervise and discipline deputies, Defendants were deliberately indifferent to the needs of Plaintiff. The failure to supervise and discipline was the moving force behind the misconduct of the deputies, the denial of medical care on the Plaintiff, the retaliatory acts and the resulting pain and suffering and death. *Id.* at 220.

4

1

2    In Plaintiffs' failure to properly investigate claim against Gore, they have

3 alleged Gore maintained the following policies:

4    •    A de facto policy of not obtaining accurate and timely reports from
          deputies alleged to have been involved in misconduct or witnessed
5          misconduct. *Id.* at 224.

6    •    A de facto policy of allowing deputies to get together in the
          supervisors' office to collectively discuss the events before writing an
7          incident report. *Id.* at 225.

8    •    A de facto policy of allowing deputies alleged to have been involved in
          misconduct to watch the Jail security videos and discuss the incident
9          with their supervisor before writing an incident report. *Id.* at 226.

10   •    A de facto policy of allowing homicide investigators to intimidate
          witnesses; to ask leading questions, suggesting the answers; and to
11         summarize the interviews of inmates in their investigation files that
          distort the actual recorded statements of witnesses. *Id.* at 227.

12        Plaintiffs have alleged that Defendant Gore maintained a practice of refusing

13 to investigate specific instances of citizen complaints *Id.* at 231. Despite the

14 requirement under California state law that law enforcement departments

15 investigate complaints against their personnel, San Diego Sheriff's Department has

16 been violating this law for years. *Id.* at 233. Plaintiffs alleged five specific

17 instances in which the Department refused to investigate citizen complaints. *Id.* at

18 235. Plaintiffs have alleged:

19        "This custom, policy and practice of refusing to
          investigate citizen complaints of misconduct or to
20         discipline wrongdoers has encouraged additional
          misconduct of deputies. It has caused numerous sheriff's
21         deputies (including defendants Does herein) to engage in
          misconduct. It has also caused deputies, including Does
22         herein, to falsify their reports precisely because the
          deputies have come to believe that their improper acts
23         will not be investigated by the sheriff's department and
          thus they will never be held accountable for their
24         wrongful acts." *Id.* at 237.

25        Plaintiffs have alleged that "the longstanding pattern of failing to properly

26 investigate staff misconduct led to the actions or inactions of the deputies who

27 denied medical care to Bernard Victorianne. Defendants' pattern of failing to

28 investigate created a culture of unconstitutional acts and acts that violate the Jail's

5

own policies and procedures." *Id.* at 242.   Defendant Gore was personally aware of these failures but took no action to prevent harm to inmates, including Bernard Victorianne.   *Id.* at 243.

"Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir.1991).  The *Larez* Plaintiffs alleged that, in his individual capacity, Los Angeles Police Chief Darryl Gates was responsible for their constitutional deprivations because he condoned, ratified, and encouraged the excessive use of force by his subordinates.  At trial, Plaintiffs' expert testified that had he been in Chief Gates's shoes, he would have disciplined the individual officers and would have established new procedures for averting the reoccurrence of similar excesses in the future.  Yet, neither step was taken by Gates.  The Ninth Circuit found that the jury's verdict against Chief Gates was not plain error.

In *Leon v. Cnty. of San Diego,* 115 F. Supp. 2d 1197, 1199 (S.D. Cal. 2000), the family of an inmate who died  while in the custody of San Diego County jail brought suit against the County and the Sheriff, alleging  four causes of action: (1) violation of the Eighth and Fourteenth Amendments by acting with deliberate indifference to decedent's medical problems; (2) failure to train and supervise and violation of statutory duties causing constitutional violations; (3) policy, custom, and practice causing constitutional violations; and (4) medical negligence. Defendants argued that the complaint had failed to differentiate between Sheriff Kolender's alleged actions in his official capacity and his personal capacity. Defendants further argued that Plaintiffs' allegations were merely conclusory, and did not allege any facts to show Sheriff Kolender's personal involvement with the

1   decedent's death. The District Court in denying the Sheriff's Motion to Dismiss

2   found:

> "Plaintiffs' complaint makes direct allegations against
> Sheriff Kolender for his failure to train and supervise, to
> investigate, and to discipline.  Therefore, the court finds
> that Plaintiffs have made sufficient allegations against
> Kolender in his individual capacity to survive
> Defendants' motion to dismiss." *Id.* 1203.

6       Defendant Gore asserts that the "SAC nowhere alleges facts that Gore ever

7   personally contacted decedent, or knew of his condition at any time, or instructed

8   any individual to deliver or withhold any services to decedent." [Docket No. 84-1,

9   p. 9 of 23].   This has never been the standard for supervisory liability.  The Court

10  in *Leon v. Cnty. of San Diego* rejected the argument that the Sheriff must have some

11  personal involvement with the decedent's death.  In *Shafer v. City of Boulder*, 896

12  F. Supp. 2d 915 (D. Nev. 2012), Plaintiff sued the City, a number of deputies, and

13  the sheriff in his individual and official capacity.  In his Complaint, Shafer alleged

14  that Police Chief Finn violated his Fourth Amendment right by participating in an

15  illegal narcotics investigation. However, Finn did not originally authorize the

16  investigation nor did he later become part of it.  Unlike the other defendants, Chief

17  Finn was not personally involved in the illegal investigation. All parties agreed that

18  Chief Finn was out of town for training when someone else authorized the

19  investigation.   "Although the police Chief did not directly violate Shafer's Fourth

20  Amendment reasonable expectation of privacy, he may be liable, however, under a

21  theory of deliberate indifference." *Id.* at 934-35.  To be held liable under a theory

22  of deliberate indifference, "the supervisor need not be directly and personally

23  involved in the same way as are the individual officers who are on the scene

24  inflicting constitutional injury." *Starr v. Baca*, 652 F.3d 1202, 1205 (9th

25  Cir.2011)(quotation marks and citations omitted).   In § 1983 lawsuits, "supervisors

26  can be held liable for: (1) their own culpable action or inaction in the training,

27  supervision, or control of subordinates; (2) their acquiescence in the complained-of

28  constitutional deprivation; and (3) conduct that showed a reckless or callous

7

indifference to the rights of others." *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir.2000).  A supervisor's subsequent ratification of another's conduct can form the basis for liability under § 1983.  Plaintiffs have sufficiently alleged facts that Sheriff Gore failed to properly train, supervise, investigate and to discipline. Defendants' motion must be denied.

## III.
## PLAINTIFFS PROPERLY ALLEGED FAILURE TO INVESTIGATE

In their sixth cause of action for failure to properly investigate pursuant to 42 USC §1983, Plaintiffs have alleged that Defendant Leslee Hall's historical failure to investigate previous misconduct of deputies and her failure to properly investigate the death of Bernard Victorianne led to the Constitutional deprivation of Plaintiffs. First, Defendant Hall's historical and systemic failure to investigate created an environment in which deputies engaged in misconduct without fear of investigation or discipline.  The systemic failure to investigate led to the misconduct of deputies and medical staff in this case which caused the death of Bernard Victorianne. Second, Defendant Hall's refusal to  properly investigate the death of Bernard Victorianne and her participation in the cover-up of the misconduct led to the violation of the family's right to seek redress.  Plaintiffs have alleged the following:

- Upon information and belief, Defendants prevented families from obtaining necessary information in order to file a notice of claim with the County of San Diego to seek redress for Defendants' wrongdoing. *Id.* at 230.

- Defendants County of San Diego, Gore, Gardner, Hall, Goldstein, Leicht, and Supervisory Doe Defendants 41-50 historically and systematically engaged in a pattern of failure to properly investigate misconduct of deputies and medical staff.  *Id.* at 240.

- The systemic failures by all defendants to properly investigate led to the misconduct of the deputies and medical staff in this case. *Id.* at 246.

- Defendants Gardner, Hall and Supervisory Defendants Does 41-50 refused to properly investigate the death of Bernard Victorianne. Defendants covered up the misconduct of other deputies and withheld information from Bernard's family and the Medical Examiner. *Id.* at 248.

- Defendants Gore, Gardner, Hall by actively and intentionally failing to

investigate the death of Bernard Victorianne and the misconduct of deputies, acted with reckless disregard to the rights of Bernard Victorianne III and Zelda Victorianne. As a direct result of their actions, Plaintiffs were prevented from timely filing a Government Tort Claims for their state causes of action. Plaintiffs were denied access to the Courts under the Due Process Clause as a result of these Defendants' acts. *Id.* at 250.

- As a result of all Defendants' historical failure to properly investigate, Defendants were deliberately indifferent to the needs of Plaintiff Bernard Victorianne. The failure to investigate was the moving force behind the denial of medical care, and cruel and unusual punishment on the decedent Bernard Victorianne and the resulting pain and suffering and death. *Id.* at 251.

## A. The Estate of Bernard Victorianne Has Properly Alleged a Constitutional Violation.

Defendants argue that a claim against Leslee Hall may not be maintained because Bernard Victorianne may not maintain a claim for events that arose after his death, and because Defendant Hall has no duty to any member of the public absent a special relationship.  Plaintiffs have alleged that Defendant Hall's historical failure to investigate led to the misconduct of the jail staff whose failure to render medical aid to Bernard Victorianne caused his death.  Hall's failure to properly investigate deputy misconduct led to jail deputies and staff, including those involved in the death of Bernard Victorianne, engaging in constitutional violations with impunity.  Bernard Victorianne had a right before his death under the Constitution to be free from arbitrary loss of his life caused by personnel whose conduct was motivated by their assurance that no matter how gross their misconduct, they would not be investigated.

## B. Bernard Victorianne III and Zelda Victorianne Have Properly Alleged a Constitutional Violation.

Defendants covered up the misconduct of other deputies and withheld information from Bernard's family and the Medical Examiner.   As a result of Hall and others' failures, Plaintiffs were denied an opportunity to file a tort claim with the County of San Diego.  The right of access to the courts is a fundamental right protected by the Constitution. See *Chambers v. Baltimore & Ohio Railroad*, 207

U.S. 142 (1907); *Wolff v. McDonnell,* 418 U.S. 539 (1974)(defining the right of access in a civil rights action under section 1983);  *Crews v. Petrosky*, 509 F.Supp. at 1204 ("An allegation that a clerk of state court has negligently delayed the filing of a petition for appeal, and that the delay has interfered with an individual's right of access to the courts, may state a cause of action under 42 U.S.C. § 1983.") ; *Harris v. Pate*, 440 F.2d 315, 317 (7th Cir.1971) (prison authorities may not place burdens on right of access to courts).   By refusing to conduct a proper investigation, Hall covered up the wrongful acts of deputies and medical staff; prevented the information from getting to the family; and prevented Plaintiffs from filing a claim.

Courts have held that "conspiracy to cover up a killing, thereby obstructing legitimate efforts to vindicate the killing through judicial redress, interferes with the due process right of access to courts. . . ." *Bell v. City of Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984).   "This constitutional right is lost where . . . police officials shield from the public and the victim's family key facts which would form the basis of the family's claims for redress."  *Id.* at 1261.   Thus, "[w]here the estate of a deceased person has a valid cause of action and where the wrongful actors conspire to prevent prosecution of the claim . . . the conspiracy's victims are the deceased's survivor," and those survivors have been deprived of their right to due process.  *Id.* at 1264; *Hickenbottom v. Nassan*, 2007 U.S. Dist. LEXIS 24336, *117-118 (W.D. Pa. Mar. 30, 2007); *Ryland v. Shapiro*, 708 F.2d 967, 973 (5th Cir. La. 1983) ([T]he alleged unconstitutional actions here deprive the parents' protected rights.)

Defendant Hall asserts that Plaintiffs' claim is not actionable under *Guyton v. Phillips*, 606 F.2d248, 250 (9th Cir.1979); *Whitehurst v. Wright*, 592 F.2d 834, 840–841 (5th Cir.1979); and *McQurter v. City of Atlanta*, 572 F.Supp. 1401, 1419 (N.D.Ga.1983).   These courts have been careful to limit their holdings to claims asserting that coverup conspiracies violated rights of the

deceased.  For example, in *Whitehurst v. Wright*, the Fifth Circuit expressly stated that it was not holding that a coverup of a death "is without civil or criminal effect." 592 F.2d at 841.  In a footnote the *Whitehurst* court suggested that the coverup allegation was analogous to interference with a dead body, and the court noted that in such situations the cause of action for the wrong belongs not to the deceased (or even the estate) but instead to the survivor.  *Id.* at 840 n. 9.

Defendant Hall asserts that Plaintiffs' claim is under negligence.  It is not. Plaintiffs have made clear that Defendant Hall violated Plaintiffs' rights under the Constitution.  Therefore, Defendant Hall's reliance on immunity under the Government Code is moot.  Defendant Hall asserts that she has no duty to investigate despite the fact that the Minimum Standards for Local Detention Facilities under Title 15 is available on the San Diego Sheriff's own website at www.sdsheriff.net/jailinfo/title15.pdf.   Title 15 § 1046 requires a review of every in custody death.

## IV.
## PLAINTIFFS HAVE COMPLIED WITH THE TORT CLAIMS ACT

Plaintiffs have pled both estoppel and the delayed discovery doctrine with respect to their tort claims presentation to the County of San Diego on September 11, 2014.  (SAC ¶¶ 105-109, 113-116).  Although Bernard died on September 19, 2012 (*Id.* at ¶¶ 58-61), due to the conduct of Defendants, Plaintiffs were not aware of the circumstances of Bernard's death until September 5, 2014, when CLERB publicly disclosed their finding of serious misconduct by Sheriff's deputies and medical staff in this case.  (*Id.* ¶ 110).

County officials had only informed Bernard's parents, plaintiffs Zelda and Bernard Victorianne III ("Vic") , that their son had died of a drug overdose.  (*Id.*) Defendant Hall, in her homicide investigation, did not report that Bernard had pleaded for medical assistance for days prior to his death.  (*Id.* ¶ 82).  Nor did she report that Bernard had been placed in administrative segregation after exhibiting

signs of medical distress.  (*Id*. ¶¶ 42, 42).  Nowhere does Defendant Hall mention that the Sheriff's Department's own medical intake records noted that Bernard had been evaluated at Alvarado Hospital for ingesting a baggie of drugs and that Bernard had reported the same to medical staff.  (*Id*. ¶¶ 18-23).  And the investigation of Bernard's death violated the Sheriff's Department own internal policy by failing to interview or take reports from the last two deputies, Defendants Garcia and Gallegos, who witnessed Bernard alive.  (*Id*.  ¶¶ 72 – 74).  Instead, Defendant Gardner determined that Garcia and Gallegos would be interviewed by Internal Affairs, though the results of the Internal Affairs investigation would not be shared with the Homicide Unit or CLERB.  (*Id*. ¶¶ 77-79).  Absent filing a lawsuit and litigating a discovery dispute (*Id*. ¶ 103), Plaintiffs had no way of knowing that Defendants Garcia and Gallegos had failed to render assistance or summon medical care for an unresponsive Bernard, who lay naked on the floor (*Id*.  ¶¶ 58-61). Plaintiffs had no ability to uncover the systemic failure of Sheriff's deputies to adhere to regulations regarding inmate welfare and safety checks on September 18, 2012 described in the second amended complaint (*Id*. ¶¶ 45-60).

A claim relating to a cause of action for death must be presented "not later than six months after the accrual of the cause of action."  Gov. Code § 911.2(a).  A "cause of action accrues for purposes of the filing requirements of the Tort Claims Act *on the same date a similar action against a nonpublic entity would be deemed to accrue* for purposes of applying the relevant statute of limitations."  *K.J. v. Arcadia Unified School District*, 172 Cal. App. 4th 1229, 1242 (Cal. App. 2d Dist. 2009), citing *John R*., 48 Cal.3d at 444 n. 3 (emphasis in the original).  Generally, a cause of action accrues when the wrongful act is done, or the wrongful result occurs, and liability consequently attaches.  *Id*. at 1241.  "The 'delayed discovery' doctrine modifies that rule and protects a plaintiff by postponing accrual of a cause of action *until the plaintiff discovers, or has reason to discover, the cause of action*. For purposes of that doctrine, the plaintiff discovers the cause of action . . . when,

simply put, he at least suspects … that someone has done something wrong to him, wrong being used, not in any technical sense, but rather in accordance with its lay understanding." *Id*., 172 Cal. App. 4th at 1241 (internal citations omitted) (emphasis in the original).  In *K.J.*, the California appellate court applied the delayed discovery doctrine to define when a cause of action is deemed to have accrued for purposes of filing a tort claim in accordance with Gov. Code § 911.2(a).  *Id*., 172 Cal. App. at 1233-34.  Thus, the court held that plaintiff had presented a timely claim on September 2007, two months after she realized in July 2007 that she had been a victim of sexual molestation by a high school teacher, though plaintiff had engaged in a romantic relationship with the teacher beginning in 2003 when plaintiff was 16 years of age.  *Id*. at 1234-1235.

Here, Plaintiffs had no knowledge, and no means of obtaining such knowledge, of Defendants' egregious conduct until September 5, 2014, when CLERB publicly disclosed the results of their investigation into the death of Bernard Victorianne.  (SAC ¶¶ 98 – 104).  While Plaintiffs were aware that Bernard had died on September 19, 2012, County officials informed them that his death was a result of a drug overdose.  (*Id*. ¶ 110).  Once they became aware of Defendants' wrongful conduct which had caused Bernard's death, Zelda and Vic immediately filed their notice of claim with the County of San Diego on September 11, 2014.  The County rejected the parents' claims on September 25, 2014.  (Id. ¶¶ 105, 106).  On October 24, 2014, the County rejected the claim presented by the Estate of Bernard Victorianne.  (Id. ¶ 107).

Absent CLERB's investigation, Plaintiffs would have no way of uncovering the total failure of Sheriff's deputies to conduct safety and welfare checks on September 18, 2012, the day before deputies found Bernard dead in a jail cell.  Nor would Plaintiffs have known that County officials had failed to perform an adequate homicide investigation or that a Sheriff's Department supervisor had improperly authorized an IA investigation of the last two deputies who witnessed Bernard alive,

1   thereby erecting a barrier to material information that neither Homicide nor CLERB

2   would be able to breach.  Once Plaintiffs realized the wrongdoing of County

3   employees and officials, they immediately filed a tort claim.

4       In addition to Plaintiffs' delayed discovery of Defendants' wrongful conduct,

5   the County may be estopped from asserting noncompliance with California tort

6   claims procedures as a bar where the entity's agents or employees have "deterred

7   the filing of a timely claim by some 'affirmative act.'  Estoppel as a bar to a public

8   entity's assertion of the defense of noncompliance arises when the plaintiff

9   establishes by a preponderance of the evidence: (1) the public entity was apprised of

10  the facts, (2) it intended its conduct to be acted upon, (3) plaintiff was ignorant of

11  the true state of facts, and (4) relied upon the conduct to his detriment."

12  *Christopher P. v. Mojave Unified School Dist.*, 19 Cal. App. 4th 165, 170 (Cal.

13  App. 5th Dist. 1993).

> An estoppel may arise although there was no designed
> fraud on the part of the person sought to be estopped. To
> create an equitable estoppel, it is enough if the party has
> been induced to refrain from using such means or taking
> such action as lay in his power, by which he might have
> retrieved his position and saved himself from loss.  Where
> the delay in commencing action is induced by the conduct
> of the defendant it cannot be availed of by him as a
> defense.

19  *J.P. v. Carlsbad Unified School Dist.*, 232 Cal. App. 4th 323, 333-334 (Cal. App.

20  4th Dist. 2014) (internal citations omitted).  Whether equitable estoppel applies "is

21  a question of fact for the trial court."  *John R. v. Oakland Unified School Dist.*, 48

22  Cal. 3d 438, 446 (Cal. 1989) (reversible error to grant nonsuit in favor of public

23  entity on the issue of plaintiff's noncompliance with tort claims procedure where

24  trial court failed to make any factual finding regarding equitable estoppel).[1]

---

[1] Because Defendants have sought to dismiss Plaintiffs' tort claims against the County
and its employees pursuant to Fed. R. Civ. P. 12(b)(6), Rule 12 controls resolution of
Defendants' arguments.  Fed. R. Civ. P. 12 "regulates procedure, -- the judicial process for
enforcing rights and duties recognized by substantive law and for justly administering remedy
and redress for disregard or infraction of them."  *Hanna v. Plumer*, 380 U.S. 460, 464 (1965).
Thus, the Court must court must accept all factual allegations pleaded in the complaint as true.

In the instant case, County officials and agents engaged in multiple acts to prevent the release of information regarding Bernard's death.  Bernard's father, Vic, contacted the jail for information regarding his son's death, but received no information.  (SAC ¶ 102).  County officials informed Bernard's parents that their son died of an overdose.  The Homicide investigation did not consider the failure to provide adequate medical care as a cause of Bernard's death.  (Decl. Julia Yoo ¶ 8). And Defendant Gardner impeded the homicide investigation by initiating an Internal Affairs investigation, which shielded two material witnesses (Defendants Garcia and Gallegos) from scrutiny for their role in Bernard's death.  Whether County officials wrongfully or fraudulently intended to hide information from Bernard's parents is immaterial.  *J.P.*, 232 Cal. App. 4th at 333.  Plaintiffs have alleged sufficient facts to show that when they sought information, they were told Bernard had died of an overdose, and County officials engaged in conduct that kept the true facts of Bernard's death hidden from both his family and the general public.

## V.
## ALLEGATIONS OF NEGLIGENT TRAINING OR SUPERVISION AGAINST THE COUNTY IN THE NINTH CAUSE OF ACTION SHOULD BE STRICKEN

Plaintiffs' ninth cause of action is negligence against all defendants. Plaintiffs seek to hold the County of San Diego liable under the theory of *respondeat superior*.  (SAC ¶ 294).  The County is vicariously liable for injuries caused by the acts or omissions of its employees and agents committed within scope of employment. Cal. Gov. Code § 815.2(a).  To the extent that Defendant County seeks to dismiss and/or strike allegations of the complaint for negligent training and

---

*Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007).  If the Court wishes to consider matters outside the pleadings in deciding Defendants' 12(b)(6) motion, Defendants' motion must be treated as one for summary judgment under Rule 56, and Plaintiffs respectfully request a reasonable opportunity to present all material pertinent to the motion pursuant to Fed. R. Civ. P. 12(d).

supervision, Plaintiffs agree that *DeVillers v. County of San Diego* controls. Defendant County has correctly noted that "there is no statutory basis for public entity liability for negligent hiring, training, and supervision" and "no such cause of action can be stated by the complaint." (Defendants. Mem. Ps. & As. at 14:13-15). Thus, to the extent that Plaintiffs' ninth cause of action contains allegations of negligent hiring, training, and supervision (SAC ¶¶ 295-297), Plaintiffs agree that such allegations should be stricken from the second amended complaint.

## VI.
## THE COUNTY IS LIABLE FOR THE WRONGFUL DEATH OF BERNARD VICTORIANNE

Though a public entity is generally immune from suit for an injury to a prisoner, the County may be held liable for the wrongful death of Bernard Victorianne pursuant to an exception to such immunity.  Cal. Gov. Code § 844.6 states that a public entity is not liable for an injury to any jail inmate "**except as provided in** . . . [section] **845.6**." (Emphasis added).  Section 845.6 provides that both "a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." Cal Gov Code § 845.6.  A "prisoner" includes an inmate of a jail. *Id*. at § 844.  Moreover, section 844.6(d) states that the "public entity shall pay . . . any judgment based on a claim against a public employee who is lawfully engaged in the practice of one of the healing arts under any law of this state for malpractice arising from an act or omission in the scope of his employment . . ."

On September 18, 2012, one day before Bernard Victorianne was found dead in his jail cell, the SAC alleges that Defendant deputies violated internal Sheriff's Department regulations regarding "hard counts" and "soft counts" of inmates. (SAC ¶¶ 45-60).  The "soft" and "hard" counts are intended to verify the well-being of the inmate.  (*Id.* ¶¶ 55, 57).  Deputies failed to conform to California state

1  regulations and failed to verify Bernard's well-being though they knew that Bernard

2  had been placed in administrative segregation after being seen in the medical unit.

3  On September 18, Defendant Flores failed to perform a soft count and did not serve

4  Bernard any food.  (*Id.* ¶¶ 48-49).  On September 19, 2012, at 4:00 a.m., Defendant

5  deputies Garcia and Gallegos found Bernard lying on the ground and observed that

6  he was not moving.  (*Id.* ¶ 58).  After noting that Bernard had "twitched," the

7  Defendant deputies left Bernard's cell without receiving verbal or physical

8  acknowledgment from Bernard.  (*Id.* ¶ 60).  Defendants never alerted medical staff

9  despite indications that Bernard was in medical distress.  (Id.)

10

11       Title 15, section 1006 defines "safety checks" as "direct,
         visual observation . . . to provide *for the health and welfare*
12       *of inmates*," Cal. Code Regs. tit. 15, § 1006 (emphasis
         added), with the natural inference that safety checks are
13       important to maintaining "the health and welfare" of
         inmates. Section 1027's statement that safety checks should
14       be performed "at least hourly" objectively indicates that
         performing safety checks on a regular basis is part of
15       maintaining inmates' health and welfare. Moreover, the
         Guideline for section 1027 provides that "[t]he intent of the
16       safety check is to account for the presence of the inmate,
         identify if anything appears out of order and look for signs
17       of observable distress or trauma. This includes looking for
         indications that the inmate may be ill, injured . . . or
18       otherwise be in need of assistance."

19  *Frary v. County of Marin*, 2015 U.S. Dist. LEXIS 24115, *51-52 (N.D. Cal.

20  February. 25, 2015).  "[C]ourts have found that such failure to monitor inmates can

21  result in substantial risk to their serious medical needs."  Id. at *52.  Having failed

22  to ensure that its deputies conform to applicable State regulations and internal

23  Department policy to protect Bernard's safety and welfare, the County may not

24  evade liability for his death by claiming willful ignorance of Bernard's welfare.

25  Plaintiffs have properly pled facts alleging that the County and individual

26  defendants, who were employees and agents of the County, violated Gov. Code §

27  845.6 by failing to summon medical care for Bernard.  Worse still, Bernard had just

28  been placed in administrative segregation after being transported on a gurney to the

17

medical unit, yet Defendants made no attempts to conform to regulations by checking on Bernard's safety and welfare to determine if he needed medical attention.  When Defendants Garcia and Gallegos found Bernard unresponsive in his jail cell, they made no attempt to check his pulse or elicit any response from him.  Defendants failed to summon adequate medical care when they knew, or should have known, that Bernard was in distress.  Plaintiffs have alleged that such failures proximately caused Bernard's death.  (SAC ¶¶ 276-277).

Plaintiffs have further set forth in specific detail the repeated failure of medical staff at the Central Jail to provide medical care to Bernard over the course of nearly one week.  (SAC ¶¶ 18 – 61).  Despite medical records and intake records, which noted that Bernard had ingested a baggie of methamphetamine (Id. ¶¶ 19-21), and despite constant pleas by Bernard who complained that he was "on fire; he was burning and something was burning his insides," medical staff failed to respond to Bernard's distress.  Instead, Bernard was placed in isolation (administrative segregation).  (Id. ¶¶ 40-44).  Thus, pursuant to Gov. Code § 844.6(d), the County must indemnify doctors and nurses, who acted as County employees and agents, and who failed to provide adequate medical care to Bernard when they knew, or should have known, that he had ingested a baggie of methamphetamine immediately prior to his intake at the Central Jail.

The cases cited by the County, *Lowman v. County of Los Angeles*, 127 Cal. App. 3d 613 (Cal. App. 2d Dist. 1982), and *Gates v. Superior Court*, 32 Cal. App. 4th 481 (Cal. App. 2d Dist. 1995), are not controlling because they do not address the County's liability for wrongful death under Section 845.6.

## VII.
## THE COUNTY IS VICARIOUSLY LIABLE FOR THE VIOLATIONS OF CIVIL CODE § 52.1 COMMITTED BY ITS EMPLOYEES

Plaintiffs seek to hold Defendant County vicariously liable for its cause of action under Civil Code § 52.1.  (*See* SAC ¶¶ 12, 13, 15).   Pursuant to Gov. Code § 815.2, the County is vicariously liable for injury caused by its agents' and

employees' violations of Civil Code § 52.1.  Gov. Code §815.2 "imposes liability on public entities for state law causes of action under the doctrine of respondeat superior."  *Uganda Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1165 (N.D. Cal. 2009).  Thus, a public entity may be held liable under the theory of respondeat superior for violations of section 52.1 committed by officers acting in the course and scope of their employment.  Id. at 1169.

Plaintiffs have properly pled a section 52.1 claim by alleging that Defendants violated Bernard Victorianne's separate affirmative statutory right under Civil Code § 43 to be free from "bodily restrain or harm, from personal insult, from defamation, and from injury to his personal relations."  (SAC ¶ 310).  Pursuant to Civil Code § 43, Bernard had a right to be free from bodily harm by the provision of adequate medical care, care within a medical unit instead of isolation in administrative segregation, and the protection of regular and thorough welfare and safety checks, which would have alerted jail deputies to his physical suffering.

## VIII.
## DEFENDANTS' ARGUMENT THAT REFERENCES TO THE "ESTATE" SHOULD BE STRICKEN ARE FRIVOLOUS AND WITHOUT SUPPORT

Under California law, only a decedent's personal representative or successor in interest may bring an action on the decedent's behalf. Cal. Civ. Proc. §377.30. This Court has already appointed Plaintiff Zelda Victorianne as the successor-in-interest to the Estate.  Defendants argue, without citation to any authority, that because there is no probate proceeding, there can be no "estate" and thus the "Estate of Bernard Victorianne" is not a proper party.

The California appellate court has observed that "[i]nterestingly enough, the word 'estate' is not specially defined in the general definitions sections of the Probate Code. (See §§ 21-88 [defining various terms of art in the probate code]; see also § 20 ['Unless the provision or context otherwise requires, the definitions in this part govern the construction of this code.'].)."  *In re Conservatorship of Estate of Hume*, 139 Cal. App. 4th 393, 397 (2006). "Since 'estate' is not given a particular

definition in the statutes, courts should look to the common and ordinary meaning of the term." Id. at 398.  Black's Law Dictionary defines estate as: "'1. The amount, degree, nature, and quality of a person's interest in land or other property. 2. *All that a person or entity owns,* including both real and personal property. 3. The property that one leaves after death; the collective assets and liabilities of a dead person....' (Black's Law Dict. (7th ed.1999) p. 567)." *Id*. at 399 (emphasis in the original). Neither the California appellate court nor Black's Law Dictionary held that the word "estate" could only be used after initiation of a probate proceeding.

To construe the term "estate" to require administration through a probate proceeding would produce an absurd result that would undermine the purpose and meaning of the California Probate Code. For example, California Probate Code § 6400, entitled "property subject to intestacy provisions," states that "[a]ny part of the estate of a decedent not effectively disposed of by will passes to the decedent's heirs as prescribed in this part." According to Defendants' argument, the use of the word "estate" in Probate Code § 6400 means that an administration by probate has already occurred before intestate succession is either examined or established. The word "estate" in Probate Code §§ 6400 *et. seq*. (relating to intestacy provisions) is used in the manner described by Black's Law Dictionary - all that a person or entity owns, including both real and personal property. To hold that the term "estate" can only be used after administration by probate would render meaningless all provisions regarding intestate succession. Defendants' argument that the Estate of Bernard Victorianne is not properly named as a Plaintiff is illogical, without basis, and devoid of merit. It should be denied.

**IX.**
**CONCLUSION**

Plaintiffs respectfully request that the Court deny the Motion to Dismiss.

DATED:   July 20, 2015                    Respectfully submitted,


                                          /s/ *Julia Yoo*
                                          JULIA YOO
                                          Attorney for Plaintiffs