THOMAS E. MONTGOMERY, County Counsel
County of San Diego
By RICKY R. SANCHEZ, Senior Deputy (SBN 107559)
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
Telephone: (619) 531- 4874  Fax: (619) 531-6005
E-mail: ricky.sanchez@sdcounty.ca.gov

Attorneys for Defendant County of San Diego, William Gore, and Leslee Hall

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF BERNARD VICTORIANNE by and through its successor-in-interest ZELDA VICTORIANNE, BERNARD VICTORIANNE II, and ZELDA VICTORIANNE,<br><br>  Plaintiffs,<br><br>  v.<br><br>COUNTY OF SAN DIEGO, WILLIAM GORE, in his individual capacity; LESLEE HALL, an individual; DOES 1 - 50,<br><br>  Defendants. | No. 14-cv-2170-WQH (BLM)<br><br>REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT BY DEFENDANTS COUNTY OF SAN DIEGO, WILLIAM GORE, AND LESLEE HALL<br><br>Date: August 3, 2015<br>Courtroom: 14B (annex)<br>Hon. William Q. Hayes<br><br>NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT |

**NO NEGLIGENT HIRING, TRAINING, SUPERVISION CLAIM IS STATED**

Plaintiffs concede that any state tort claim for negligent hiring, training, and supervision is legally deficient and not actionable.  (Plaintiffs' Opposition To Defendants' Motion to Dismiss and to Strike Parts of the Second Amended Complaint, doc. 105, p. 15.)  Therefore, such claim and allegations thereof should be dismissed and stricken.

/ / /

/ / /

## NO PERSONAL LIABILITY CLAIM IS STATED AGAINST SHERIFF GORE

As to the Sheriff, the question presented by the Second Amended Complaint (SAC) is whether personal liability can attach to a municipal policy maker for the official capacity act of adopting a municipal policy. The answer must be a resounding "No". All allegations in the SAC against the Sheriff pertain only to his alleged adoption of policies in his official capacity as the Sheriff. As the official policy maker for the County of San Diego's Sheriff's Department, policies and customs adopted by the Sheriff are deemed County policies upon which municipal federal civil rights liability can be imposed on the County if the policies can be proven to have directed commission the constitutional violation. *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690-691 (1978). A systemically inadequate program could also be considered a "policy or custom" for municipal civil rights liability claims, if the inadequate program evidences deliberate indifference to a constitutional right, was the moving cause of the employee's constitutional violation, and was adopted by one of the defendant entity's authorized policy makers. *Canton v. Harris*, 489 U.S. 378, 389-391 (1989).

In contrast to a municipal federal civil rights claim there is individual federal civil rights liability. Regardless of what rank a local government employee holds in the government hierarchy, whether called a subordinate or supervisor, that employee may only be subject to individual personal section 1983 liability for his or her own acts because there is no vicarious section 1983 liability. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Palmer v. Sanderson*, 9 F.3d 1433, 1437-1438 (9th Cir. 1993).

In this case, there is no allegation that ~~the~~ Sheriff Gore ~~knew,~~ met, interacted with, or knew of Victorianne or his parents, or that he instructed anyone to render or withhold medical services from Victorianne, or to ignore his need for medical services, or to harm him in any fashion. Citing to *Shafer v. City of Boulder*, 896 F. Supp. 2d 915, 935 (D. Nev. 2012), *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 49 (1st Cir. 2009), and *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011), plaintiffs argue that a supervisor in some instances can be held personally liable for their own culpable conduct that is the cause of

1  inflicting injury on a plaintiff even though the supervisor did not personally interact with
2  the plaintiff.  This is not a novel proposition, however, each of the three cases relied on
3  by plaintiff make clear that the supervisor must have been aware of facts specific to the
4  plaintiff in addition to facts showing the supervisor's casual connection to the claimed
5  injury.
6      In *Shafer v. City of Boulder*, a case arising out of the video recorded surveillance of
7  plaintiff's residence by plaintiff's neighbors whose conduct was orchestrated by the
8  police, plaintiff sued Police Chief Finn individually although he was not involved in
9  initiating the investigation, meeting with the neighbors, or lending them police cameras
10 for the surveillance.  In assessing the viability of plaintiff's claim against the Chief, the
11 court stated that: "[i]n limited circumstances a supervisor's subsequent "ratification" of
12 another's conduct can form the basis for liability under § 1983.  The decision to ratify
13 specific conduct, however, must approve both the subordinate's decision and the basis for
14 it, and the ratification decision must be the product of a conscious, affirmative, choice to
15 ratify the conduct in question.  It must be a decision to ratify unconstitutional conduct.
16 *Peschel v. City of Missoula*, 686 F.Supp.2d 1092, 1102 (D.Mont.2009)." *Shafer v. City
17 of Boulder*, 896 F. Supp. 2d at 935.  In Shafer, upon his return from a trip, the Chief met
18 with his Assistant Chief Chase who was directly involved with meeting with the
19 neighbors and arranging the surveillance.  He thus became aware of the ongoing
20 surveillance, but did not order its termination.  The court found that summary judgment
21 for Chief Finn was not appropriate because "[t]here [were] genuine issues of material fact
22 regarding whether Chief Finn (1) approved of loaning the DHS cameras to [neighbor]
23 Fenyves for the purpose of videotaping Shafer's home; and (2) made a conscious,
24 affirmative decision to ratify Chase and Dubois' unconstitutional investigation." *Id.*
25 Unlike in Shafer, there is no factual allegation that Sheriff Gore was in any manner
26 apprised of or involved in the medical care given to Victorianne, or in the security cell
27 checks conducted by deputy staff during Victorianne's period of illness.
28 / / /

The requirement that there be factual allegations to show that the Sheriff knew of and approved of Victorianne's alleged unconstitutional treatment in the jail for personal liability to attach to him as a supervisor was even reiterated in *Starr v. Baca* and *Sanchez v. Pereira-Castillo*:

> "a plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *Starr v. Baca*, 652 F.3d at 1207 (9th Cir. 2011)

> ". . .the plaintiff in a Section 1983 action must show "an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization," *id*., between the actor and the underlying violation." *Sanchez v. Pereira-Castillo*, 590 F.3d at 49.

Here there are no such allegations made against Sheriff Gore. The only allegations pertain to the Sheriff's adoption of policies.

The requirement that a supervisor must know of and approved known unconstitutional conduct directed at the plaintiff is even consistent with the requisite element of deliberate indifference for claims pertaining to the treatment of an inmate. An individual acts with deliberate indifference only if the person acts with a "culpable" state of mind, such that he or she "knows of and disregards an excessive risk to inmate health and safety." *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). It is not enough that the individual was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, he must also draw that inference." *Farmer*, 511 U.S. at 837. If the individual should have known about the risk but was not, then the person has not violated the Eighth Amendment no matter how severe the risk. *Jeffers v. Gomez,* 267 F.3d 895, 914 (9th Cir. 2001). A person's "failure to alleviate a significant risk that he should have perceived but did not, . . . cannot . . . be condemned as the infliction of punishment." *Farmer,* 511 U.S. at 838. Here there are no factual allegations that Sheriff Gore was aware of facts from which he drew the inference that Victorianne faced a substantial risk of serious harm relative to the medical care he

received in the jail or the security checks conducted of him. In this matter, no such facts can be alleged because Victorianne and the care rendered to him was unknown to the Sheriff.

The allegations that the Sheriff adopted policies cannot be the basis of a claim against the Sheriff in his individual capacity because then as an individual he would be entitled to claim qualified immunity for his adoption of policies. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). [It is not clearly established law that individual liability can be imposed on an official policy maker for the official capacity act of adopting policy.] But qualified immunity is not available to a person sued in his or her official capacity for to do so would extend qualified immunity to the entity, which is an immunity inapplicable to public entities. *Id*. It is this context, that plaintiffs' claim against the Sheriff in his individual capacity for making policy is internally inconsistent and legally infirm.

*Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991) relied on by plaintiff to argue that the FAC states an individual capacity claim against the Sheriff does not cure the infirmity of a claim seeking to impose personal liability on a policy maker for his official capacity act of adopting a policy. *Larez* should not be understood to stand for the proposition that personal liability can be imposed on a municipal policy maker for the official capacity act of adopting a municipal policy even if the policy or custom happens to be a systemically inadequate program of training or supervision. In the *Larez* case, the Larez family brought a claim against Los Angeles City Police Chief Daryl Gates in his individual capacity. As concerns that claim, the *Larez* court stated: "Gates's individual liability hinges upon his participation in the deprivation of constitutional rights. But unlike the officers' involvement, which ordinarily is direct and personal, his participation may involve the setting in motion of acts which cause others to inflict constitutional injury." *Larez v. City of Los Angeles*, 946 F.2d at 645. That language is not authority for the proposition that a policy maker can be held personally liable in his individual capacity for the official capacity act of adopting or maintaining policies concerning the training, supervision, and control of subordinates.

5

The language in *Larez* suggesting that a person can be liable for setting in motion of acts which cause others to inflict injury was premised on the tort of negligent hiring, training and supervision, which cannot form the basis for constitutional liability. Tort liability cannot be the basis for constitutional liability because "[s]ection 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker v. McCollan*, 443 U.S. 137, 146 (1979). The subject language in *Larez* was extracted from *Johnson v. Duffy,* 588 F.2d 740 (9th Cir.1978). The concept stated in *Johnson* that an individual can be liable for setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury was actually a tort concept which *Johnson* extrapolated from *Beverly v. Morris* 470 F.2d 1356 (5th Cir. 1972), a case in which a police chief was held liable for an assault committed by an auxiliary officer under the tort of negligent hiring and supervision; a tort claim not cognizable against local government entities or their employees in California. *DeVillers v. County of San Diego*, 156 Cal.App.4th 238, 253, 256 (2007). For these reasons, *Larez* should not be understood to stand for the proposition that personal liability can be imposed on a municipal policy maker for the official capacity act of adopting a municipal policy.

Because the allegations against Sheriff Gore in the SAC are confined to his adoption of policies that would be the basis for County municipal federal civil rights liability, those very allegations establish that he is not being sued in his individual capacity, but only in an official capacity. Sheriff Gore should therefore be dismissed.

**NO CLAIM IS STATED AGAINST LESLEE HALL BASED ON HER INVESTIGATION**

A.    <u>Claim for Negligent Investigation Is Not Actionable:</u>

Plaintiffs argue that they are not asserting a claim for negligent investigation against Ms. Hall. (Plaintiffs' Opposition to Defendants' Motion to Dismiss and to Strike Second Amended Complaint, doc. 105, p.11, l. 7.) Contrary to plaintiffs' argument the SAC specifically asserts a claim for negligent investigation. (SAC ¶ 268.) With respect

to this claim plaintiffs cite no authority contrary to California Government Code § 821.6, *Amylou R. v. County of Riverside*, 28 Cal.App.4th 1205, 1210, 1214 (1994), and *Kemmerer v. County of Fresno*, 200 Cal.App.3d 1426 (1988), which preclude plaintiffs from seeking relief on account of a negligent investigation or negligent investigatory conduct.  The ninth cause of action should therefore be dismissed against Ms. Hall.

B.  <u>No Federal Claim Is Stated Against Ms. Hall For The Investigation:</u>

As against Ms. Hall, plaintiffs allege only that she failed to properly investigate Bernard Victorianne's death and thus allegedly covered up the misconduct of other unspecified deputies.  (SAC ¶ 248.)  However, the SAC specifically alleges that the investigation into Victorianne's death was conducted by both the Sheriff Department's Homicide division and Internal Affairs division, and that disclosure of the part of the investigation conducted by Internal Affairs is subject to the protections of the Peace Officer Bill of Rights. (SAC ¶ 71- 79.)  Ms. Hall is thus alleged to have committed a constitutional violation because two divisions within the department conducted the investigation, and thereby allegedly impeded plaintiffs' access to departmental investigative information.  (SAC ¶ 229.)  However, the SAC does not allege that plaintiffs had a constitutional right that prohibited the Sheriff's Department from investigating Victorianne's death by using the resources of two investigating divisions within the department, namely the Homicide division and the Internal Affairs division.  Although the Internal Affairs investigation may be subject to privileges against open disclosure absent court process, participation in a death investigation by the Internal Affairs division presents no constitutional violation.

Plaintiffs argue that Ms. Hall's investigation covered up the alleged wrongdoing by deputy and medical staff thereby preventing plaintiffs from filing a claim.  (Plaintiffs' Opposition to Defendants' Motion to Dismiss and to Strike Second Amended Complaint, doc. 105, p.10, l. 7.)  First, the argument is illogical because plaintiffs did in fact commence the present lawsuit on their civil rights claims; and no California Tort Claims Act claim is required to file a federal civil rights lawsuit.  Second, there is no factual

allegation that the investigation as compiled by the two divisions was incomplete or misleading. Although as stated above, the disclosure of Internal Affairs investigations is subject to restricted disclosure, plaintiffs cite no case establishing they have a constitutional right to investigatory materials within a time certain. Third, plaintiffs cite no case establishing that defendants owed plaintiffs a constitutional duty to conduct an investigation for plaintiffs to their satisfaction. *Chambers v. Baltimore & O.R. Co.*, 207 U.S. 142 (1907) cited by plaintiffs addressed the constitutionality of an Ohio statute that allowed claims for the wrongful death of a person occurring outside the state to be maintained in Ohio only when the deceased was an Ohio citizen. *Wolff v. McDonnell,* 418 U.S. 539 (1974), cited by plaintiffs involved a challenge to a Nebraska prison's procedure for disciplining prison inmates, and inspecting mail. In *Crews v. Petrosky,* 509 F.Supp. 1199 (W.D. Pa. 1981), cited by plaintiffs, the court found that summary judgment could not be entered for the clerk of a state court who was alleged to have negligently delayed the filing of the prisoner plaintiff's petition for appeal because the allegation may state a cause of action under 42 U.S.C. section 1983. However, that case was decided five years before *Daniels v. Williams*, 474 U.S. 327, 328 (1986) in which the Supreme Court held that a negligent act of an official cannot form the basis for a section 1983 claim. And in *Harris v. Pate,* 440 F.2d 315 (7th Cir. 1971), cited by plaintiffs, the district court's order dismissing the pro per prisoner plaintiff's complaint alleging interference with his access to court was reversed because the district court abused its discretion in denying plaintiff's request for a continuance of defendant's motion to dismiss to obtain affidavits to oppose the motion.

  The SAC fails to state a federal claim for failure to properly investigate against Ms. Hall as she engaged in no constitutionally improper conduct that impeded plaintiffs' right of access to the courts. The SAC should be dismissed as to Ms. Hall.

///

///

///

## TORT CLAIMS BARRED BY NON-COMPLIANCE WITH GOVERNMENT CODE CLAIM FILING REQUIREMENTS

Plaintiffs' argument that their state law claims are not barred by their failure to file a Government Code damage claim within six months of Victorianne's death is a fact dependent argument pertaining to the applicability of the doctrines of delayed discovery and estoppel; a factual inquiry that neither the SAC nor their opposition satisfies. The only basis on which plaintiffs contend they should be excused from their failure to file a claim within six month of Victorianne's death is because they did not find out the circumstances of the death until the Citizens' Law Enforcement Review Board issued its findings regarding the death in September 2014. (SAC ¶ 99, 105, fn. 1 to 8th c/a.)

Noticeably lacking from plaintiffs' opposition is any factual statement regarding when they were first notified of the death, when and what efforts they made, as the decedent's parents and thus successors in interest, to investigate the circumstances of his death, by for example requesting the medical examiner's report, requesting the decedent's jail medical records, requesting that part of the death investigation reported by the Sheriff's homicide division, or even when they first sought assistance of legal. Also no facts are presented to show the County provided any statement to plaintiff to advise them about pursuing a claim for the death of decedent. No facts are presented that plaintiffs made any affirmative contacts with the County to try and file a claim within the six months of Victorianne's death as required by Government Code section 911.2(a). There are no facts that the County obstructed plaintiffs from filing a claim on a timely basis. And there are no facts that the County inhibited plaintiffs from pursuing their own investigation into the circumstances of the death. As stated in the moving papers, the detailed factual specificity required for a medical malpractice claim is not required to file a tort claim. *Munoz v. State of California,* 33 Cal.App.4th 1767, 1773-74 (1994).

Plaintiffs' tort claims are barred by their failure to file a timely claim, and are not saved by the doctrine of delayed discovery or even estoppel.

/ / /

### REFERENCES IN THE FAC TO THE "ESTATE OF BERNARD VICTORIANNE" SHOULD BE STRICKEN

All of Bernard Victorianne's claims that survived his death are asserted by Zelda Victorianne as decedent's successor in interest. She is not a representative of the Estate of Bernard Victorianne; nor could she be since no probate proceedings were initiated whereby she was duly appointed as the estate representative. To allow the action to proceed with references to the Estate of Victorianne as plaintiff is misleading, confusing, incorrect, immaterial and impertinent in this action. Accordingly references to the Estate of Bernard Victorianne should be stricken.

### CONCLUSION

Based on the foregoing, defendants' motion to dismiss should be granted as requested by defendants' moving papers.

DATED: July 27, 2015              THOMAS E. MONTGOMERY, County Counsel

By: /s/ RICKY R. SANCHEZ, Senior Deputy
Attorneys for Defendant County of San Diego, William Gore, and Leslee Hall