EUGENE G. IREDALE: SBN 75292
JULIA YOO:  SBN 231163
GRACE JUN, SBN 287973
IREDALE & YOO, APC
105 West F Street, Fourth Floor
San Diego, CA 92101-6036
TEL: (619) 233-1525   FAX: (619) 233-3221

R. STAN MORRIS
CARTEE & MORRIS, LLC
2325 Henry Street
Guntersville, AL 35976

Attorneys for Plaintiffs, the Estate of Bernard Victorianne, Bernard Victorianne II, and Zelda Victorianne

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA
### (Hon. William Q. Hayes)

| | |
|---|---|
| THE ESTATE OF BERNARD VICTORIANNE by and through its successor-in-interest ZELDA VICTORIANNE, BERNARD VICTORIANNE II, and ZELDA VICTORIANNE,<br><br>          Plaintiffs,<br>v.<br><br>COUNTY OF SAN DIEGO, WILLIAM GORE, *et al.*,<br><br><br><br><br>          Defendants. | CASE NO. 14-cv-02170-WQH-BLM<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT EARL GOLDSTEIN'S MOTION TO DISMISS AND TO STRIKE PARTS OF THE SECOND AMENDED COMPLAINT**<br><br>**Date:  August 24, 2015** |

1
2

**TABLE OF CONTENTS**

3

I.      FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4
5

    **A. Defendant Goldstein Had Notice of an Alarmingly High Number of
Inmate Deaths Related to Inadequate Medical Care by Subordinates.. 3**

6
7

    **B. By Failing to Establish Policies and Procedures Disseminating Health
Information and Coordinating Medical Staff Responses, Defendant
Goldstein Evidenced Indifference to Inmates' Medical Needs. .. . . . . . . 4**

8

II.     ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

9
10
11

    **A. Goldstein Is Liable in His Individual Capacity as a Supervisory Official
for Callous and Reckless Indifference to Inmates in Obvious Medical
Distress.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6**

12
13

    **B. Goldstein Is Not Entitled to Qualified Immunity Because Controlling
Precedent Established that Policies Denying Medical Care to an Inmate
in Obvious Distress Amounted to Deliberate Indifference.. . . . . . . . . . 9**

14

    **C. Goldstein's Arguments Re: Plaintiffs' State Law Claims. . . . . . . . . . . 12**

15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*Banks v. North Las Vegas Police Dept*, 1990 U.S. App. LEXIS 20437, *3-6 (9th Cir. Nov. 20, 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). . . . . . . . . . 10

*Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002). . . . . . . . . . . . . . . . . . 10, 11

*George v. Sonoma County Sheriff's Dept*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . 6

*Lolli v. County of Orange*, 351 F.3d 410, 421 (9th Cir. 2003) . . . . . . . . . . . . . . 10

*Long v. County of Los Angeles*, 442 F.3d 1178, 1189 (9th Cir. 2006) . . . . . . . . . 11

*Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991). . . . . . . . . 6

*Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . *Passim*

*Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998). . . . . . . . . . . . . 6

*Wilson v. City of Chanute*, 43 F. Supp. 2d 1202, 1212-1213 (D. Kan. 1999). . . . 10

**Statutes**

Fed. R. Civ. P. 8.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

On September 12, 2012, Bernard Victorianne was arrested for driving under the influence. Though jail staff knew that Bernard Victorianne had ingested drugs before being booked and was screaming that "something was burning his insides," they failed to provide him with medical care. According to Citizens' Law Enforcement Review Board (CLERB) findings, jail staff failed to monitor Bernard, locking him up in administrative segregation; left him to die in his cell; lied about their conduct during the investigation; and failed to properly investigate Bernard's death.

Because Defendant Goldstein supervised and managed the medical staff at the Central Jail who persistently denied medical care to an obviously distressed Bernard, and Goldstein, despite his awareness of the need for such policies, failed to implement procedures and establish practices which would ensure the provision of sufficient medical care, Plaintiffs seek to hold him liable for deliberate indifference.

## FACTUAL BACKGROUND

At the time of Bernard Victorianne's death, Defendant Earl Goldstein was the medical director for the San Diego County Sheriff's Department. (Second Amended Complaint (SAC) at ¶ 11). The San Diego Central Jail, where Bernard died, is operated by the Sheriff's Department. (*Id*. at ¶ 13). Goldstein's responsibilities included supervising the medical staff; and overseeing the development and implementation of quality assurance processes and policies. (*Id*. at ¶ 11). Defendants Goldstein and Leicht were responsible for setting all policies and procedures regarding medical services for jail inmates. (*Id*. at ¶ 70). All medical staff at the Central Jail, including medical and psychiatric doctors, worked under the direction and supervision of Defendants Leicht and Goldstein. (*Id*. at ¶¶ 11, 70).

///
///

**A. Defendant Goldstein Had Notice of an Alarmingly High Number of Inmate Deaths Related to Inadequate Medical Care by Subordinates.**

During Goldstein's tenure as medical director, he was aware that San Diego County had the highest mortality rate among California's largest jail system for the time period of 2007 to 2012. (*Id*. ¶ 90). Sixty inmates died in San Diego County jails in that five year time span. (*Id*.). Citybeat, a local San Diego news journal, conducted an extensive investigation of San Diego County jail deaths and published a series of articles on the issue. (*Id*.) San Diego County officials, including Goldstein, were aware of a significant number of inmates booked in Central Jail who suffered from drug intoxication or overdose. (*Id*. at ¶ 143).

In the time period of 2007 to 2012, eight drug-related "accidental" deaths occurred at San Diego County jails, deaths that resulted either from overdose or physical complications related to withdrawal. (*Id*. ¶ 210). Richard Diaz, a 40-year old inmate, died from stomach obstruction after suffering seizures and vomiting due to heroin withdrawal for three days. (*Id*.). In 2008, Adrian Correa, a 21 year old paranoid schizophrenic who had repeatedly threatened to kill himself, committed suicide. (*Id*. ¶ 211).

After Mr. Correa's death, the Citizens Law Enforcement Review Board (CLERB) expressed alarm about the breakdown in communication during shift changes and recommended the Sheriff's Department adopt a "checklist that includes the status of at-risk inmates and the Department's response plan" which would then "enhance continuity of care, monitoring and housing." (*Id*.).

Defendant Earl Goldstein responded by rejecting CLERB's proposal. (*Id*. ¶ 212). Goldstein claimed that the County Jails' suicide rate was low with only four total suicides in the 2007-2008 and 2008-2009 fiscal years (the fiscal years encompassed the period of July 1, 2007 to June 30, 2009). (*Id*.). He informed CLERB that based on "low incidences of completed suicides in our facilities, it is not practical to add these systems to the current program." (*Id*.). Contrary to

Goldstein's assertion, there had actually been six suicides during this time period. (*Id.*).

CLERB continued to express concerns to the Sheriff's Department regarding jail deaths in San Diego County. (*Id.* ¶ 213). In a March 2011 letter to Sheriff Gore, CLERB pressed the Department to establish formal policies notifying CLERB when an inmate died in order to facilitate CLERB's oversight responsibilities. (*Id.*). Because CLERB, pursuant to state law, was given only one year to initiate an investigation regarding an inmate's death, it needed to act quickly after learning of an inmate's death. (*Id.*). Yet, CLERB had not timely learned of inmates' deaths in 2009 and 2010. (*Id.*) CLERB identified five areas in which it wished to be included in the notification process. (*Id.*). Sheriff Gore declined to implement any of the recommendations. (*Id.*).

**B. By Failing to Establish Policies and Procedures Disseminating Health Information and Coordinating Medical Staff Responses, Defendant Goldstein Evidenced Indifference to Inmates' Medical Needs.**

Due to Defendant Goldstein's repeated failure to promulgate constitutionally sufficient policies and procedures for the care of inmates in obviously dire medical circumstances, Bernard Victorianne died. (*Id.* ¶144 - 147). Goldstein oversaw and managed a medical staff of doctors and nurses at the Central Jail that exhibited wide-scale indifference to evidence that Bernard suffered from methamphetamine intoxication, including ignoring that precise information in the Jail's medical intake records and Alvarado Hospital records possessed by the Jail. (*Id.* ¶¶ 18-22).

On September 12, 2012, during initial intake at the Central Jail, Bernard reported to Jail staff that he had ingested a baggie of methamphetamine. (Id. ¶ 20). During medical intake, Central Jail staff then documented that Bernard had been evaluated at Alvarado Hospital after swallowing a baggie of drugs. (*Id.* ¶19). Staff further noted that Bernard had no psychiatric problems or history and that

1    Bernard had informed staff of heavy methamphetamine and alcohol use on the

2    previous day, September 12, 2012.  (*Id.*).

3        The record from Alvarado Hospital, which was incorporated into the Central

4    Jail's record for Bernard, gave explicit instructions for "prompt medical attention"

5    should Bernard exhibit any number of specific symptoms.  (*Id.* ¶ 21).

6        On September 13, 2012, at approximately 12:32 a.m., medical staff at the

7    Jail examined Bernard.  (*Id.* ¶ 22).  Bernard informed staff that he had come from

8    the hospital after ingesting a baggie of methamphetamine.  (*Id.*).  Defendant Aileen

9    Longo documented in Bernard's medical records that he had ingested meth and

10   that Bernard exhibited alterations in thought process/content, ineffective health

11   maintenance, and was at risk for "imbalance fluid volume."  (*Id.* ¶ 23).

12       Between September 13, 2012 to September 18, 2012, Bernard was

13   repeatedly examined by nurses and doctors at the Central Jail, all defendants in this

14   case, who failed to treat Bernard for methamphetamine intoxication stemming

15   from his ingestion of the baggie of meth; none of the defendant nurses or defendant

16   doctors referenced his medical intake record or initial intake record.  (*Id.* ¶¶ 24-43).

17   Defendant medical staff failed to adequately observe, properly evaluate, and

18   actually treat Bernard for his obvious and known medical condition, i.e.

19   methamphetamine intoxication.  (*Id.* ¶¶ 133-136).  Defendants knew, or should

20   have known, that Bernard had ingested methamphetamine and that he required

21   "prompt medical attention" if he exhibited agitation, anxiety, seizure, excess

22   drowsiness, or inability to be awakened.  (*Id.* ¶ 122).

23       Defendant doctors and defendant nurses acted under the direction and

24   supervision of Defendant Goldstein and pursuant to the standards, policies, and

25   procedures established by Goldstein regarding the treatment of inmates, including

26   Bernard Victorianne.  (*Id.* ¶¶ 145 - 147).  Goldstein's widespread failures to train,

27   supervise, and discipline medical staff at the County jails, despite his awareness

28   and knowledge of a high number of jail deaths, problems providing medical care to

1  drug-addicted inmates, and systemic failures to communicate information
2  regarding inmates' health and status, led to the agonizing harm that Bernard
3  suffered for nearly one week, culminating in his death.   (*See id*. ¶¶ 166, 169, 172,
4  178, 180).

**ARGUMENT**

**A.  Goldstein is Liable in His Individual Capacity as a Supervisory Official
for Callous and Reckless Indifference to Inmates in Obvious Medical
Distress**

Contrary to Defendant Goldstein's assertion that no claim may be stated
against him in his individual capacity, "a plaintiff may state a claim against a
supervisor for deliberate indifference based upon the supervisor's knowledge of
and acquiescence in unconstitutional conduct by his or her subordinates." *Starr v.
Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).

Section 1983 liability attaches to a supervisory official such as Goldstein if a
sufficient causal connection exists between the supervisory official's wrongful
conduct and the constitutional violation.  *Id*. at 1207, *citing Hansen v. Black*, 885
F.2d 642, 646 (9th Cir. 1989).  "Supervisory liability exists even without overt
personal participation in the offensive act if supervisory officials implement a
policy so deficient that the policy itself is a repudiation of constitutional rights and
is the moving force of the constitutional violation. *Redman v. County of San
Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (internal citations omitted).  "[A]
plaintiff must show the supervisor breached a duty to plaintiff which was the
proximate cause of the injury."  *Id*. (internal citations omitted).  "A supervisor can
be liable in his individual capacity for his own culpable action or inaction in the
training, supervision, or control of his subordinates; for his acquiescence in the
constitutional deprivation; or for conduct that showed a reckless or callous
indifference to the rights of others." *Id*. at 1208 *citing Watkins v. City of Oakland*,
145 F.3d 1087, 1093 (9th Cir. 1998).  "Acquiescence or culpable indifference may

suffice to show that a supervisor personally played a role in the alleged constitutional violations." *Id.* (internal citations omitted).

To properly state a claim in accordance with the pleading standard set forth in Fed. R. Civ. P. 8(a), a plaintiff's complaint must satisfy two prongs: first, it must contain "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively;" and second, factual allegations taken as true must "plausibly suggest an entitlement to relief." *Id.* at 1216.

In *Starr*, the Ninth Circuit held that plaintiff Starr had properly pled a claim of deliberate indifference against Los Angeles County Sheriff Baca by pleading detailed and specific factual allegations which "plausibly suggest that Sheriff Baca acquiesced in the unconstitutional conduct of his subordinates, and was thereby deliberately indifferent to the danger posed to Starr." *Id.* The court noted three ways in which plaintiff Starr had made detailed and specific factual allegations in support of his claim of deliberate indifference. *Id.* First, Starr had alleged numerous specific incidences in which inmates had been killed by the culpable conduct of Sheriff Baca's subordinates. *Id.* Second, the complaint specifically alleged that Baca had been made aware of these incidences and given notice, through several reports, of systematic problems in the county jails. *Id.* Finally, Starr's complaint had alleged that Baca failed to take any action to protect inmates under his care, despite his knowledge of the danger to inmates created by his subordinates. *Id.*

The Ninth Circuit held that Starr's detailed factual allegations plausibly suggested that Baca had acquiesced in the unconstitutional conduct of his subordinates because there was no "obvious alternative explanation" as to why Sheriff Baca did nothing to stop his subordinates' repeated violations of inmates' Constitutional rights once he had knowledge of such violations. "If there are two alternative explanations, one advanced by defendant and the other advanced by

1  plaintiff, both of which are plausible, plaintiff's complaint survives a motion to
2  dismiss under Rule 12(b)(6)." *Id*.

3         Here, like in *Starr*, Plaintiffs have pled detailed factual allegations of
4  deliberately indifferent medical care by Goldstein's subordinates of which
5  Goldstein had notice.  Plaintiffs have alleged specific incidences reflecting severe
6  deficiencies in the level of medical care provided to San Diego inmates: a high
7  number of inmate deaths (60) in San Diego County jails; eight deaths related to
8  drug overdose or withdrawals from drug addiction; **and six suicides over the span**
9  **of two fiscal years**.  Plaintiffs have alleged that Goldstein had both actual and
10 constructive notice through investigative news stories and critiques issued by
11 CLERB.  CLERB specifically recommended that the Sheriff's Department take
12 steps to improve communication and coordination of information among staff
13 during shift changes to "enhance continuity of care, monitoring and housing."
14 Claiming a low number of **completed suicides**, Goldstein rejected CLERB's
15 recommendation.

16        Plaintiffs have alleged that Goldstein acquiesced in the constitutional
17 violations of subordinates by refusing to implement improved policies and
18 procedures and tolerating the delivery of constitutionally deficient medical care to
19 inmates.  Goldstein, despite awareness of inmate deaths indicating lack of medical
20 care and gaps in the sharing of information and coordination of care, took no steps
21 to implement policies and procedures to ensure the "continuity of care, monitoring
22 and housing" to inmates.  Goldstein made no attempt to supervise, train, and
23 discipline his subordinates to manage the quality of medical care provided to
24 inmates despite the highest rate of inmate deaths in California among the largest
25 jail systems.

26        Plaintiffs' second amended complaint alleges systematic and institutional
27 failures to ascertain a patient's medical history; share pertinent patient information
28 among staff; ensure adequate diagnoses and the provision of appropriate care based

on a patient's individual symptoms and medical history; and coordinate care among various doctors and nurses to facilitate a centralized care plan.  Defendant Goldstein's persistent, callous, and reckless indifference to inmates such as Bernard Victorianne culminated in a situation where Bernard was sedated by Goldstein's subordinates, who failed to review Bernard's medical records and made no attempt to respond to his obvious distress, and placed in isolation (administrative segregation) to die.

Plaintiffs' allegations that Goldstein, "answerable for the prisoner's safekeeping," caused Bernard's death are therefore, pursuant to *Starr*, sufficient to state a claim of supervisory liability for deliberate indifference.

**B. Goldstein Is Not Entitled to Qualified Immunity Because Controlling Precedent Established That Policies Denying Medical Care to an Inmate in Obvious Distress Amounted to Deliberate Indifference**

Defendant Goldstein claims that Plaintiffs' allegations that he promulgated constitutionally deficient policies must be dismissed because Plaintiffs have failed to allege a constitutional right to any specific policy.  (Def. Mem. Ps. & As., ECF no. 102-1, at pp. 8-9).  Goldstein cites the Supreme Court's recent opinion in *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015), in which the Court granted defendant prison officials qualified immunity because the right to policies and protocols for suicide screening or prevention was not clearly established in November 2004.

Goldstein ignores the basic principal that he may not act or fail to act despite his knowledge of a substantial risk of serious harm under *Farmer v. Brennan*.  His position is that, despite the fact that the Constitution requires treatment for obvious and serious medical need, there is no requirement that the policy maker actually follow the Constitution.

Defendant Goldstein's purposefully ignores Plaintiffs' demand for policies to which Plaintiffs are constitutionally entitled to: protocols ensuring the delivery

of adequate medical care to an inmate such as Bernard, who was in obvious medical distress, had a known and documented condition for which he was to be monitored (the ingestion of the baggie of methamphetamine), and who repeatedly pleaded with doctors to "take it out of him" while pointing to his stomach while crying that he was "on fire, he was burning and something was burning his insides."  SAC ¶¶ 128-131; 133-137; 142-147.  Plaintiffs have an established right to such policies.  *See Banks v. North Las Vegas Police Dept*, 1990 U.S. App. LEXIS 20437, *3-6 (9th Cir. Nov. 20, 1990) ("A reasonable official should know and should have known at the time of Banks' death, that a pretrial detainee 'obviously suffering from a drug overdose' is in need of medical treatment and that failure to provide such treatment would violate due process"); *Wilson v. City of Chanute*, 43 F. Supp. 2d 1202, 1212-1213 (D. Kan. 1999) (supervisory official liable for deliberate indifference for failure to establish policy to render medical care to detainee suspected of suffering from drug overdose; department manual only instructed officers to monitor a detainee when his behavior appeared to be affected by the use of drugs and there was no evidence of any police department written protocol concerning medical attention for detainees).

"When prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing the delay creates the constitutional infirmity." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004).  *Accord George v. Sonoma County Sheriff's Dept*, 732 F. Supp. 2d 922, 937 (N.D. Cal. 2010) ("Deliberate indifference may include a failure to respond to a known medical problem, a failure to provide a system of ready access to adequate medical care, and a failure to provide a medical staff competent to examine and diagnose inmate's problems.") (internal citations omitted); *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) ("a serious medical need is present whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary

1   and wanton infliction of pain") (internal citations omitted); *Lolli v. County of*
2   *Orange*, 351 F.3d 410, 421 (9th Cir. 2003) ("[h]owever, the officers' indifference
3   to Lolli's extreme behavior, his obviously sickly appearance and his explicit
4   statements that he needed food because he was a diabetic could easily lead a jury to
5   find that the officers consciously disregarded a serious risk to Lolli's health."). As
6   the Ninth Circuit observed in *Clement*, 298 F.3d at 906, "[t]he general law
7   regarding the medical treatment of prisoners was clearly established at the time of
8   the incident. *See Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir. 1992).
9   Furthermore, it was also clearly established that the officers could not intentionally
10  deny or delay access to medical care. *See Estelle*, 429 U.S. at 104-05."

11         Moreover, the Ninth Circuit has consistently held that the "lack of
12  affirmative policies or procedures to guidance employees can amount to deliberate
13  indifference" even when other general policies are in place. *Long v. County of Los*
14  *Angeles*, 442 F.3d 1178, 1189 (9th Cir. 2006). In *Long*, the Ninth Circuit held that
15  the absence of policies to provide treatment to "medically unstable patient"
16  including the absence of policies to transfer patients to better equipped medical
17  facilities, constituted a triable issue as to whether defendant was "deliberately
18  indifferent" to an inmate's constitutional rights. *Id*. at 1190.

19         The *Long* court reviewed other Ninth Circuit precedent holding that the
20  failure to establish policies amount to deliberate indifference. In *Fairley*, an
21  arrestee who had been held in jail for 12 days present sufficient evidence that the
22  "city's failure to instigate procedures to alleviate the problem of detaining
23  individuals on the wrong warrant could constitute a policy of deliberate
24  indifference." *Long*, 442 F.3d at 1190, *citing Fairley*, 281 F.3d at 918. And in
25  *Oviatt*, the Ninth Circuit held that the lack of procedure to detect missed
26  arraignment dates, resulting in plaintiff's prolonged detention without arraignment,
27  "was a policy of inaction that amount to deliberate indifference to pretrial
28  detainees' constitutional rights." *Id*., *citing Oviatt*, 954 F.2d at 1478.

1    Here, Plaintiffs have stated allegations and information which give
2  Goldstein notice that he failed to implement the following: policies to ensure the
3  provision of adequate medical care to Bernard, who was obviously suffering pain
4  and observed to be in distress; policies to ensure that doctors and nurses check an
5  inmates medical history and records to understand patient history, particularly
6  when the patient is unable to communicate effectively; practices and procedures
7  requiring communication among medical staff and coordination of medical care;
8  policies prohibiting the administration of powerful drugs after only a cursory
9  examination of the patient and without reviewing the patient's medical history; and
10  protocols to ensure a medically fragile or distressed inmate be observed and
11  monitored, rather than placed in isolation.
12    Finally, *Starr v. Baca*, a Ninth Circuit case published in 2011, clearly
13  established by September 2012, when Bernard died, that a supervisory official
14  could be held liable on a claim of deliberate indifference alleged by a pretrial
15  inmate/detainee.

16  **C. Goldstein's Arguments Re: Plaintiffs' State Law Claims**

17    Goldstein's arguments in section IV and V (pp. 11-14) mirror Defendant
18  Sheriff Gore's same arguments in his motion to dismiss and motion to strike,
19  which Plaintiffs have already addressed in their opposition to Defendant Gore's
20  motion (ECF no. 105).  Thus, to avoid redundancy and repetition, Plaintiffs
21  incorporate by reference their opposition to Defendant Gore on pages 11-20 (ECF
22  no. 105).
23   ///
24  ///
25  ///
26  ///
27  ///
28  ///

## **CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request this Court deny Defendant Goldstein's motion to dismiss and motion to strike Plaintiffs' second amended complaint.

Respectfully submitted,

IREDALE AND YOO, APC

Dated: August 10, 2015                    s/ Grace Jun
                                          EUGENE IREDALE
                                          JULIA YOO
                                          GRACE JUN
                                          *Attorneys for PLAINTIFFS*