EUGENE G. IREDALE: SBN 75292
JULIA YOO:  SBN 231163
GRACE JUN, SBN 287973
IREDALE & YOO, APC
105 West F Street, Fourth Floor
San Diego, CA 92101-6036
TEL: (619) 233-1525   FAX: (619) 233-3221

R. STAN MORRIS
CARTEE & MORRIS, LLC
2325 Henry Street
Guntersville, AL 35976

Attorneys for Plaintiffs, the Estate of Bernard Victorianne, Bernard Victorianne II, and Zelda Victorianne

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF BERNARD VICTORIANNE by and through its successor-in-interest ZELDA VICTORIANNE, BERNARD VICTORIANNE II, and ZELDA VICTORIANNE,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, WILLIAM GORE, in his individual capacity, LESLEE HALL, an individual *et al*.,<br><br>　　　　　Defendants. | CASE NO. 14-cv-02170-WQH-BLM<br><br><br>**OPPOSITION TO DEFENDANT NUHIC'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** |

**Table of Contents**

I.     Introduction ................................................................. 1

II.    Factual Background ......................................................... 2

III.   Defendant Nuhic Acted Under Color Of State Law ................... 7

IV.    Defendant Nuhic Was Deliberately Indifferent to Bernard Victorianne's Serious Medical Needs ................................................. 8

V.     Defendant Nuhic Is Liable for the Wrongful Death of Bernard Victorianne ................................................................. 12

VI.    Defendant Nuhic's Deliberate Indifference Deprived Zelda and Bernard Victorianne of their Constitutionally Protected Right of Society and Companionship ......................................................... 13

VII.   Defendant Nuhic Acted Negligently .................................... 13

VIII.  Defendant Nuhic Is Liable Under California Law for the Wrongful Death of Bernard Victorianne ................................................. 15

IX.    Defendant Nuhic Is Liable for Medical Malpractice .................. 16

X.     Conclusion ................................................................. 17

**Table of Authorities**

**Cases**

*Arroyo v. Plosay*, 225 Cal. App. 4th 279 (Cal. App. 2d Dist. 2014) . . . . . . . . . . . . . 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Bellamy v. The Appellate Department of the Superior Court of Kings County*, 50 Cal. App. 797  (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . 1, 11

*Canister v. Emergency Ambulance Service, Inc*. 160 Cal.App.4th 388 (2008) . . . . 17

*Clarke v. Hoek* 174 Cal. App. 3d 208 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Espinosa v. Little Co. of Mary Hospital*, 31 Cal. App. 4th 1304 (Cal. App. 2d Dist. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Farmer v. Brennan*, 511 U.S. 825 ( 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hutchinson v. United States,* 838 F.2d 390 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . 9

*Jett v. Penner*, 439 F.3d 1091(9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Kockelman v. Segal*, 61 Cal. App. 4th 491, 498-499 (Cal. App. 6th Dist. 1998). . 14

*LaMarca v. Turner*, 995 F.2d 1526, 1535 (CA 1993) . . . . . . . . . . . . . . . . . . . . . . . . 9

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Martin v. White*, 742 F.2d 469  (CA 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*McGill v. Duckworth*, 944 F.2d 344 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*McGuckin v. Smith,* 974 F.2d 1050 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . 8, 9, 12

*Miltier v. Beorn*, 896 F.2d 848 (C.A. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Nally v. Grace Community Church* 47 Cal. 3d 278 (1988) . . . . . . . . . . . . . . . . . . . 14

*Padilla v. Yoo*, 633 F. Supp. 2d 1005, 1032 (N.D. Cal. 2009) . . . . . . . . . . . . . . . 1, 11

*Redman v. County of San Diego*, 942 F.2d 1435 (C.A. 1991) . . . . . . . . . . . . . . . . . . 9

*Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49 (1st Cir. 2013) . . . . . . . . . . 1, 11

*Shapley v. Nevada Bd. of State Prison Comm'rs,* 766 F.2d 404 (9th Cir. 1985) . . . 12

*Springfield v. Kibbe*, 480 U.S. 257 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Sutton v. Providence St. Joseph Med. Ctr.,* 192 F.3d 826 (9th Cir. Cal. 1999). . . . . 7

*Tandel v. County of Sacramento*, 2015 U.S. Dist. LEXIS 35335

(E.D. Cal. Mar. 20, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Tarasoff v. Regents of University of California*, 17 Cal. 3d 425 (1976) . . . . . . . . . 14

*United States v. Classic,* 313 U.S. 299 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Waters v. Bourhis*, 40 Cal. 3d 424 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Weirum v. RKO General, Inc.*, 15 Cal. 3d 40 (1975) . . . . . . . . . . . . . . . . . . . . . . . 14

*West v. Atkins*, 487 U.S. 42 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 13

*Williams v. State of California* 34 Cal. 3d 18 (1983) . . . . . . . . . . . . . . . . . . . . . . . 14

## Statutes

Cal Code Civ Proc § 340.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Cal Code Civ. Proc § 377.60 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Federal Rule of Civil Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

# I.
# __INTRODUCTION__

Defendant Nuhic moved to dismiss the Plaintiffs' Second Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Defendant Nuhic's motion argues that he was not deliberately indifferent to Bernard Victorianne's serious medical needs; Nuhic also argues that he was not the cause of Bernard Victorianne's death.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id*.  In evaluating a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor.  *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 52-53 (1st Cir. 2013).  Like all other facts on a motion to dismiss, facts alleging causation are presumed to be true.  *Padilla v. Yoo*, 633 F. Supp. 2d 1005, 1032 (N.D. Cal. 2009) (*citing Twombly*, 550 U.S. at 556).

The Second Amended Complaint meets the standard required by *Ashcroft*. Defendant Nuhic treated Bernard Victorianne when Bernard was in obvious medical distress and was incapable of communicating his medical needs. Without

reviewing Bernard's medical records and intake records, Defendant Nuhic prescribed Bernard a mix of powerful drugs.  Bernard's medical records showed that Bernard swallowed a baggie of meth and that he should immediately be sent back to the hospital if he showed symptoms of overdose.  By prescribing a variety of medications without engaging in any basic review of medical charts or analysis of Bernard's medical need, Dr. Nuhic acted with deliberate indifference toward Bernard Victorianne.  Plaintiffs have alleged facts that this deliberate indifference was a substantial factor in causing Bernard Victorianne's premature death.  Defendant Nuhic's motion to dismiss must be denied.

## II.
## FACTUAL BACKGROUND

On September 12, 2012, Bernard Victorianne was arrested for driving under the influence.  [SAC ¶ 17].  The arresting officer saw Bernard ingest a baggie of drugs.  [*Id.* at ¶ 18].  Bernard was booked at Central Jail at approximately 4:11 p.m. and it was documented that he had been evaluated at Alvarado Hospital after swallowing a baggie of drugs. [*Id.* at ¶ 19].  During intake, Bernard reported that he had ingested a baggie of methamphetamine. [*Id.* at ¶ 20].   The discharge document from Alvarado Hospital, which became part of the Central Jail record for Bernard Victorianne advised: "GET PROMPT MEDICAL ATTENTION if any of the following occur: agitation, anxiety, unable to sleep; unintended weight loss;

seizure; chest pain or shortness of breath; unexplained fever, excess drowsiness or inability to be awakened; slow breathing; shortness of breath; redness, swelling or tenderness." [*Id.* at ¶ 21].

On September 13, 2012, at approximately 12:32 a.m., Bernard was examined by medical staff.  [*Id.* at ¶ 22].  He told the staff that he had come from the hospital after ingesting a baggie of methamphetamine. [*Id.*].  Defendant Aileen Longno noted in Bernard's medical records that he had ingested meth and she noted that Bernard had alteration in thought process/content, ineffective health maintenance, risk for imbalance fluid volume. [*Id.* at ¶ 24].  On September 13, 2012, Bernard was agitated and irritable and he demonstrated paranoid behavior and made bizarre statements.  [*Id.* at ¶ 24].  Bernard told the deputy that there were people in the hallways waiting for him. [*Id.*].  Medical staff informed the deputies on duty that Bernard had been to Alvarado Hospital for ingesting methamphetamine. [*Id.*].  Bernard was then placed in a "Sobering Cell." [*Id.* at ¶ 25].  Nurses Aileen Longno and Rebecca Sivilay noted that Bernard was intoxicated for drug use and that he admitted to being under the influence of street drugs.  [*Id.*].  Nurse Sivilay noted that Bernard had slow speech; nods head when asked how doing; that he had auditory hallucinations, and was assessed as having "Alteration in thought process/content."  [*Id.*].

It was noted that Bernard was "standing by the door, talking, mumbling, appeared to be responding to internal stimuli, wearing blues, disheveled and unkempt," "occasionally yelling," and was assessed to have "potential for injury." [*Id.* at ¶ 26]. It was noted that Bernard stated: "I have sick; I am strave." [*Id.*]. Despite Bernard's abnormally high vital signs, auditory hallucinations, his assessment of having an alteration in thought process, with an assessment of having a "potential for injury" and with other physical manifestations, Defendant Sivilay cleared Bernard Victorianne to go to mainline. [*Id.* at ¶ 27].

On September 14, 2012, at 9:30 a.m., approximately 48 hours after ingesting methamphetamine, Bernard Victorianne was acting irrationally. He reported that other inmates were "out to get him" and that deputies were passing around his charge sheet to inmates. [*Id.* at ¶ 28]. While being escorted to be psychologically evaluated by a nurse, Bernard suddenly ran out of the elevator claiming that he saw a person with a gun. [*Id.*]. On September 14, 2014, Defendant Roque noted in Bernard Victorianne's medical chart, specifically on a standardized Psychiatric Outpatient Evaluation Form, that he had a history of "Illicit Drug Use" and handwrote "Meth cleared from sob(ering) cell on 9/13/12." [*Id.* at ¶ 29]. She further hand wrote that "Per floor deputy I/P (inmate/patient) exhibiting bizarre behavior, agitated, irritable with difficulty following directions." [*Id.*]. On the

standardized form Defendant Roque placed circles around the words "Angry,"

"Irritable," and "Paranoia." [*Id*].

The Psychiatric Evaluation Form was stamped in two (2) separate locations

with the words "NO UBH History" meaning "No United Behavioral Health

History," i.e. that Bernard Victorianne had no history of psychological issues. [*Id*.

at ¶ 30]. Then, in her Encounter Notes that same day at 09:40 a.m., Defendant

Roque wrote that Bernard Victorianne's Vitals were Temp (F): 97.3, Pulse: 99, and

Respiration: 20. [*Id*.]. She noted that he had been "Brought from the 4th floor for

psych eval, alert and oriented x3, in no acute distress, ambulatory, denies psych

problem… reported he had meth, cleared from sobering cell 9/13/12, per floor

deputy, I/P exhibiting bizarre behavior, agitated, irritable, w/ difficulty following

commands, psych SC in 3 days, SC explained and verbalized understanding." [*Id*.

at ¶ 31].

On September 16, 2012, at 10:39 a.m., approximately 4 days after Bernard

Victorianne ingested methamphetamine, Defendant Richter visited Bernard's cell

to conduct a psychological evaluation. [*Id*. at ¶ 34]. Defendant Richter noted that

Bernard was "responding to internal stimuli, while aggressively talking with the

wall." [*Id*.]. Richter noted that the room appeared highly disorganized and that an

attempt to speak to Bernard should be made the next day. [*Id*.]. Defendant Richter

noted "f/u with this patient tomorrow & likely could transfer." [*Id*.].

On September 17, 2012, at 4:40 p.m., Defendant Nuhic visited Bernard's cell for a psychological evaluation.  Nuhic observed that Bernard appeared to be "internally preoccupied" talking to himself while lying on the cell floor.  [*Id.* at ¶ 35].  Defendant Nuhic prescribed Ativan, Benadryl and Hadol. [*Id.*].  Defendant Nuhic scheduled a follow up in 2-3 days.  [*Id.*].  Defendant Nuhic took no further action.  [*Id.*].

Bernard Victorianne died on September 19, 2012, approximately 7 days after he had ingested methamphetamine. [*Id.* at ¶ 58].  Bernard had been in distress for days before his death, screaming and telling staff that his insides were "on fire." [*Id.* at ¶ 62].   Despite obvious signs of overdose, Bernard was sent to solitary confinement, instead of the medical unit where he could have been closely monitored and treated.  [*Id.* at ¶ 63].  During the course of a week, Mr. Victorianne increasingly showed signs of methamphetamine overdose.  [*Id.* at ¶ 65].  For approximately five days, Bernard Victorianne lived in excruciating pain. [*Id.* at ¶ 67].  No one provided him with appropriate medical care despite his pleas.  [*Id.*].  The medical staff knew that Bernard Victorianne had ingested a baggie of methamphetamine, which was documented in his medical chart.  [*Id.* at ¶ 69].

According to Citizens' Law Enforcement Review Board (CLERB) findings, jail staff failed to monitor Bernard, locking him up in administrative segregation;

left him to die in his cell; lied about their conduct during the investigation; and failed to properly investigate Bernard's death.  [*Id.* at ¶ 110].

### III.
### DEFENDANT NUHIC ACTED UNDER COLOR OF STATE LAW

The traditional definition of acting under color of state law requires that the defendant in a section 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic,* 313 U.S. 299, 326 (1941).  First, the deprivation must result from a governmental policy.  *Sutton v. Providence St. Joseph Med. Ctr.,* 192 F.3d 826, 835 (9th Cir. Cal. 1999).  In other words, the deprivation "must be caused by the exercise of some right or privilege created by the [government] or a rule of conduct imposed by the [government]."  *Id.* Second, "the party charged with the deprivation must be a person who may fairly be said to be a [governmental] actor." *Id.* (*citing Lugar v. Edmondson Oil Co., Inc*., 457 U.S. 922, 937 (1982)).

"[S]tate employment is generally sufficient to render the defendant a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. at 936, n. 18.  "A physician employed by a state to provide medical services to state prison inmates acts under color of state law for purposes of 42 U.S.C.S. § 1983 when undertaking his duties in treating an inmate's injury." *West v. Atkins*, 487 U.S. 42, 54 (1988).  When a doctor is authorized and obligated to treat inmates, he does so clothed with the

authority of state law and such conduct is fairly attributable to the state.  *See id.* at 55.

Defendant Nuhic was employed by the San Diego Central Jail to perform medical services for the inmates.  Defendant Nuhic worked for the state, and as a result, he was obligated to treat inmate Bernard Victorianne.  Defendant Nuhic traveled to the San Diego Central Jail in order to provide medical services to Bernard Victorianne prior to Bernard's death.  Plaintiffs have pled sufficient facts to support that Defendant Nuhic acted under color of state law when he treated Bernard Victorianne on September 17, 2012.

## IV.
## DEFENDANT NUHIC WAS DELIBERATELY INDIFFERENT TO BERNARD VICTORIANNE'S SERIOUS MEDICAL NEEDS

The standard for deliberate indifference requires (1) Plaintiff to have a "serious medical need" and (2) individual defendants were deliberately indifferent to that need.  *Tandel v. County of Sacramento*, 2015 U.S. Dist. LEXIS 35335 (E.D. Cal. Mar. 20, 2015).  Defendant does not dispute that Bernard Victorianne faced a serious medical or mental health need. (Nuhic Mem. Ps & As (hereinafter "Def. OPP.") p. 9, lines 4-5).  Deliberate indifference may be manifested in two ways. *McGuckin v. Smith,* 974 F.2d 1050 (9th Cir. 1992).  It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (*citing*

*Hutchinson v. United States,* 838 F.2d 390, 394 (9th Cir. 1988)). "[M]ere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Id.*  A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established.  *MGuckin,* 974 F.2d at 1060.  With deliberate indifference lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Courts of Appeals have routinely equated deliberate indifference with recklessness.  *Farmer v. Brennan*, 511 U.S. 825, 836 ( 1994) (*citing LaMarca v. Turner*, 995 F.2d 1526, 1535 (C.A. 1993); *Manarite v. Springfield*, 957 F.2d 953, 957 (C.A. 1992); *Redman v. County of San Diego*, 942 F.2d 1435, 1443 (C.A. 1991); *McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991); *Miltier v. Beorn*, 896 F.2d 848, 851-852 (C.A. 1990); *Martin v. White*, 742 F.2d 469, 474 (CA 1984); *Springfield v. Kibbe*, 480 U.S. 257, 269 (1987)).

Defendant Nuhic denied, delayed, and/or intentionally interfered with Bernard's medical treatment, and the Plaintiffs have pled sufficient facts to support such a finding.  Defendant Nuhic visited Bernard Victorianne's cell on September 17, 2012.  Defendant Nuhic found Bernard Victorianne lying on the cell floor talking to himself.  Defendant Nuhic conducted a psychological evaluation and observed Bernard Victorianne to be "internally preoccupied."   Defendant Nuhic

observed that Bernard needed medical attention, but he failed to review Bernard's medical history.  Bernard was suffering from obvious effects of methamphetamine overdose and as a result, could not adequately communicate his condition. Defendant Nuhic was required, faced with a patient in obvious medical distress, to read the patient's medical chart at minimum in order to provide medical care.  By failing to read Bernard's medical charts, Defendant Nuhic failed to discvoer Bernard's obvious medical needs.  Defendant Nuhic, with deliberate indifference, failed to provide basic medical treatment to a dying man, denying, delaying, and intentionally interfering with Bernard Victorianne's medical treatment.

Defendant Nuhic's manner of providing care to Bernard Victorianne also evidences deliberate indifference.  As a Board Certified Psychiatrist, Defendant Nuhic tests patients for drug-induced medical disorders and he is familiar with the mental effects of drugs, including methamphetamine.  Rather than reading Bernard Victorianne's chart and report that Bernard ingested drugs and that Bernard was to return to the hospital immediately if he exhibited symptoms of overdose, Defendant Nuhic prescribed three powerful drugs that are used for three separate mental disorders: Ativan, Benadryl, and Haldol.  Defendant Nuhic treated Bernard Victorianne for allergies, anxiety, depression, and schizophrenia.  The fact that Defendant Nuhic drugged Bernard Victorianne for conditions Bernrad did not suffer from evidences a deliberate indifference.

In his Motion, Defendant Nuhic argues that because Bernard Victorianne was not experiencing any medical problems the day after he had provided Bernard Victorianne with the medication, that Defendant Nuhic did not cause Bernard Victorianne harm.  (Def. Opp. p. 10, lines 5-9).  In evaluating a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor. *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 52-53 (1st Cir. 2013).  Like all other facts on a motion to dismiss, facts alleging causation are presumed to be true. *Padilla v. Yoo*, 633 F. Supp. 2d 1005, 1032 (N.D. Cal. 2009) (*citing Twombly*, 550 U.S. at 556).

In the Second Amended Complaint, Plaintiff pled ample facts alleging causation between Defendant Nuhic's deliberate indifference to Bernard Victorianne's serious medical needs and Bernard Victorianne's premature death. There is no requirement that Nuhic's deliberate indifference be the sole cause of death.  It is sufficient that his actions were a substantial factor in causing Bernard's death.  Plaintiff have alleged sufficient facts in the Second Amended Complaint that Dr. Nuhic's deliberate indifference was a substantial factor in causing Bernard Victorianne's death.  Less than two days after Defendant Nuhic "treated" Bernard Victorianne, and ignored Bernard's overdose, Bernard Victorianne died.  Plaintiffs

have sufficiently pled that Defendant Nuhic was deliberately indifferent and that his deliberate indifference caused Bernard Victorianne's death.

## V.
### <u>DEFENDANT NUHIC IS LIABLE FOR THE WRONGFUL DEATH OF BERNARD VICTORIANNE</u>

A wrongful death cause of action under section 1983 requires deliberate indifference by showing both (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *See Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *McGuckin*, 974 F.2d at 1060; *Shapley v. Nevada Bd. of State Prison Comm'rs,* 766 F.2d 404, 407 (9th Cir. 1985).

There is ample evidence that Defendant Nuhic failed to respond to Bernard Victorianne's obvious pain and medical needs with deliberate indifference. Defendant Nuhic chose not to read Bernard Victorianne's medical records or his intake records, which would have alerted Nuhic to Bernard's methamphetamine overdose. Defendant Nuhic's drugging of Victorianne with powerful antipsychotic medication denied, delayed, and/or intentionally interfered with the medical treatment that Bernard Victorianne needed for overdose, a serious medical need. As a result of this deliberate indifference, Bernard Victorianne died two days later, causing harm not only to Bernard, but also to his parents, Zelda and Bernard Victorianne III.

# VI.
## DEFENDANT NUHIC'S DELIBERATE INDIFFERENCE DEPRIVED ZELDA AND BERNARD VICTORIANNE OF THEIR CONSTITUTIONALLY PROTECTED RIGHT OF SOCIETY AND COMPANIONSHIP

Plaintiffs' claim for loss of society and companionship of their son is predicated on the unconstitutional conduct of defendants. (Def. Opp. p. 8, lines 24-25). Zelda and Bernard Victorianne III have a protected right under the substantive due process clause of the Fourteenth Amendment to the society and companionship of their son. As a result of Defendant Nuhic's deliberate indifference, Bernard Victorianne's parents, Zelda and Bernard Victorianne III, have been deprived of Bernard's society and companionship. The Second Amended Complaint clearly pleads that Zelda and Bernard's loss of companionship was caused by of Dr. Nuhic's deliberate indifference toward Bernard Victorianne while Dr. Nuhic was acting under color of state law. *See West v. Atkins*, 487 U.S. 42 (U.S. 1988).

# VII.
## DEFENDANT NUHIC ACTED NEGLIGENTLY

Defendant Nuhic had a duty to act with ordinary care and prudence so as not to cause harm or injury to Bernard Victorianne. Faced with a patient who was exhibiting obvious symptoms of overdose; who was seen ingesting a baggie of methamphetamine; who was ordered by an Emergency Room doctor to return immediately to the hospital if exhibiting symptoms of overdose; who was unable to

care for himself or speak coherently; who was begging for help and yelling that his insides were on fire, Defendant Nuhic decided to ignore Bernard's medical charts and administer powerful drugs which further sedated Bernard.  Bernard Victorianne's medical chart specifically addressed drowsiness as a symptom of methamphetamine overdose.  Alvarado Hospital had specifically warned in the discharge document:  "GET PROMPT MEDICAL ATTENTION" if certain symptoms manifested.  Bernard Victorianne exhibited almost every symptom on that list.  Nuhic's conduct in ignoring obvious symptoms; refusing to look at a patient's medical charts; and failing to summon help for a dying man fell below the standard of care.

 "Professional negligence" means a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital.  Cal Code Civ Proc § 340.5.

Under traditional tort law principles, a person is not ordinarily liable for the actions of another and is under no duty to protect another person from harm. *See Kockelman v. Segal*, 61 Cal. App. 4th 491, 498-499 (Cal. App. 6th Dist. 1998) (*citing Nally v. Grace Community Church* 47 Cal. 3d 278, 293(1988)).  An

affirmative duty to protect another from harm may arise where a "special relationship" exists. *Id.* (*citing Williams v. State of California* 34 Cal. 3d 18, 23 (1983); *Weirum v. RKO General, Inc*., 15 Cal. 3d 40, 48 (1975); *Clarke v. Hoek* 174 Cal. App. 3d 208, 215-216 (1985)).  A special relationship is typically established when the plaintiff is particularly vulnerable and dependent upon the defendant who, correspondingly, has some control over the plaintiff's welfare. *Id.* (*citing* Prosser & Keeton, Torts (5th ed. 1984) § 56, p. 374).  There exists a special duty requiring that a psychiatrist use due care for the patient's health.  *Id.* (*citing Waters v. Bourhis*, 40 Cal. 3d 424, 434 (1985)).  The parameters of the doctor's duty of care and the adequacy of the diagnosis and treatment of the particular patient under particular circumstances will necessarily vary with the facts, measured against professional standards of reasonableness. *Id*. at 499 (*citing Tarasoff v. Regents of University of California*, 17 Cal. 3d 425, 439 (1976). "[W]here a defendant's negligence is a concurring cause of an injury, the law regards it as a legal cause of the injury, regardless of the extent to which it contributes to the injury." *Espinosa v. Little Co. of Mary Hospital*, 31 Cal. App. 4th 1304, 1318 (Cal. App. 2d Dist. 1995).

Defendant Nuhic owed a duty to his patient, Bernard Victorianne.  *See Bellamy v. The Appellate Department of the Superior Court of Kings County*, 50 Cal. App. 797, 806 (1996).  As a Board Certified Psychiatrist and as a Medical

Doctor, Defendant Nuhic not only owed a general duty of care to Bernard Victorianne, he owed a specialized duty to Bernard Victorianne in treating him and in prescribing him Ativan, Benadryl, and Haldol.

Defendant Nuhic's treatment of Bernard Victorianne fell below the standard of care required for a Board Certified Psychiatrist and Medical Doctor.  Defendant Nuhic treated Bernard Victorianne at a critical time, less than two days before Bernard Victorianne's premature death.  As a result of Nuhic's negligence, Bernard Victorianne died.  Plaintiffs have alleged sufficient facts showing that Defendant Nuhic acted negligently and that his negligence was a substantial factor in causing Bernard Victorianne's premature death.

### VIII
### DR. NUHIC IS LIABLE UNDER CALIFORNIA LAW FOR THE WRONGFUL DEATH OF BERNARD VICTORIANNE

Bernard Victorianne's death was caused by the wrongful act and/or neglect of Dr. Nuhic.  *See* California Code Civ. Pro. § 377.60.  The Second Amended Complaint states that Bernard Victorianne was deprived of his rights to be free from punishment without due process and to be free from cruel and unusual punishment under the United States Constitution.  The Second Amended Complaint states that Defendants, including Defendant Nuhic, denied Bernard Victorianne access to necessary medical attention by failing to render or summon medical assistance.  As detailed above, the Second Amended Complaint alleges

specific facts showing that Defendant Nuhic with deliberate indifference failed to review Bernard Victorianne's medical record, resulting in improper treatment and diagnosis of Bernard Victorianne. As set forth above, Defendant Nuhic not only fell below the standard of care for a Medical Doctor and Board Certified Psychiatrist, he showed deliberate indifference to Bernard Victorianne in denying, delaying or intentionally interfering with medical treatment, and drugging Bernard Victorianne with powerful sedatives.  As a result of this deliberate indifference and neglect, Bernard Victorianne died prematurely.

**IX.**
## DR. NUHIC IS LIABLE FOR MEDICAL MALPRACTICE

"[C]ourts have broadly construed 'professional negligence' to mean negligence occurring during the rendering of services for which the health care provider is licensed." *Canister v. Emergency Ambulance Service, Inc*. 160 Cal.App.4th 388, 406 (2008).  MICRA statutes apply to negligent conduct by a health care provider in the rendering of professional services and are not limited to actions by the recipient of professional services.  *Arroyo v. Plosay*, 225 Cal. App. 4th 279, 298 (Cal. App. 2d Dist. 2014). Defendant Nuhic implies that Plaintiffs' damages are not directly related to the professional services provided by Nuhic. *Id*.

Nuhic saw Bernard Victorianne prior to Bernard's death and Nuhic was acting in his professional capacity as a psychiatrist and as a medical doctor when

he treated Bernard.  The Second Amended Complaint alleges that Defendant Nuhic observed Bernard to be 'internally preoccupied' talking to himself while lying on the cell floor."  Based upon these observations alone, without reviewing Bernard Victorianne's medical reports and medical chart, Defendant Nuhic prescribed Bernard a drug cocktail for allergies, anxiety, depression, and schizophrenia. Bernard died nearly two days after his visit with Defendant Nuhic; Nuhic's professional negligence was a substantial factor in causing Bernard Victorianne's premature death.

## X.
## CONCLUSION

For the foregoing reasons, the Court should deny Defendant Nuhic's Motion to Dismiss the Second Amended Complaint.

Respectfully submitted,

IREDALE AND YOO, APC

DATED August 10, 2015     s/ Eugene Iredale
                          EUGENE G. IREDALE
                          JULIA YOO
                          GRACE JUN
                          ELLEN MARKS
                          Attorneys for Plaintiffs