1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10
11
12
13

THE ESTATE OF BERNARD
VICTORIANNE by and through its
successor-in-interest ZELDA
VICTORIANNE, BERNARD
VICTORIANNE III, and ZELDA
VICTORIANNE,

CASE NO. 14cv2170 WQH (BLM)

ORDER

14

Plaintiffs,

v.

15

COUNTY OF SAN DIEGO et al.,

16

Defendants.

17

HAYES, Judge:

18
19
20
21
22
23
24
25
26
27
28

The matters before the court are 1) the Motion to Dismiss and to Strike Parts of the Second Amended Complaint (ECF No. 84) filed by Defendants William Gore, Leslee Hall, and the County of San Diego; 2) the Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 101) filed by Defendant Zvjezdan Nuhic; 3) the Motion to Dismiss and to Strike Parts of the Second Amended Complaint (ECF No. 102) filed by Defendant Earl Goldstein, M.D.; 4) the Motion to Dismiss and to Strike Parts of the Second Amended Complaint (ECF No. 106) filed by Defendant Rebecca Sivilay; 5) the Motion to Dismiss and to Strike Parts of the Second Amended Complaint (ECF No. 107) filed by Defendant Patrick Gardner; 6) the Motion to Dismiss and to Strike Parts of the Second Amended Complaint (ECF No. 116) filed by Defendants Guynemer Almazan, Arthur Ayala, Ernesto Flores, Laudente Gallegos, Edmundo Garcia, Tony Lien, and Keith Russell; 7) the Motion to Dismiss and to Strike Parts of the Second

1  Amended Complaint (ECF No. 117) filed by Defendant Bruce Leicht; 8) the Motion to

2  Dismiss and to Strike Parts of the Second Amended Complaint (ECF No. 118) filed by

3  Defendants Deborah Bell, Aileen Longno, and Corazon Roque; 9) the Motion to

4  Dismiss Plaintiffs' Second Amended Complaint (ECF No. 122) filed by Kenneth

5  Richter; and 10) the Motions to Dismiss Plaintiffs' Second Amended Complaint (ECF

6  Nos. 125, 126) filed by Defendant Peter Huang.[1]

7  **I. BACKGROUND**

8  On September 11, 2014, Plaintiffs initiated this action by filing a Complaint.

9  (ECF No. 1).  On February 9, 2015, Plaintiffs filed the First Amended Complaint

10  ("FAC").  (ECF No. 39).   On June 2, 2015, Plaintiffs filed the Second Amended

11  Complaint ("SAC"), which is the operative pleading in this case. (ECF No. 82).

12  On June 16, 2015, Defendants William Gore, Leslee Hall, and County of San

13  Diego filed a Motion to Dismiss and to Strike Parts of the Second Amended Complaint.

14  (ECF No. 84).  On July 20, 2015, Plaintiffs filed an opposition.  (ECF No. 105).  On

15  July 27, 2015, Defendants filed a reply.  (ECF No. 108).

16  On July 14, 2015, Defendant Zvjezdan Nuhic filed a Motion to Dismiss for

17  Failure to State a Claim.  (ECF No. 101).  On August 10, 2015, Plaintiffs filed an

18  opposition. (ECF No. 111).  On August 13, 2015, Defendant Nuhic filed a reply.  (ECF

19  No. 112).

20  On July 15, 2015, Defendant Earl Goldstein filed a Motion to Dismiss and to

21  Strike Parts of the Second Amended Complaint.  (ECF No. 102).  On August 10, 2015,

22  Plaintiffs filed an opposition.  (ECF No. 110).  On August 17, 2015, Defendant

23  Goldstein filed a reply.  (ECF No. 119).

24  On July 21, 2015, Defendant Rebecca Sivilay filed a Motion to Dismiss and to

25  Strike Parts of the Second Amended Complaint.  (ECF No. 106).  On August 17, 2015,

26  Plaintiffs filed an opposition.  (ECF No. 120).  On August 24, 2015, Defendant Sivilay

27  filed a reply.  (ECF No. 123).

28

---

[1] ECF Nos. 125 and 126, filed by Defendant Huang, appear to be identical.

1       On July 21, 2015, Defendant Patrick Gardner filed a Motion to Dismiss and to

2 Strike Parts of the Second Amended Complaint.  (ECF No. 107).  On August 17, 2015,

3 Plaintiffs filed an opposition.  (ECF No. 121).  On August 24, 2015, Defendant Gardner

4 filed a reply.  (ECF No. 124).

5       On August 17, Defendants Almazan, Ayala, Flores, Gallegos, Garcia, Lien, and

6 Russell filed a Motion to Dismiss and to Strike Parts of the Second Amended

7 Complaint.  (ECF No. 116).  On September 11, 2015, Plaintiffs filed an opposition.

8 (ECF No. 130).  On September 18, 2015, Defendants filed a reply.  (ECF No. 135).

9       On August 17, 2015, Defendant Bruce Leicht filed a Motion to Dismiss and to

10 Strike Parts of the Second Amended Complaint.  (ECF No. 117).  On September 11,

11 2015, Plaintiffs filed an opposition.  (ECF No. 131).  On September 18, 2015,

12 Defendant Leicht filed a reply.  (ECF No. 136).

13       On August 17, 2015, Defendants Deborah Bell, Aileen Longno, and Corazon

14 Roque filed a Motion to Dismiss and to Strike Parts of the Second Amended Complaint.

15 (ECF No. 118).  On September 11, 2015, Plaintiffs filed an opposition.  (ECF No. 129).

16 On September 18, 2015, Defendants filed a reply.  (ECF No. 137).

17       On August 21, 2015, Defendant Kenneth Richter filed a Motion to Dismiss for

18 Failure to State a Claim.  (ECF No. 122).  On September 14, 2015, Plaintiffs filed an

19 opposition.  (ECF No. 132).  On September 16, 2015, Defendant Richter filed a reply.

20 (ECF No. 133).

21       On August 31, 2015, Defendant Peter Huang filed a Motion to Dismiss Plaintiffs'

22 Second Amended Complaint (ECF No. 125) and an identical Motion to Dismiss

23 Plaintiffs' Second Amended Complaint (ECF No. 126).  On September 29, 2015,

24 Plaintiffs filed an opposition to the motions.  (ECF No. 139).  On October 6, 2015,

25 Defendant Huang filed a reply.  (ECF No. 142).

26 **II. ALLEGATIONS OF THE COMPLAINT**

27       "On September 12, 2012, Bernard Victorianne was arrested for driving under the

28 influence."  (ECF No. 82 ¶ 17).  "Observed swallowing a baggie of drugs during the

arrest, he was first taken to Alvarado Hospital but was released and booked into San Diego's Central Jail . . . ." *Id.* ¶ 18.

> On September 12, 2012 at approximately 4:11 p.m. Bernard Victorianne was booked at the Central Jail, where it was documented during Medical Intake that Bernard had been evaluated at Alvarado Hospital after swallowing a baggie of drugs. It was noted that Bernard had no psychiatric problems or history. Bernard reported to the staff recent heavy methamphetamine and alcohol use on September 11, 2012.

> The discharge document from Alvarado Hospital, which became a part of the Central Jail record for Bernard Victorianne, advised: 'GET PROMPT MEDICAL ATTENTION if any of the following occur: agitation, anxiety, unable to sleep; unintended weight loss; seizure; chest pain or shortness of breath; unexplained fever; excess drowsiness or inability to be awakened; slow breathing; shortness of breath; redness, swelling, or tenderness.'

*Id.* ¶¶ 19, 21.

"On September 13, 2012, at approximately 12:32 a.m., Bernard was examined by medical staff. He told the staff that he had come from the hospital after ingesting a baggie of methamphetamine." *Id.* ¶ 22. "Defendant Aileen Longno noted in Bernard's medical records that he had ingested meth and noted that Bernard has alteration in thought process/content, ineffective health maintenance, risk for imbalance fluid volume." *Id.* ¶ 23.

> On September 13, 2012, at 7 a.m., approximately 22 hours after ingesting methamphetamine, Bernard was found agitated and irritable, stating that nurses were passing papers around to people so that they could kill him. Bernard told the deputy that there were people sitting in the hallways waiting for him. He demonstrated paranoid behavior and made bizarre statements. Medical staff informed the deputies on duty that Bernard had been to Alvarado Hospital for ingesting methamphetamine. Deputy Rolle determined that Bernard was under the influence of a controlled substance and placed Bernard Victorianne in a Sobering Cell.

> Once Bernard Victorianne was placed in a 'Sobering Cell' on September 13, 2012 at 7:00 a.m., he was monitored by Defendant nurse Ailene Longno and Defendant nurse Rebecca Sivilay. It was noted by the defendant nurses that Bernard Victorianne was intoxicated for drug use and that he admitted being under the influence of street drugs. Defendant Longno noted in Bernard Victorianne's medical chart that his Vitals at 7:01 a.m. were BP 143/100 and Pulse 101, both being abnormally high vital signs. Defendant Sivilay noted that Bernard Victorianne had slow speech; nods head when asked how doing; that he had auditory hallucinations, and was assessed as having an 'Alteration in thought process/content.'

> It was noted that he was 'standing by the door, talking, mumbling,

appeared to be responding to internal stimuli, wearing blues, disheveled and unkempt' 'occasionally yelling' and was assessed to have a 'potential for injury.' It was noted that Bernard Victorianne had stated: 'I have sick; I am [starve].' Bernard Victorianne was observed throughout the remainder of the morning of September 13 in the sobering cell and it was noted that he refused lunch.

At 1:37 p.m., Bernard Victorianne's Vitals were Pulse 100 and BP 146/100 per nurse Rebecca Sivilay, again being both abnormally high vital signs. Nevertheless, with abnormally high vital signs, with auditory hallucinations, with an assessment of having an alteration in thought process, with an assessment of having a 'potential for injury' . . . Defendant nurse Sivilay cleared Bernard Victorianne to go to mainline at 1:38 p.m.

On September 14, 2012, at 9:30 a.m., approximately 48 hours after ingesting methamphetamine, Bernard Victorianne was acting irrationally. He reported that other inmates were 'out to get him' and that deputies were passing around his charge sheet to inmates. While being escorted to be psychologically evaluated by a nurse, Bernard suddenly ran out of the elevator claiming that he saw a person with a gun.

On September 14, 2012 Defendant Corazon Roque noted in Bernard Victorianne's medical chart, specifically on a standardized Psychiatric Outpatient Evaluation Form, that he had a history of 'Illicit Drug Use' and hand wrote 'Meth cleared from sob(ering) cell 9/13/12.' She further hand wrote that 'Per floor deputy I/P (inmate/patient) exhibiting bizarre behavior, agitated, irritable with difficulty following directions.'

*Id.* ¶¶ 24-29. "The Psychiatric Evaluation Form was stamped in two (2) separate locations with the words 'NO UBH HISTORY' meaning 'No United Behavioral Health History,' i.e. that Bernard Victorianne had no history of psychological issues." *Id.* ¶ 30. Defendant Roque

noted that [Bernard Victorianne] had been 'Brought here from the 4th floor for psych eval, alert and oriented x3, in no acute distress, ambulatory, denies psych problem . . . . reported he had meth, cleared from sobering cell 9/13/12, per floor deputy, I/P exhibiting bizarre behavior, agitated, irritable, w/ difficulty following commands . . . .

*Id.* ¶ 31. "Bernard was scheduled for a psychological examination. Bernard was not seen by a doctor." *Id.* ¶ 32. "Bernard was placed on lockdown." *Id.* ¶ 33.

On September 16, 2012, at 10:39 a.m., . . . Defendant Richter visited Bernard's cell to conduct a psychological evaluation. Defendant Richter noted that Bernard Victorianne was 'responding to internal stimuli, while aggressively talking with the wall.' Richter noted that the room appeared highly disorganized. Richter noted that an attempt to speak to Bernard should be made the next day. Defendant noted 'f/u with this patient tomorrow & likely consider transfer.' Defendant Richter took no further action.

On September 17, 2012, at 4:40 p.m. . . . Defendant Nuhic visited Bernard's cell for a psychological evaluation.  Nuhic observed that Bernard appeared to be 'internally preoccupied' talking to himself while lying on the cell floor.  Defendant Nuhic prescribed Ativan, Benadryl and Haldol.  Defendant Nuhic scheduled a follow up in 2-3 days.  Nuhic took no further action.

*Id.* ¶¶ 34-35.

"On September 18, 2012, at 8:00 a.m., approximately 6 days after Bernard Victorianne ingested methamphetamine, Sgt. Hansen noted that Bernard was in medical distress.  Deputies entered his cell and transferred him by gurney to Medical." *Id.* ¶ 36. "Defendant Gable examined Bernard Victorianne.  Gabel saw Bernard who was brought in on a stretcher and noted 'Impression no medical problem at this time.'  Defendant Gabel administered no care." *Id.* ¶ 37.  "Defendant Roque noted that Bernard was hyper-verbal, talking nonsense and appeared to be hallucinating." *Id.* ¶ 38. "Defendant Huang reviewed Bernard's medical records and determined that his behavior might be consistent with seizures.  Huang noted that Bernard was suffering from the effects of stimulant or hallucinogen; possibly bath salts.  Huang noted that Bernard was scared and agitated." *Id.* ¶ 39.  "Bernard told Defendants Huang and Bell that he was 'on fire; he was burning and something was burning his insides.'  Bernard kept asking Defendant Bell for water.  Bernard reached to his stomach several times and stated to Defendant Bell, 'Pull it out - get it out of me.'" *Id.* ¶ 40.  Defendants Huang and Bell gave Bernard Haldol, Ativan, and Benadryl.  Defendants Huang and Bell took no further action." *Id.* ¶ 41.  "Gabel and Huang released Bernard Victorianne from Medical so that he could be placed in solitary confinement." *Id.* ¶ 42.

"Defendant Ayala decided to place Bernard Victorianne in Administrative Segregation." *Id.* ¶ 43.  "Deputies transported Bernard on a gurney to the Administrative Segregation cell. . . . Bernard Victorianne was left in administrative segregation without a mattress to sleep on." *Id.* ¶ 44.

Throughout the afternoon and evening of September 18, 2012, Defendants Lien, Russell, Flores, and Almazan were supposed to have conducted "Soft Count" cell checks on Bernard Victorianne's jail pod on seven separate occasions. *Id.* ¶¶ 45-48, 50,

52-54. Each time, Defendants Lien, Russell, Flores, and Almazan failed to comply with "Soft Count" procedures, only briefly looking in the cell or walking by without looking in Bernard Victorianne's cell. *Id.* At approximately 3:53 p.m., Defendant Flores was seen attempting to open the food flap to serve a meal. When he could not open the food flap, Flores moved on to the next cell and did not return to open Bernard's cell door. *Id.* ¶ 49. "Sheriff's policy requires that during a 'Soft Count,' an inmate's well-being is to be verified through verbal or physical acknowledgment from the inmate." *Id.* ¶ 55.

"At approximately 9:43 p.m., Defendant Edmundo Garcia conducted a 'Hard Count.' The video shows Garcia walk past Bernard's cell without stopping; without breaking stride; taking approximately 1 second to walk past the cell door, while glancing toward the windowed door of the cell." *Id.* ¶ 56. "Sheriff's policy requires that during a 'Hard Count,' deputies are to use a Bar Code Reader to scan each inmate; confirm the inmate's name, booking number and wristband photo. The deputy should check the inmate's overall condition, check the inmate's wristband and verify the inmate is in the appropriate cell." *Id.* ¶ 57.

> On September 19, 2012, at 4:00 a.m., approximately 7 days after Bernard Victorianne ingested methamphetamine, Defendants Garcia and Gallegos served meals to inmates. Defendant Garcia signaled the Control Deputy to open Bernard's cell door. Garcia entered the cell with Gallegos standing in the doorway. Forty-one seconds after entering Bernard's cell, Defendants are observed exiting his cell and closing the cell door. Inmate trustees serving meals heard Gallegos tell Garcia, 'The guy's not moving.' Garcia responded, 'Okay, he twitched' at which point Garcia left the tray of food, closed the door, and left.

*Id.* ¶ 58. "Defendants Garcia and Gallegos are trained as first responders in First Aid and CPR. They made no attempts to check Bernard Victorianne's vital signs or pulse." *Id.* ¶ 59. "Policy requires that deputies receive verbal or physical acknowledgment from an inmate who might be in medical distress, but Victorianne provided neither. Defendants never alerted medical staff." *Id.* ¶ 60.

"Three hours later, at approximately 7:00 a.m., after a shift change, deputies found Bernard dead on the floor. Bernard Victorianne was nude, lying prone on a

blanket that had been soiled, with his right arm wedged under his torso and his left arm outstretched." *Id.* ¶ 61.

"Bernard Victorianne had been in distress for days before his death, screaming and telling staff that his insides were 'on fire.'" *Id.* ¶ 62. "Despite obvious signs of overdose, Mr. Victorianne was sent to solitary confinement, instead of the medical unit where he could have been closely monitored and treated." *Id.* ¶ 63. "Bernard Victorianne had been scheduled for a hospital visit, but he was never transported to the hospital. Instead of transporting him to the hospital, the jail medical staff prescribed Benadryl, the sedative Ativan and Haldol, a powerful antipsychotic." *Id.* ¶ 64. "For approximately five days, Bernard Victorianne lived in excruciating pain. No one from the San Diego County Jail provided him with the appropriate medical care despite his pleas." *Id.* ¶ 67.

"Symptoms of methamphetamine overdose include: hyperactivity; paranoia; agitation; fast breathing; high or low blood pressure; confusion; shakiness; aggressiveness; hallucinations (auditory or visual); seizures and severe stomach pain. Bernard Victorianne demonstrated all of these symptoms for five days." *Id.* ¶ 68.

"All medical staff worked under the direction and supervision of Defendants Leicht and Goldstein, who set the policies and procedures with respect to medical services." *Id.* ¶ 70.

"Sheriff's Policy provides that Homicide and Detentions Investigations Unit generally conduct all interviews of possible witnesses after an inmate death. Deaths are not investigated by Internal Affairs." *Id.* ¶ 71. "All involved deputies are considered possible witnesses and are to write a deputy's report detailing their involvement." *Id.* ¶ 72. "Sheriff's Policy mandates that circumstances of death be investigated immediately. Interviews of witnesses are typically conducted as soon as possible during the initial investigation, usually within a few hours of Homicide investigators' initial response to the facility." *Id.* ¶ 73.

"Homicide investigators violated these policies by failing to interview or secure

deputy reports from Defendants Garcia and Gallegos, the last deputies to see Bernard Victorianne before he was found dead." *Id.* ¶ 74. "Defendant Patrick Gardner was in charge of the investigation of Bernard Victorianne's death." *Id.* ¶ 75. "Gardner told Defendant Leslee Hall, the detective heading the homicide investigation, not to interview or to get reports from Defendants Garcia and Gallegos . . . ." *Id.* ¶ 76. "Gardner told Hall not to expect reports from the two deputies. Hall acquiesced without resistance or minimal discussion and did not question this breach of investigative protocol." *Id.* ¶ 77.

> Gardner decided that Internal Affairs would conduct an investigation of Defendants Garcia and Gallegos. Gardner determined that 'in order to ensure that Deputies Garcia and Gallegos' Peace Officer's Bill of Rights were handled correctly, Internal Affairs investigators would conduct these interviews, while homicide detectives handled the rest.' During an IA interview, deputies are entitled to be represented by legal counsel.

*Id.* ¶ 78. "Internal Affairs reports and interviews are not shared with the Homicide Unit nor with [the Citizens' Law Enforcement Review Board ("CLERB")] pursuant to Peace Officers Bill of Rights." *Id.* ¶ 79. "Internal Affairs does not begin an investigation until the Homicide Unit completes its investigation. In this case, IA was not contacted until two weeks after Bernard's death." *Id.* ¶ 80.

> Gardner knew that Sheriff's Policies required Homicide, not IA, to immediately interview deputies who were critical witnesses. Gardner knew that IA interviews of witnesses would not be shared with Homicide or CLERB and that they would remain confidential. Gardner knew that IA would not conduct any interviews of deputies while the Homicide investigation was on-going.

> Defendant Leslee Hall withheld information from the Medical Examiner's officer related to the circumstances of Bernard's death. She failed to report that Bernard had been asking for help for days before his death. She failed to report that he had been placed in administrative segregation instead of being provided medical care.

*Id.* ¶¶ 81-82. "Instead, Defendant Hall reported unrelated material facts intended solely to disparage Bernard: 'decedent's history of past DUI's, drug possession and resisting or lying to police officers. They were also informed of his past probation violations and that he was on parole prior to being arrested." *Id.* ¶ 83. "Defendant Leslee Hall failed to interview or obtain reports from the deputies who were the last to see Bernard

Victorianne alive.  Defendant Hall violated protocols for proper death investigation."
*Id.* ¶ 84.

"According to deputies, it was 'common practice' to fail to properly conduct Hard Counts, which requires that each inmate's well being be verified."  *Id.* ¶ 86. "Deputies systematically failed to follow the written policies because there 'isn't enough time to get the job done.'" *Id.* ¶ 87.  "It was 'common practice' for deputies to look into cells and continue on if an inmate appeared to be sleeping."  *Id.* ¶ 88.

"At the time of Bernard Victorianne's death, there had been a long-standing custom and practice of improper and inadequate investigations; cover-up of misconduct; and failure to discipline and train deputies."  *Id.* ¶ 97.  "Deaths of 60 inmates in the San Diego County jails in a span of five years prompted a series of articles by Citybeat, a local newspaper.  Citybeat reported that San Diego County had the highest mortality rate among California's largest jail systems based on data from 2007 to 2012." *Id.* ¶ 90. "San Diego County officials, including Defendant Gore, were aware of the systemic problems with preventable deaths in the jails, but took no action to prevent further Constitutional violations."  *Id.* ¶ 91.

"On September 14, 2014, the entire CLERB Board affirmed seven separate counts of misconduct by the Jail Deputies related to the death of Bernard Victorianne." *Id.* ¶ 112.  The CLERB Board

> found that two deputies failed to properly conduct a 'Soft Count' in violation of policy; that two deputies failed to take appropriate action in recognizing, reporting or responding to an inmate's emergency medical needs; that a deputy failed to answer truthfully to a question on a Sheriff's Employee Response Form; that a deputy failed to conduct a thorough in-custody death investigation; and that a supervisor failed to supervise an in-custody death investigation according to policy.  CLERB found that the medical staff failed to monitor the medical status and well being of an inmate who had ingested a baggie of unkown illicit drug and that 'the symptoms and effects of the decedent's drug overdose or toxicity were clearly evident, but went largely untreated by medical staff; particularly given that it was known and documented in medical records that the decedent had ingested drugs prior to his arrival at SDCJ.'  The Review Board, however, lacked jurisdiction over medical staff.

*Id.* "According to CLERB, deputies lied about their actions to the investigators and the supervisors failed to properly investigate Bernard's death, choosing not to take

statements from critical witnesses." *Id.* ¶ 111.

"Zelda and Bernard Victorianne III did not find out the circumstances surrounding [Bernard Victorianne's] death until [CLERB] issued its preliminary allegations, recommended findings and rationale regarding Bernard's death." *Id.* ¶ 99.

> As a result of Defendant's failure to properly document and investigate the conduct of the deputies and their failure to provide information to the family, Zelda and Bernard Victorianne III were prevented from filing the Notice of Claim pursuant to Government Code section 945 *et seq.* within six months of Bernard's death.

*Id.* ¶ 100. "As a result of Defendants' fraudulent concealment of the facts, no reasonable attempts to discover the facts of the case by Plaintiffs would have resulted in any information becoming available to Plaintiffs until CLERB's findings." *Id.* ¶ 101. "Defendants actively hid the facts and circumstances around Bernard's death. Bernard Victorianne III attempted to discover information regarding his son's death by contacting the jail, but no one provided any information regarding the investigation or the circumstances around his death." *Id.* ¶ 102. "There was no avenue for Bernard's parents to obtain the investigation file which the County designated as privileged and confidential." *Id.* ¶ 103.

"Plaintiffs Zelda and Bernard Victorianne III discovered the circumstances of their son's death on September 5, 2014." *Id.* ¶ 104. "On September 11, 2014, Zelda and Bernard Victorianne III filed the Notice of Claim with the County of San Diego." *Id.* ¶ 105. "On September 25, 2014, the County of San Diego rejected the claim of Zelda and Bernard Victorianne III. The County issued a 'Notice of Returned Claim (No Action Taken; Claim Late)'." *Id.* ¶ 106. On October 24, 2014, the County of San Diego rejected the claim of the Estate of Bernard Victorianne. The County issued a 'Notice of Returned Claim (No Action Taken; Claim Late).'" *Id.* ¶ 107.

> Until September 5, 2014, when CLERB made public their initial findings of the misconduct of San Diego Sheriff deputies, the County officials had only told Plaintiffs Zelda and Bernard Victorianne III that their son died of drug overdose. They had no way of knowing or suspecting that 1) deputies and staff failed to conduct appropriate medical screening, diagnosis, testing, and treatment when they were aware that Bernard had ingested drugs; 2) Bernard had told deputies and jail staff that his insides were on fire; 3) Bernard had begged for help for five days and that he had

told deputies and jail staff that something was burning his insides; 4) deputies and medical staff failed to properly communicate regarding the health and welfare of Bernard; 5) deputies and staff punished Bernard by placing him in administrative segregation . . . 6) deputies failed to conduct adequate safety and welfare checks on Bernard, who was placed in [administrative segregation] instead of medical observation; 7) deputies and staff failed to transport Bernard to a hospital for medical treatment despite their knowledge of his pain and medical problems and the fact that he was scheduled to go to a hospital; 8) deputies and staff administered powerful drugs . . . instead of transporting Bernard to a hospital; 9) deputies failed to conduct proper cell checks . . . and 10) deputies and their supervisors failed to conduct a proper investigation of Bernard's death . . . .

*Id.* ¶ 110.

Plaintiffs in this case plead equitable estoppel against the government because: (1) Defendants were appraised of all the facts; (2) Defendants intended that their conduct be acted upon; (3) Plaintiffs were ignorant of true state of facts; (4) Plaintiffs relied on Defendants' conduct to their detriment by not filing the Notice of Claim within six months of Bernard's death; and (5) Plaintiffs would be damaged if they could not maintain the California state causes of action if Defendants are not estopped . . . .

*Id.* ¶ 15.

Plaintiffs allege the following causes of actions: (1) Deliberate Indifference to Serious Medical Needs pursuant to 42 U.S.C. § 1983 by Estate of Bernard Victorianne against Defendants Garcia, Gallegos, Almazan, Russell, Lien, Flores, Ayala, Richter, Huang, Nuhic, Gabel, Longno, Sivilay, Roque, Bell, Leicht, and Goldstein; (2) Wrongful Death pursuant to 42 U.S.C. § 1983 by Estate of Bernard Victorianne against Defendants Garcia, Gallegos, Russell, Lien, Flores, Rihter, Huang, Nuhic, Gabel, Longno, Sivilay, Roque, and Bell; (3) Right of Association pursuant to 42 U.S.C. § 1983 by Plaintiffs Zelda Victorianne and Bernard Victorianne II against Garcia, Gallegos, Russell, Lien, Flores, Almazan, Richter, Huang, Nuhic, Gabel, Longno, Sivilay, Roque, and Bell; (4) Failure to Properly Train pursuant to 42 U.S.C. § 1983 by Estate of Bernard Victorianne against Defendants County of San Diego, Gore, Leicht, and Goldstein; (5) Failure to Properly Supervise and Discipline pursuant to 42 U.S.C. § 1983 by Estate of Bernard Victorianne against the County of San Diego, Gore, Goldstein, and Leicht; (6) Failure to Properly Investigate pursuant to 42 U.S.C. § 1983 by all Plaintiffs against Defendants County of San Diego, Gore, Gardner, Hall,

Goldstein, and Leicht; (7) Monell Municipal Liability Civil Rights Action by all Plaintiffs against Defendant County of San Diego; (8) Wrongful Death, CCP 377.60 *et seq.* by all Plaintiffs against Garcia, Gallegos, Russell, Lien, Flores, Almazan, Ayala, Richter, Huang, Nuhic, Gabel, Longno, Roque, Sivilay, Bell, Leicht, Goldstein, and County of San Diego; (9) Negligence by all Plaintiffs against all Defendants); (10) California Civil Rights Violation, Section 52.1 by all Plaintiffs against Ayala, Huang, and Gabel.

Plaintiffs request general and special damages according to proof at the time of trial, attorneys' fees and costs of the suit and interest incurred herein, punitive damages, and any other relief this court deems just and proper. *Id.* at 51.

## III.  Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim

entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

## IV. Defendants Gore, Hall, and the County of San Diego's Motion to Dismiss (ECF No. 84)

Plaintiffs allege the following claims against Defendant Gore, Sheriff of the County of San Diego: (4) Failure to Properly Train; (5) Failure to Properly Supervise and Discipline; (6) Failure to Properly Investigate; and (9) Negligence. Plaintiffs allege the following claims against Defendant Leslee Hall, the detective heading the homicide investigation: (6) Failure to Properly Investigate, and (9) Negligence. Plaintiffs allege the following claims against Defendant County of San Diego: (4) Failure to Properly Train; (5) Failure to Properly Supervise and Discipline; (6) Failure to Properly Investigate; (7) Monell Municipal Liability Civil Rights Action; (8) Wrongful Death, CCP 377.60 *et seq.*; (9) Negligence.

### A. Failure to Properly Investigate - Defendant Hall

Defendants contend that Plaintiffs have failed to state a claim against Defendant Hall because the SAC does not allege that Defendant Hall violated any constitutional right, Defendant Hall owed no duty to Plaintiffs to conduct the investigation, and the investigation occurred after the death and therefore could not violate the decedent's civil rights. (ECF No. 84-1 at 12).

Plaintiffs contend that Bernard Victorianne's constitutional violation to be free from arbitrary loss of life was violated by "Hall's failure to properly investigate deputy misconduct" which "led to jail deputies and staff, including those involved in the death of Bernard Victorianne, engaging in constitutional violations with impunity." (ECF No. 105 at 13). Plaintiffs contend that as a result of Defendant Hall's conduct, Plaintiff Zelda Victorianne and Bernard Victorianne III "were denied an opportunity to file a tort claim with the County of San Diego." *Id.* Plaintiffs contend that Defendant Hall has a duty to investigate pursuant to Title 15 § 1064 of the Minimum Standards for Local Detention Facilities. *Id.* at 15.

1   Defendant Hall was the detective leading the homicide investigation of Bernard

2   Victorianne.  (ECF No. 82 ¶ 76).  The SAC alleges that Defendant Hall "refused to

3   properly investigate the death of Bernard Victorianne" and "covered up the misconduct

4   of other deputies and withheld information from Bernard's family and the Medical

5   Examiner."  *Id.* ¶ 248.  The SAC alleges that "as a direct result of [Defendant Hall's]

6   actions, Plaintiffs were prevented from timely filing a Government Tort Claim for their

7   state causes of action.  Plaintiffs were denied access to the Courts under the Due

8   Process Clause as a result of [Defendant's] acts."  *Id.* ¶ 250.  The SAC alleges that

9   "[t]he failure to investigate was the moving force behind the denial of medical care, and

10  cruel and unusual punishment on the decedent Bernard Victorianne and the resulting

11  pain and suffering and death.  *Id.* ¶ 251.

12      A valid claim under 42 U.S.C. § 1983 must allege a violation of a right secured

13  by the Constitution and laws of the United States.  *West v. Atkins*, 487 U.S. 42, 48

14  (1988).  Obstructing access to the courts is a constitutional violation.  *Bell v. City of*

15  *Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984) ("conspiracy to cover up a killing,

16  thereby obstructing legitimate efforts to vindicate the killing through judicial redress,

17  interferes with the due process right of access to courts. . . . This constitutional right is

18  lost where . . . police officials shield from the public and the victim's family key facts

19  which would form the basis of the family's claims for redress.").

20      The SAC sufficiently alleges that Defendant Hall shielded facts from the

21  Plaintiffs that would have put Plaintiffs on notice of their claims against the Defendants

22  resulting from Bernard Victorianne's death.  The SAC sufficiently alleges that

23  Defendant Hall's failure to adequately investigate the death of Bernard Victorianne

24  interfered with the rights of Plaintiff Zelda Victorianne and Bernard Victorianne III to

25  access the courts.  The motion to dismiss the claim against Defendant Hall for failure

26  to properly investigate brought by Plaintiff Zelda Victorianne and Bernard Victorianne

27  III is denied.

28      The SAC fails to allege facts sufficient to show that Defendant Hall engaged in

a pattern or practice of failing to investigate misconduct of deputies and medical staff. The SAC only alleges facts relating to Defendant Hall's investigation of Bernard Victorianne's death.  Therefore, the SAC does not allege facts to support a claim that Defendant Hall's failure to investigate past misconduct of staff led to violations of Bernard Victorianne's constitutional rights.  The motion to dismiss the claim by the Estate of Bernard Victorianne for failure to properly investigate against Defendant Hall is granted.

## B. Constitutional Claims Against Defendant Gore

Defendants contend that Defendant Gore should be dismissed because the SAC alleges claims against Defendant Gore only in his official capacity and such claims are duplicative of the claims against Defendant County of San Diego.  (ECF No. 84-1 at 9). Plaintiffs contend that the SAC alleges claims against Defendant Gore in his individual capacity under the theories of supervisory liability and deliberate indifference.  (ECF No. 105 at 6-12).

"A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).  "The requisite causal connection can be established . . . by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury."  *Id.* at 1207-1208.  "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others."  *Id.* at 1208.

The SAC alleges that Defendant Gore failed to properly train, failed to supervise and discipline, and maintained a practice of refusing to investigate specific instances

1    of citizen complaints against the personnel he supervised.  The SAC alleges that
2    Defendant Gore failed to properly train deputies on how to conduct proper cell checks,
3    and how to prevent inmate deaths.  (ECF No. 105 ¶¶ 166-167, 172).  The SAC alleges
4    that Defendant Gore was aware of repeated Constitutional violations and failed to
5    discipline deputies and medical staff or take corrective measures.  *Id.* ¶¶ 178-185.  The
6    SAC alleges that Gore maintained a practice of not obtaining timely reports from
7    deputies involved in misconduct and allowing deputies to collaborate with each other
8    and their supervisory when writing incident reports.  *Id.* ¶¶ 224-226.  The SAC states
9    facts sufficient to infer that Defendant Gore's practices set in motion acts which caused
10   others to inflict constitutional injury.  The Court concludes that Plaintiffs have made
11   sufficient factual allegations against Defendant Gore in his individual capacity to state
12   a claim under 42 U.S.C. § 1983 for failure to properly train and failure to properly
13   supervise and discipline.

14        The facts alleging a pattern and practice of failing to investigate constitutional
15   violations of staff are sufficient to support the claim by the Estate of Bernard
16   Victorianne under 41 U.S.C. § 1983 against Defendant Gore for failure to investigate
17   based on a violation of Bernard Victorianne's due process rights.  The SAC sufficiently
18   alleges that Defendant Gore's failure to adequately investigate the death of Bernard
19   Victorianne interfered with the rights of Plaintiff Zelda Victorianne and Bernard
20   Victorianne III to access the courts.  *See Bell*, 746 F.2d at 1261.  The motion to dismiss
21   Plaintiffs' claims against Defendant Gore for violations of 42 U.S.C. § 1983 for failure
22   to properly train, failure to properly supervise and discipline, and failure to investigate
23   is denied.

24                          **C. California Tort Claims**

25        Defendants Gore, Hall, and County of San Diego contend that the state causes
26   of action should be dismissed based on Plaintiffs' failure to comply with the procedural
27   requirements of the California Tort Claims Act ("CTCA").  (ECF No. 84-1 at 13).
28   Defendants contend that "plaintiffs do not allege that they were not aware of their

1  decedent's death within the six-month claims period" and they do not "allege any facts
2  to show they did not have a reasonable person inquiry notice or the ability to conduct
3  a reasonable inquiry." *Id.* at 17.   Defendants contend that therefore, the delayed
4  discovery doctrine does not apply to postpone accrual of their cause of action. *Id.* at 17.
5  Defendants contend that estoppel "does not apply to forgive [Plaintiffs] from their non-
6  compliance with the claim filing requirements, because there is no allegation that
7  affirmative action was taken to deter plaintiffs from filing a claim." *Id.*

8      Plaintiffs contend that Plaintiffs had no way of identifying Defendants'
9  wrongdoing until CLERB publicly disclosed the results of its investigation on Bernard
10 Victorianne's death on September 5, 2014. (ECF No. 105 at 17).   Plaintiffs contend
11 that upon their discovery, they immediately filed a tort claim. *Id.* at 18.   Plaintiffs also
12 contend that estoppel bars the assertion by the County of San Diego that Plaintiffs failed
13 to comply with CTCA procedures because County officials "engaged in conduct that
14 kept the true facts of Bernard's death hidden from both his family and the general
15 public."

16         **1. Delayed Discovery Doctrine**

17     A party seeking damages from the government due to death or injury must file
18 a claim with the appropriate public entity within six months of the claim's accrual
19 before bringing a complaint for money damages against the government entity or its
20 employees.   Cal. Gov't Code § 911.2.  Compliance with the procedural requirements
21 of the CTCA is a prerequisite to bringing suit against a public agency. Cal. Gov't Code
22 § 945.4.  A claimant whose timely filed claim is rejected may file suit for damages.
23 Cal. Gov't Code § 945.4.  A claimant whose claim is rejected because it is untimely
24 may file an application to the public entity for leave to present the late claim.  Cal.
25 Gov't Code § 911.4.  If the public entity denies the application, a claimant may file a
26 petition with a competent court for relief from the requirements of the CTCA.  Cal.
27 Gov't Code § 946.6.

28     Courts have recognized "an important distinction between petitions for leave to

file a late claim pursuant to Cal. Gov't Code § 946.6 and disputes as to whether a claim is in fact timely. . . ." *See Ovando v. City of Los Angeles*, 92 F. Supp. 2d 1011, 1022 (C.D. Cal. 2000).

> If the complaint concedes the date of accrual of the cause of action and concedes that the claim was not presented to the appropriate agency within six months of the accrual, then recourse must be sought under Section 946.6 . . . . However, where there is a dispute regarding the public entity's finding of untimeliness, the claimant's recourse is to file a complaint on the merits. The issue of timeliness can then be raised in the form of a demurrer, motion for summary judgment, motion for judgment on the pleadings or motion to strike. A dispute over when a claim accrued is a question of whether the claimant has complied with the CTCA and is within a federal court's jurisdiction.

*See id.* (citations omitted).

The accrual date is generally set as the date "when under the substantive law, the wrongful act is done or the wrongful result occurs, and the consequent liability arises." *K.J. v. Arcadia Unified School Dist.*, 92 Cal.Rptr.3d 1, 8 (Cal. App. 2009). The delayed discovery doctrine creates an exception to the general rule "and protects a plaintiff by postponing accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Id.* at 10. Plaintiff is deemed to have discovered the cause of action "when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof . . . ." *Id.* "Once the elements of delayed discovery are pleaded, the question of whether plaintiffs have exercised due diligence in discovering [the cause of action] is one of fact." *Ovando*, 92 F. Supp. 2d at 1023.

In this case, Plaintiffs have sufficiently alleged facts in the SAC to support a finding that they did not discover, and they did not have the opportunity to discover, the Defendants' alleged wrongdoing until September 5, 2014 when CLERB released the results of its investigation. (*See* ECF No. 82 ¶¶ 98-104, 110). The factual allegations of the SAC are sufficient to support the conclusion that government employees concealed their wrongdoing. *See id.* Whether the delayed discovery doctrine applies in this case is a question of fact that cannot be determined at this stage of the proceedings.

1

### 2. Estoppel

2  "A public entity may be estopped from asserting non-compliance with the CTCA

3  when affirmative acts of its agents, especially authority figures, deterred the filing of

4  a timely claim." *Ovando*, 92 F. Supp. 2d at 1023; *see also K.J.*, 92 Cal.Rptr.3d at 9

5  ("[A] public entity may be estopped from asserting the limitations of the claims statute

6  where its agents or employees have prevented or deterred the filing of a timely claim

7  by some affirmative act."). Plaintiffs successfully plead estoppel "where (1) the party

8  to be estopped is appraised of the facts; (2) it intends that its conduct be acted upon; (3)

9  the estopping party was ignorant of the true state of facts; (4) the estopping party relies

10  on the other party's conduct to her detriment; and (5) the plaintiff demonstrates that the

11  injury to her personal interests if the government is not estopped exceeds the injury to

12  the public interest if the government is estopped." *See Ovando*, 92 F. Supp. 2d at 1024

13  (citing *Stewart v. City of Pismo Beach*, 42 Cal.Rptr.2d 382, 385 (Cal. App. 1995).

14  Whether equitable estoppel prevents the County of San Diego and its employees from

15  asserting a defense that Plaintiffs failed to comply with the claims statutes "is a question

16  of fact for the trial court." *See John R. v. Oakland Unified School Dist.*, 769 P.2d 948,

17  952 (Cal. 1989).

18  In this case, the SAC alleges that "Defendants actively hid the facts and

19  circumstances around Bernard's death. Bernard Victorianne III attempted to discover

20  information regarding his son's death by contacting the jail, but no one provided any

21  information regarding the investigation or the circumstances around his death." (ECF

22  No. 82 ¶ 102). The SAC alleges that "[u]ntil September 5, 2014, when CLERB made

23  public their initial findings of the misconduct of San Diego Sheriff deputies, the County

24  officials only told Plaintiffs Zelda and Bernard Victorianne III that their son died of a

25  drug overdose." *Id.* ¶ 110. The SAC alleges that "[t]here was no avenue for Bernard's

26  parents to obtain the investigation file which the County designated as privileged and

27  confidential." *Id.* ¶ 103. The SAC alleges that "[a]s a result of Defendants' failure to

28  properly document and investigate the conduct of the deputies and their failure to

provide information to the family, Zelda and Bernard Victorianne III were prevented from filing the Notice of Claim . . . within six months of Bernard's death." *Id.* ¶ 100. The SAC alleges that "Plaintiffs would be damaged if they could not maintain the California state causes of action . . . ." *Id.* ¶ 115.

Plaintiffs have alleged sufficient facts to infer that Defendants intended Plaintiffs to rely on their statement that Bernard Victorianne died of a drug overdose, that Defendants knew the truth, and that Plaintiffs relied to their detriment on Defendants' statements and lack of other information available to them regarding the circumstances of Bernard Victorianne's death. Plaintiffs have alleged sufficient facts to infer that Plaintiffs' detrimental reliance resulted in Plaintiffs' delay in bringing suit against Defendants. *See Oakland Unified School Dist.*, 769 P.2d at 952. Plaintiffs have alleged facts sufficient to support a finding of equitable estoppel.

**D. Negligent Hiring, Training, and Supervision**

Defendants Gore, Hall, and the County of San Diego contend that Plaintiffs' claim for negligent hiring, training, and supervision should be dismissed because it does not state a cognizable statutory theory of recovery. (ECF No. 84-1 at 18). Plaintiffs assert,

> To the extent that Defendant County seeks to dismiss and/or strike allegations of the complaint for negligent training and supervision, Plaintiffs agree that *DeVillers v. County of San Diego* controls. Defendant County has correctly noted that "there is no statutory basis for public entity liability for negligent hiring, training and supervision" and "no such cause of action can be stated in the complaint." Thus, to the extent Plaintiff's ninth cause of action contains allegations of negligent hiring, training, and supervision (SAC ¶¶ 295-297), Plaintiffs agree that such allegations should be stricken from the second amended complaint.

(ECF No. 105 at 20). The motion to dismiss is granted as to Plaintiffs' negligence claims against Defendants Gore, Hall, and the County of San Diego for negligent hiring, training, and supervision.

**E. Negligent Investigation**

Defendants Hall contends that a claim for negligent investigation is not actionable. (ECF No. 108 at 6-7). Plaintiffs contend that their claim against Defendant

Hall is not based on negligence.  (ECF No. 105 at 15).

"A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov. Code § 821.6.  "Except as otherwise provided by statute, a public entity is not liable for any injury resulting from an act or omission of any employee of the public entity where the employee is immune from liability." Cal. Gov. Code § 825.2(b).  Pursuant to Cal. Gov. Code § 815.2 and 821.6, a public entity is immune from liability for the actions or omissions of investigating officers if (1) the officers were employees of the public entity; (2) Plaintiff's injuries were caused by acts committed by the officers to institute or prosecute a judicial or administrative proceeding; and (3) the conduct of the officers while instituting or prosecuting the proceeding was within the scope of their employment. *See Amylou R. v. County of Riverside*, 34 Cal.Rptr.2d 319, 321 (Cal. App. 1994).  "Because investigation is an essential step toward the institution of formal proceedings, it is also cloaked with immunity." *Id.* (citations and internal quotation marks omitted).

To the extent that Plaintiffs attempt to state a claim for negligence based on Defendants' investigation, or purported lack thereof, the claim fails as a matter of law because Defendants are immune from liability for investigations under Cal. Gov. Code § 821.6.  *See Struk v. Bush*, 10CV348., 2011 WL 5827196, at \*10 (S.D. Cal. Nov. 18, 2011) ("Defendant is immune from liability under California Government Code section 821.6 for his investigatory conduct.  Section 826.1 immunizes officers for actions taken within the scope and course of their employment . . . including investigatory actions . . .").  The motion to dismiss is granted as to Plaintiff's claims against Defendants Gore, Hall, and the County of San Diego for negligent investigation.

### F.  Government Immunity for Wrongful Death

Defendant County of San Diego contends that the County has absolute immunity from a suit for wrongful death because Bernard Victorianne was a prisoner in central

jail. (ECF No. 84-1 at 19).  Plaintiffs contend that an exception to immunity applies because the employees knew or had reason to know that Bernard Victorianne was in need of immediate medical care and failed to take reasonable action to provide him such care. (ECF No. 105 at 20).

> Section 844.6 of Cal. Gov. Code states that

> > (a) Notwithstanding any other provision of this part, except as provided in this section and in Section[] . . . 845.6, . . . a public entity is not liable for: . . . (2) An injury to any prisoner . . . (d) Nothing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission . . . . the public entity shall pay . . . any judgment based on a claim against a public employee who is lawfully engaged in the practice of one of the healing arts under any law of this state for malpractice arising from an act or omission in the scope of his employment . . . .

Cal. Gov. Code § 844.6.

> Section 845.6 of Cal. Gov. Code states that

> > Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but . . . a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care . . . .

Cal. Gov. Code § 845.6.

The SAC alleges that deputies failed to verify Bernard Victorianne's well-being by not complying with 'Soft Count' and 'Hard Count' procedures.   (ECF No. 82 ¶¶ 45-57).  The SAC alleges that "[o]n September 19, 2012 at 4:00 a.m., Defendant deputies Garcia and Gallegos found Bernard lying on the ground and observed that he was not moving."  *Id.* ¶ 58.  The SAC alleges that "[a]fter noting that Bernard had 'twitched,' the Defendant deputies left Bernard's cell without receiving verbal or physical acknowledgement from Bernard." *Id.* ¶ 60.  The SAC alleges that "Defendants never alerted medical staff despite indications that Bernard was in medical distress." *Id.*  The SAC alleges sufficient facts to infer that County employees failed to take reasonable action to summon necessary medical care for Bernard Victorianne when they knew or should have known that he was in medical distress.  Therefore, Defendant

County of San Diego may be liable pursuant to Cal. Gov. Code § 845.6.

**G.  Claim Against County of San Diego Under California Civil Code § 52.1**

Defendants contend that the CTCA does not give Plaintiffs authority to bring a claim for damages under California Civil Code § 52.1 because Section 52 does not apply to government entities.  (ECF No. 84-1 at 20).  Defendants contend that Plaintiffs do not state a claim under Cal. Civ. Code § 52.1 because Plaintiffs do not allege that Defendants prevented Plaintiffs or decedent from engaging in constitutionally protected activity "by threat, intimidation or coercion ."  *Id.* at 21.

Plaintiffs contend that the County of San Diego is vicariously liable for injury caused by its agents and employees' violations of Civil Code § 52.1.  (ECF No. 105 at 23).  Plaintiffs contend that they have properly alleged a Section 52.1 claim by alleging that Defendants violated Bernard Victorianne's "right under Civil Code § 43 to be free from 'bodily restraint or harm, from personal insult, from defamation, and from injury to his personal relations.'" *Id.* at 23.

"Section 52.1 authorizes a claim for relief 'against anyone who interferes, or tries to do so, by threats, intimidation, or coercion, with an individual's exercise or enjoyment of rights secured by federal or state law.'"  *See Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1168 (N.D. Cal. 2009) (quoting *Jones v. Kmart Corp.*, 949 P.2d 941 (Cal. App. 1998).  "To obtain relief under this statute, a plaintiff must prove that a defendant tried to, or did, prevent the plaintiff from doing something that he had a right to do under the law, or to force plaintiff to do something that he was not required to do under the law."  *Id.* (citing *Austin B. v. Escondido Union School Dist.*, 57 Cal.Rptr.3d 454).  A public entity can be vicariously liable under the theory of respondeat superior for a violation of section 52.1 by government officers or employees acting in the course and scope of their employment.  Cal. Gov. Code § 815.2; *see also Knapps*, 647 F. Supp. 2d at 1168-69 ("The Court also finds that the City of Oakland is vicariously liable [for violation of Plaintiff's rights under section 52.1] under the theory of respondeat superior because the officers were acting in the course and scope of

1    employment at the time of their tortious conduct.").

2           The SAC does not allege that Defendant County of San Diego violated California

3    Civil Code section 52.1.  *See* ECF No. 82 at 49.  To the extent that the claims alleged

4    in the SAC against Defendants Ayala, Huang, and Gabel pursuant to section 52.1 result

5    in a finding that government officers or employees violated section 52.1 in the course

6    and scope of their employment, the County of San Diego may be vicariously liable

7    under the theory of respondeat superior.  *See* Cal. Gov. Code § 815.2; *Knapps*, 647 F.

8    Supp. 2d at 1168-69.

9           **H.  Punitive Damages Against County of San Diego**

10          Defendant County of San Diego contends that public entities are immune from

11   exemplary or punitive damages under Government Code section 818.  (ECF No. 84-1

12   at 22).  Plaintiffs do not oppose this contention.

13          Section 3294 of Cal. Civ. Code defines the circumstances under which exemplary

14   damages may be recovered.  Cal. Civ. Code § 3294.  Section 818 of Cal. Gov. Code

15   states, "Notwithstanding any other provision of law, a public entity is not liable for

16   damages awarded under Section 3294 of the Civil Code or other damages imposed

17   primarily for punishing the defendant."  Cal. Gov. Code § 818.

18          The Court concludes that pursuant to section 818 of Cal. Gov. Code, Defendant

19   County of San Diego is not liable for punitive or exemplary damages.

20          **I.  Motion to Strike References to the Estate of Bernard Victorianne**

21          Defendants move to strike references to the "Estate of Bernard Victorianne" from

22   the SAC because they are improper.  Defendants contend that in seeking to be

23   recognized as the decedent's successor in interest, Zelda Victorianne informed the court

24   that no probate proceeding was instituted by reason of decedent's death.  Defendants

25   contend that as a result, there is no existing estate.

26          Plaintiffs contend that the word "estate" is not specifically defined in probate

27   code and therefore courts should use the ordinary meaning of the term.  Plaintiffs

28   contend that "[t]o hold that the term 'estate' can only be used after administration by

probate would render meaningless all provisions regarding intestate succession." (ECF No. 105 at 24). Plaintiffs contend that the Estate of Bernard Victorianne is properly named as a plaintiff.

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The Court concludes that references to "the Estate of Bernard Victorianne" in the SAC do not meet the standard set forth in Rule 12(f). The motion to strike references to "the Estate of Bernard Victorianne" in the SAC is denied.

## J. Conclusion

The motion to dismiss the claim by the Estate of Bernard Victorianne against Defendant Hall for failure to properly investigate is granted. The motion to dismiss the claim by Zelda Victorianne and Bernard Victorianne III against Defendant Hall for failure to properly investigate is denied. The motion to dismiss the claims by Plaintiffs against Defendant Gore for failure to properly train, failure to properly supervise and discipline, and failure to investigate is denied. The motion to dismiss claims by Plaintiffs against Defendant Gore, Hall, and the County of San Diego for negligent hiring, training, and supervision and negligent investigation is granted. The motion to dismiss the claim by Plaintiff against Defendant County of San Diego for wrongful death is denied. The motion to dismiss Plaintiff's claim for punitive damages against Defendant County of San Diego is granted. The motion to strike references to the "Estate of Bernard Victorianne" is denied.

## V. Defendant Gardner's Motion to Dismiss (ECF No. 107)

Plaintiffs allege the following claims against Defendant Gardner, the investigator in charge of investigating Bernard Victorianne's death: (6) Failure to Properly Investigate and (9) Negligence.

### A. Failure to Investigate

Defendant Gardner contends that the SAC fails to identify a constitutional right that he violated. (ECF No. 107-1 at 3). Defendant Gardner contends that "the SAC

does not allege that plaintiffs had a constitutional right that prohibited the Sheriff's Department from investigating Victorianne's death by using the resources of . . . the Homicide division and the Internal Affairs division." *Id.* Plaintiffs contend that Defendant Gardner "substantially infringed upon Bernard's parents' right to seek timely and effective redress for their grievances through the court process." (ECF No. 121 at 8).

The SAC alleges that "Defendant Gardner prevented Homicide from conducting a full and thorough investigation by assigning [Internal Affairs] to interview Defendants Garcia and Gallegos. Gardner knew he was violating the written policies by preventing Homicide from interviewing the last deputies to see Bernard Victorianne alive." (ECF No. 82 247). The SAC alleges that Defendant Gardner "refused to properly investigate the death of Bernard Victorianne" and "covered up the misconduct of other deputies and withheld information from Bernard's family and the Medical Examiner." *Id.* ¶ 248. The SAC alleges that "as a result of [Defendant Gardner's] actions, Plaintiffs were prevented from timely filing a Government Tort Claims for their state causes of action." *Id.* ¶ 250. The SAC alleges that "Defendants were deliberately indifferent to the needs of Plaintiff Bernard Victorianne" and "[t]he failure to investigate was the moving force behind the denial of medical care, and cruel and unusual punishment on the decedent Bernard Victorianne and the resulting pain and suffering and death. *Id.* ¶ 251.

The SAC contains conclusory allegations that Defendants engaged in a pattern and practice of failing to properly investigate misconduct of deputies and medical staff which "created a culture of unconstitutional acts." *Id.* ¶ 242. The SAC fails to allege facts sufficient to show that Defendant Gardner  was engaged in a pattern or practice of failing to investigate misconduct of deputies and medical staff.  The SAC only alleges facts relating to Defendant Gardner's investigation of Bernard Victorianne's death.  The Court concludes that the SAC does not sufficiently allege that Defendant Gardner's failure to investigate past misconduct of staff led to violations of Bernard Victorianne's constitutional rights.  The motion to dismiss the claim brought by the

1   Estate of Bernard Victorianne against Defendant Gardner for failure to properly
2   investigate is granted.

3       The SAC sufficiently alleges facts to support an inference that Defendant
4   Gardner shielded facts from Plaintiffs Zelda Victorianne and Bernard Victorianne III
5   that would have put Plaintiffs on notice of their claims against the Defendants resulting
6   from the death of their son.  The SAC sufficiently alleges facts to support a finding that
7   Defendant Gardner's failure to adequately investigate the death of Bernard Victorianne
8   interfered with the rights of Plaintiff Zelda Victorianne and Bernard Victorianne III to
9   access the courts.  *See Bell*, 746 F.2d at 1261 ("conspiracy to cover up a killing, thereby
10  obstructing legitimate efforts to vindicate the killing through judicial redress, interferes
11  with the due process right of access to courts. . . . This constitutional right is lost where
12  . . . police officials shield from the public and the victim's family key facts which would
13  form the basis of the family's claims for redress.").  The motion to dismiss the claim
14  brought by Plaintiff Zelda Victorianne and Bernard Victorianne III against Defendant
15  Gardner for failure to properly investigate is denied.

16      **B.  Negligence**

17      A state claim for negligent investigation is not cognizable against Defendant
18  Gardner.  *See* Cal. Gov. Code § 821.6; *see also Amylou R.*, 34 Cal.Rptr.2d at 321
19  ("Because investigation is an essential step toward the institution of formal proceedings,
20  it is also cloaked with immunity.").  The motion to dismiss the claim for negligence
21  against Defendant Gardner is granted.

22      **C.  Motion to Strike References to the Estate of Bernard Victorianne**

23      The Court has determined that references to the "Estate of Bernard Victorianne"
24  in the SAC do not meet the standard for striking material from a pleading under Federal
25  Rule of Civil Procedure 12(f).  The motion to strike references to the "Estate of Bernard
26  Victorianne" is denied.

27      **D.  Conclusion**

28      The motion to dismiss the claim brought by the Estate of Bernard Victorianne

- 28 -

against Defendant Gardner for failure to properly investigate is granted.  The motion to dismiss the claim brought by Plaintiff Zelda Victorianne and Bernard Victorianne III against Defendant Gardner for failure to properly investigate is denied.  The motion to dismiss the claim for negligence against Defendant Gardner is granted.  The motion to strike references to the "Estate of Bernard Victorianne" is denied.

## VI.   Defendant Goldstein's Motion to Dismiss (ECF No. 102) and Defendant Leicht's Motion to Dismiss (ECF No. 117)

Plaintiffs allege the following claims against Defendant Goldstein, the Medical Director for the Sheriff's Department, and Defendant Leicht, Medical Services Administrator for the Sheriff's Department: (4) Failure to Properly Train; (5) Failure to Properly Supervise and Discipline ; (6) Failure to Properly Investigate; (8) Wrongful Death, CCP 377.60 *et seq.*; and (9) Negligence.

### A. Constitutional Claims

Defendants Goldstein and Leicht contend that Plaintiffs' claims against them should be dismissed because the SAC alleges claims against Defendants Goldstein and Leicht only in their official capacity, and such claims are duplicative of claims against the County of San Diego.  (ECF No. 102-1 at 6-7; ECF No. 117-1 at 7).  Plaintiffs contend that the SAC alleges claims against Defendant Goldstein and Leicht in their individual capacity under theories of supervisory liability for conduct that demonstrates "reckless or callous indifference to the rights of others."  (ECF No. 110 at 8; ECF No. 131 at 8).  Plaintiffs contend that Defendants Goldstein and Leicht tolerated their subordinates' deliberate indifference to providing medical care to inmates and acquiesced in constitutional violations by refusing to implement improved policies and procedures.  (ECF No. 110 at 10; ECF No. 131 at 10).

A pretrial detainees' claim for inadequate medical treatment pursuant to 42 U.S.C. § 1983 "arises from the due process clause of the fourteenth amendment and not from the eighth amendment . . . ."  *Jones v. Johnson*, 782 F.2d 769, 771 (9th Cir. 1986), (*rev'd on other grounds, Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014)).  Although

1   a pretrial detainee's claim "arises under the due process clause, the eighth amendment
2   guarantees provide a minimum standard of care for determining [the pretrial detainee's]
3   rights, including his right to medical care." *Id.*  To maintain a cause of action based on
4   prison medical treatment pursuant to 42 U.S.C. § 1983, an inmate must show
5   "deliberate indifference to serious medical needs." *See Jett v. Penner*, 439 F.3d 1091,
6   1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  "Prison
7   officials are deliberately indifferent to a prisoner's serious medical needs when they
8   'deny, delay, or intentionally interfere with medical treatment.'" *Lopez v. Smith*, 203
9   F.3d 1122, 1131 (9th Cir. 2000) (citing *Estelle*, 429 U.S. at 104).  Serious medical
10  needs may include "the existence of an injury that a reasonable doctor or patient would
11  find important and worthy of comment or treatment; the presence of a medical condition
12  that significantly affects an individual's daily activities; or the existence of chronic and
13  substantial pain." *Id.*  "A prison official is deliberately indifferent to a substantial risk
14  of serious harm to inmates if that official is subjectively aware of the risk and does
15  nothing to prevent the resulting harm*." Jeffers v. Gomez*, 267 F.3d 895, 913 (9th Cir.
16  2001) (citing *Farmer v. Brennan*, 511 U.S. 825, 828-29 (1994).  "Deliberate
17  indifference requires that an official both be aware of facts from which the inference
18  could be drawn that a substantial risk of serious harm exists, and he must also draw the
19  inference." *Id.*  Whether the official drew the inference or was subjectively aware of
20  the risk is a question of fact.  *See Farmer*, 511 U.S. at 842.

21      The SAC alleges that "Defendants Leicht and Goldstein were deliberately
22  indifferent to Bernard Victorianne's serious medical needs by failing to properly set
23  forth policies and procedures for proper care of inmates in medical distress."  (ECF No.
24  82 ¶ 142).  The SAC alleges that Defendants "Leicht and Goldstein knew that a
25  significant number of inmates booked in Central Jail suffered from drug intoxication,
26  or overdose." *Id.* ¶ 143.  The SAC alleges that

27      Defendants Leicht and Goldstein knew that the policies they had
        implemented with respect to medical care of inmates suffering from drug
28      overdose were grossly inadequate.  Defendants Leicht and Goldstein were
        aware of the disproportionately high number of deaths in San Diego

1

2

County Jails. Defendants Leicht and Goldstein acted with deliberate indifference in failing to implement policies with respect to evaluation and treatment of inmates suffering from drug overdose.

3

4

5

6

*Id.* ¶ 144.  The SAC alleges that "[p]ursuant to the policies and procedures set by Defendants Leicht and Goldstein, Bernard Victorianne was not seen by a medical doctor for days despite warnings by Alvarado Hospital and knowledge by the medical staff that he had ingested a baggie of meth . . . ."  *Id.* ¶ 146.  The SAC alleges that

7

8

9

[b]y failing to set forth procedures on proper care of inmates, including mandates that inmates who have ingested drugs be observed in Medical; that they be placed in a Sobering Cell; that they be monitored regularly by a medical doctor; that the inmate be transported to a hospital when exhibiting obvious signs of overdose, Leicht and Goldstein were deliberately indifferent to Bernard Victorianne's serious medical need.

10

*Id.* ¶ 147.

11

12

13

14

15

16

17

18

19

20

21

22

The SAC alleges that officials of the San Diego Sheriff's Department have subjected inmates to a "widespread and persistent pattern of unconstitutional misconduct."  *Id.* ¶ 165.  The SAC alleges that Defendants Goldstein and Leicht failed to properly train medical staff to care for inmates suffering from drug overdose.  *Id.* ¶ 169.  The SAC alleges that Defendants Goldstein and Leicht failed to provide adequate supervision and discipline to medical staff.  *Id.* ¶ 178.  The SAC alleges that Defendants Goldstein and Leicht engaged in a pattern and practice of failing to investigate staff misconduct, creating "a culture of unconstitutional acts and acts that violate the Jail's own policies and procedures."  *Id.* ¶¶ 240, 242.  The SAC alleges that "[a]s a direct and proximate result of all Defendants' conduct, Bernard Victorianne experienced physical pain, severe emotional distress, and mental anguish for days, as well as loss of his life . . . ."  *Id.* ¶ 148.

23

24

25

26

27

28

The SAC alleges sufficient facts to infer that the practices of Defendant Goldstein and Leicht set in motion acts which caused others to inflict constitutional injury.  *See Starr*, 652 F.3d at 1207-1208 ("The requisite causal connection [between a supervisor's wrongful conduct and the constitutional violation] can be established . . . by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause

others to inflict a constitutional injury."). Plaintiffs have made sufficient factual allegations against Defendants Goldstein and Leicht in their individual capacities to support a finding for failure to properly train, and failure to properly supervise and discipline under 42 U.S.C. § 1983.

The SAC alleges sufficient facts to support an inference that Defendants Goldstein and Leicht were subjectively aware that their policies and procedures, or lack thereof, created a substantial risk of harm to inmates suffering from drug overdose and did nothing to alleviate the resulting harm. *See Farmer*, 511 U.S. at 837-38, 844. Plaintiffs have made sufficient allegations against Defendants Goldstein and Leicht in their individual capacities to support a finding for deliberate indifference to serious medical needs under 42 U.S.C. § 1983.

The facts alleging a pattern and practice of failing to investigate constitutional violations of medical staff are sufficient to support Plaintiff Estate of Bernard Victorianne's claim against Defendants Goldstein and Leicht under 41 U.S.C. § 1983 for failure to investigate based on a violation of Bernard Victorianne's due process rights. The facts do not allege that Defendants Goldstein or Leicht obstructed Plaintiffs Zelda Victorianne and Bernard Victorianne III's right to access courts or any other constitutional right. The facts alleged do not support Plaintiff Zelda Victorianne and Bernard Victorianne III's claim against Defendants Goldstein and Leicht under 41 U.S.C. § 1983 for failure to investigate.

The motions to dismiss the claims against Defendants Goldstein and Leicht for failure to properly train, failure to properly supervise and discipline, and deliberate indifference to serious medical needs are denied. The motions to dismiss claims brought by Zelda Victorianne and Bernard Victorianne III for failure to investigate against Defendants Goldstein and Leicht are granted. The motions to dismiss claims brought by the Estate of Bernard Victorianne III for failure to investigate against Defendants Goldstein and Leicht are denied.

**B.  Tort Claims for Negligence and Wrongful Death (CCP 377.60)**

1    The Court has determined that the SAC has alleged sufficient facts to support a

2    finding that either (1) Plaintiffs' claim was timely filed under the CTCA, or (2)

3    equitable estoppel prevents Defendants from raising Plaintiffs' failure to timely file a

4    claim because the delay was caused by Defendants' own misconduct.

5        A claim for negligence requires duty, breach, causation, and damages.  *Hayes v.*

6    *County of San Diego*, 305 P.3d 252, 255 (Cal. 2013).  A statutory claim for wrongful

7    death under California Code of Civil Procedure § 377.60 requires a wrongful act,

8    causation, and the death of another.  *Norgart*, 981 P.2d at 83.

9        The SAC alleges that "Defendants Leicht and Goldstein . . . failed to set forth

10   policies regarding medical treatment of inmates suffering from drug overdose or

11   toxicity." (ECF No. 82 ¶ 290).  The SAC alleges that "Defendants Leicht and Goldstein

12   . . . failed to set forth policies regarding proper screening, evaluation, treatment, and

13   transportation of inmates suffering from a serious medical condition."  *Id.* ¶ 291.  The

14   SAC alleges that "Defendants Leicht and Goldstein . . . failed to supervise their medical

15   staff."  *Id.* ¶ 292.  The SAC alleges that "[b]y engaging in the acts alleged herein,

16   Defendants failed to act with ordinary care and breached their duty of care owed to

17   Bernard Victorianne."  *Id.* ¶ 293.  The Court concludes that the SAC alleges sufficient

18   facts to support a finding of negligence and wrongful death.  The motions to dismiss

19   Plaintiffs' claims against Defendants Goldstein and Leicht for negligence and wrongful

20   death are denied.

21          **C.  Motions to Strike References to the Estate of Bernard Victorianne**

22       The Court has determined that references to the "Estate of Bernard Victorianne"

23   in the SAC do not meet the standard for striking material from a pleading under Federal

24   Rule of Civil Procedure 12(f).  The motion to strike references to the "Estate of Bernard

25   Victorianne" is denied.

26          **D.  Conclusion**

27       The motions to dismiss claims by Plaintiffs against Defendants Goldstein and

28   Leicht for failure to properly train, failure to properly supervise and discipline, and

1  deliberate indifference to serious medical needs are denied.  The motions to dismiss

2  claims brought by Zelda Victorianne and Bernard Victorianne III for failure to

3  investigate against Defendants Goldstein and Leicht are granted.  The motions to

4  dismiss claims brought by the Estate of Bernard Victorianne III for failure to investigate

5  against Defendants Goldstein and Leicht are denied.  The motions to dismiss Plaintiffs'

6  claims against Defendant Goldstein and Leicht for negligence and wrongful death are

7  denied.  The motions to strike references to the "Estate of Bernard Victorianne" are

8  denied.

9  **VII.  Defendants Almazan, Ayala, Flores, Gallegos, Garcia, Lien, and Russell's**

10  **Motion to Dismiss (ECF No. 116)**

11  Plaintiffs allege the following claims against Defendant Deputies Flores,

12  Gallegos, Garcia, Lien, and Russell: (1) Deliberate Indifference to Serious Medical

13  Needs under 42 U.S.C. § 1983; (2) Wrongful Death under 42 U.S.C. § 1983; (3) Right

14  of Association under 42 U.S.C. § 1983; (8) Wrongful Death, CCP 377.60 *et seq.*; and

15  (9) Negligence.  Plaintiffs allege the following claims against Defendant Almazan: (1)

16  Deliberate Indifference to Serious Medical Needs under 42 U.S.C. § 1983; (3) Right of

17  Association under 42 U.S.C. § 1983; (8) Wrongful Death, CCP 377.60 *et seq.*; and (9)

18  Negligence.   Plaintiffs allege the following claims against Defendant Ayala: (1)

19  Deliberate Indifference to Serious Medical Needs under 42 U.S.C. § 1983; (8)

20  Wrongful Death, CCP 377.60 *et seq.*; (9) Negligence; and (10) violation of California

21  Civil Code § 52.1.

22  **A.  Deliberate Indifference to Serious Medical Needs**

23  Defendants contend that the claim for deliberate indifference to serious medical

24  needs against Defendant deputies should be dismissed because the SAC does not allege

25  facts showing that each deputy knew Victorianne was experiencing methamphetamine

26  overdose and ignored his condition.  (ECF No. 116-1 at 4).

27  Plaintiffs contend that "[w]hether Defendants drew the inference that a

28  substantial risk of harm existed . . . is a jury question. . . . It is sufficient that Plaintiffs

1   have alleged circumstantial evidence from which the inference could be drawn that a

2   substantial risk of serious harm existed and Defendants ignored it." (ECF No. 130 at

3   9).

4           To maintain a cause of action based on prison medical treatment pursuant to 42

5   U.S.C. § 1983, an inmate must show "deliberate indifference to serious medical needs."

6   *See Jett*, 439 F.3d at1096 (citing *Estelle*, 429 U.S. at 104). "Prison officials are

7   deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay,

8   or intentionally interfere with medical treatment." *Lopez*, 203 F.3d at 1131 (citing

9   *Estelle*, 429 U.S. at 104). "A prison official is deliberately indifferent to a substantial

10  risk of serious harm to inmates if that official is subjectively aware of the risk and does

11  nothing to prevent the resulting harm." *Jeffers*, 267 F.3d at 913 (citing *Farmer*, 511

12  U.S. at 828-29). "Deliberate indifference requires that an official both be aware of facts

13  from which the inference could be drawn that a substantial risk of serious harm exists,

14  and he must also draw the inference." *Id.*

15          **1.  Defendant Ayala**

16          The SAC alleges that doctors released Bernard Victorianne from Medical so he

17  could be placed in solitary confinement. (ECF No. 82 ¶¶42-43). The SAC alleges that

18  Defendant Ayala decided to place Bernard Victorianne in administrative segregation

19  and he was subsequently transported to an administrative segregation cell on a gurney.

20  *Id.* ¶ 44. The SAC alleges that "Defendants knew that Bernard Victorianne had

21  ingested methamphetamine and that he was to receive 'prompt medical attention' per

22  Alvarado Hospital's discharge records if he exhibited agitation, anxiety, seizure, excess

23  drowsiness or inability to be awakened." *Id.* ¶ 122. The SAC alleges that "despite

24  obvious signs of overdose, Defendant Ayala approved Bernard's placement in solitary

25  confinement." *Id.* ¶ 123. The SAC alleges sufficient facts to infer that Defendant Ayala

26  acted with deliberate indifference to Bernard Victorianne's medical needs when he

27  approved Bernard Victorianne's placement in solitary confinement with knowledge of

28  Bernard Victorianne's serious medical risks.

### 2. Defendants Flores, Lien, and Russell

The SAC alleges that "Defendants knew that Bernard Victorianne had ingested methamphetamine and that he was to receive 'prompt medical attention' per Alvarado Hospital's discharge records if he exhibited agitation, anxiety, seizure, excess drowsiness or inability to be awakened." *Id.* ¶ 122.  The SAC alleges that Defendants Flores, Lien, and Russell were deliberately indifferent to Bernard Victorianne's serious medical needs because they each inadequately conducted "Soft Count" checks of Bernard Victorianne.  The SAC alleges that "Soft Count" policy requires deputies to verify an inmates well-being through verbal or physical acknowledgment from the inmate. *Id.* ¶ 55.  The SAC alleges that Defendants Flores, Lien, and Russell each conducted "Soft Counts" that violated policy because they walked past Bernard Victorianne's cell without looking in or looked in Bernard Victorianne's cell for several seconds before walking away. *Id.* ¶¶ 45-49, 50, 52-53.  The SAC alleges that Bernard Victorianne was found dead in his cell the following morning.  *Id.* ¶ 61.  The SAC alleges sufficient facts to infer that Defendants Flores, Lien, and Russell had knowledge of Bernard Victorianne's serious medical needs and delayed or interfered with Bernard Victorianne's medical treatment by failing to adequately verify his well-being.

### 3. Defendant Almazan

The SAC alleges that "Defendants knew that Bernard Victorianne had ingested methamphetamine and that he was to receive 'prompt medical attention' per Alvarado Hospital's discharge records if he exhibited agitation, anxiety, seizure, excess drowsiness or inability to be awakened." *Id.* ¶ 122.  The SAC alleges that during Defendant Almazan's "Soft Count" check of Bernard Victorianne's cell, Defendant Almazan walked past the cell door "without breaking stride" and "glanced into Bernard's cell as he walked by." *Id.* ¶ 54.  The SAC alleges that Bernard Victorianne was found dead in his cell the following morning. *Id.* ¶ 61.  The SAC alleges sufficient facts to infer that Defendant Almazan had knowledge of Bernard Victorianne's serious medical needs and delayed or interfered with Bernard Victorianne's medical treatment

1  by failing to adequately conduct checks on his well-being.

2           **4.  Defendants Garcia and Gallegos**

3        The SAC alleges that during a "Hard Count" check on Bernard Victorianne's

4  cell, Defendant Garcia "walk[ed] past Bernard's cell without stopping; without breaking

5  stride; taking approximately 1 second to walk past the cell door while glancing toward

6  the windowed door of the cell." *Id.* ¶ 56.  The SAC alleges that "during a 'Hard Count,'

7  deputies are to use a Bar Code Reader to scan each inmate; confirm the inmate's name,

8  booking number and wristband photo.  The deputy should check the inmate's overall

9  condition . . . ." *Id.* ¶ 57.  The SAC alleges that Defendant Garcia entered Bernard

10  Victorianne's cell with Defendant Gallegos to serve a meal. *Id.* ¶ 58.  The SAC alleges

11  that "Gallegos [told] Garcia, 'The guy's not moving.'  Garcia responded, 'Okay, he

12  twitched' at which point Garcia left the tray of food, closed the door and left." *Id.*  The

13  SAC alleges that Defendants Garcia and Gallegos "made no attempts to check Bernard

14  Victorianne's vital signs or pulse" and never alerted medical staff. *Id.* ¶¶ 59-60.  The

15  SAC alleges that three hours after Defendants Garcia and Gallegos left Bernard

16  Victorianne's cell, deputies found Bernard Victorianne dead. *Id.* ¶ 61.  The SAC

17  alleges sufficient facts to infer that Defendants Garcia and Gallegos had knowledge of

18  Bernard Victorianne's serious medical needs and delayed, denied, or obstructed medical

19  treatment.

20        The motion to dismiss the claim for deliberate indifference to serious medical

21  needs against Defendants Ayala, Flores, Lien, Russell, Almazan, Garcia, and Gallegos

22  is denied.

23       **B.  Wrongful Death Under 42 U.S.C. § 1983**

24        Defendants contend that Plaintiffs' wrongful death claim under 42 U.S.C. § 1983

25  is duplicative of the claim for deliberate indifference to serious medical needs.  Plaintiff

26  does not respond to this contention.

27        A valid claim under 42 U.S.C. § 1983 must allege a violation of a right secured

28  by the Constitution and the laws of the United States. *West v. Atkins*, 487 U.S. 42, 48

(1988).  Plaintiff Estate of Bernard Victorianne alleges claims of deliberate indifference to serious medical needs and wrongful death under 42 U.S.C. § 1983, premised upon alleged violations of Bernard Victorianne's right to be free from cruel and unusual punishment and loss of life without due process.  The claim for wrongful death pursuant to § 1983 relies on allegations that the Defendants "failed to render aid or transport [Bernard Victorianne] to the hospital."  (ECF No. 82 at 26).  Plaintiffs do not allege facts to support the wrongful death claim under § 1983 that distinguish it as a separate cause of action from the claim for deliberate indifference to serious medical needs.  The motion to dismiss the claim by the Estate of Bernard Victorianne against Defendants Almazan, Flores, Lien, Russell, Garcia, and Gallegos for wrongful death pursuant to 42 U.S.C. § 1983 is granted.

### C.  Right of Association Under 42 U.S.C. § 1983

Defendants contend that the claims for loss of right of association pursuant to 42 U.S.C. § 1983 should be dismissed because "[n]o facts are alleged that any of the detention deputies knew Victorianne had consumed methamphetamine or consumed the drug in toxic quantities, and disregarded the risk attendant to that condition so as to have delayed, denied or obstructed Victorianne's access to medical care and thus caused his death." (ECF No. 116-1 at 4).  Plaintiffs contend that they have sufficiently alleged "that Defendants were aware of Bernard's serious medical needs and that, despite their knowledge, they consciously neglected over a considerable period of time to give him necessary medical treatment." (ECF No. 130 at 9).  Plaintiffs contend that "Defendants, all of whom saw Bernard, had an opportunity to think about the matter, i.e. deliberate." *Id.*

"Parents and children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child or parent through official conduct." *Lemire v. California Dept. Of Corrections and Rehabilitation*, 726 F.3d 1062, 1075 (9th Cir. 2013).  "Only official conduct that shocks the conscience is cognizable as a due process violation." *Id.*

(citations and internal quotation marks omitted).   "A prison official's deliberately indifferent conduct will generally shock the conscience so as long as the prison official had time to deliberate before acting or failing to act in a deliberately indifferent manner." *Id.*

The SAC alleges sufficient facts to infer that Defendant deputies knew that Bernard Victorianne had consumed methamphetamine and by disregarding the risk, delayed, denied, or obstructed Victorianne's access to medical care and thus caused his death.  The SAC alleges sufficient facts to infer that each of the Defendant deputies had time to deliberate before acting or failing to act.  *See Lemire*, 726 F.3d at 1075.  The motion to dismiss the claims for violation of the right of association pursuant to 42 U.S.C. § 1983 against Defendants Almazan, Flores, Lien, Russell, Garcia, and Gallegos is denied.

### D.  Tort Claims for Negligence and Wrongful Death (CCP 377.60)

The Court has determined that the SAC has alleged sufficient facts to support a finding that either (1) Plaintiffs  claim was timely filed under the CTCA, or (2) equitable estoppel prevents Defendants from raising Plaintiffs' failure to timely file a claim because the delay was caused by Defendants' own misconduct.

Defendants contend that these claims should be dismissed because "there is no factual allegation that the cell checks were the proximate cause of Victorianne's death." (ECF No. 116-1 at 7-8).   Plaintiffs contend that the facts alleged in the SAC demonstrate proximate cause.

The SAC alleges that Defendant deputies had a duty to verify the well-being of Bernard Victorianne by obtaining verbal or physical acknowledgment by the inmate while conducting "Soft Counts" and "Hard Counts."  The SAC alleges that this duty was breached by the Defendants' cursory glances into Bernard Victorianne's cell without verifying his well-being.  The SAC alleges that Defendant Ayala placed Bernard Victorianne in administrative segregation instead of transporting him to the hospital.  The SAC alleges that "as a direct and proximate result of all Defendants'

1   conduct, Bernard Victorianne experienced physical pain, severe emotional distress, and

2   mental anguish for days, as well as loss of life." (ECF No. 82 at 148). The SAC alleges

3   that Defendants failed to render medical care or transport Bernard Victorianne to the

4   hospital. *Id.* ¶¶ 282-283. The SAC alleges sufficient facts to support an inference that

5   Defendants were negligent and that Defendants' negligence was the proximate cause

6   of Bernard Victorianne's death. The motion to dismiss Plaintiff's claims for negligence

7   and wrongful death (CCP 377.60 *et seq.*) against Defendants Ayala, Flores, Lien,

8   Russell, Almazan, Garcia, and Gallegos is denied.

9   **E.  Motion to Strike References to the Estate of Bernard Victorianne**

10   The Court has determined that references to the "Estate of Bernard Victorianne"

11   in the SAC do not meet the standard for striking material from a pleading under Federal

12   Rule of Civil Procedure 12(f). The motion to strike references to the "Estate of Bernard

13   Victorianne" is denied.

14   **F.  Conclusion**

15   The motion to dismiss the claim of deliberate indifference to serious medical

16   needs against Defendants Ayala, Flores, Lien, Russell, Almazan, Garcia, and Gallegos

17   is denied. The motion to dismiss the claim by the Estate of Bernard Victorianne agianst

18   Defendants Almazan, Flores, Lien, Russell, Garcia, and Gallegos for wrongful death

19   pursuant to 42 U.S.C. § 1983 is granted. The motion to dismiss the claims for violation

20   of the right of association pursuant to 42 U.S.C. § 1983 against Defendants Almazan,

21   Flores, Lien, Russell, Garcia, and Gallegos is denied. The motion to dismiss Plaintiff's

22   claims for negligence and wrongful death (CCP 377.60 *et seq.*) against Defendants

23   Ayala, Flores, Lien, Russell, Almazan, Garcia, and Gallegos is denied. The motion to

24   strike references to the "Estate of Bernard Victorianne" is denied.

25   **VIII.  Defendants Bell, Longno, and Roque's Motion to Dismiss (ECF No. 118),**

26   **Defendant Sivilay's Motion to Dismiss (ECF No. 6), Defendant Nuhic's Motion to**

27   **Dismiss (ECF No. 101), Defendant Richter's Motion to Dismiss (ECF No. 122), and**

28   **Defendant Huang's Motion to Dismiss (ECF Nos. 125, 126)**

Plaintiffs allege the following causes of action against Defendant nurses, Longno, Bell, Roque, and Sivilay and Defendant doctors Nuhic, Richter, and Huang: (1) Deliberate Indifference to Serious Medical Needs under 42 U.S.C. § 1983; (2) Wrongful Death under 42 U.S.C. § 1983; (3) Right of Association under 42 U.S.C. § 1983; (8) Wrongful Death, CCP 377.60; and (9) Negligence.  Plaintiffs also allege a claim against Defendant Nuhic for violation of California Civil Code § 521.1.

### A.  Deliberate Indifference to Serious Medical Needs

Defendant nurses contend that "there are no facts alleged as to how each [Defendant nurse] could possibly know that [Bernard Victorianne] was in a week-long dying process when there are no facts stated that each knew what drug, if any, he had consumed, or its quantity or its rate of toxic metabolization such that they would know he would die a week later, or that the physicians in attendance were not delivering the appropriate care to Victorianne."  (ECF No. 106-1 at 5; ECF No. 118-1 at 6).  Defendant nurses contend that "there are no factual allegations regarding a causal connection between [the Defendant nurse's] observations and Victorianne's death." *Id.* Plaintiffs contend that the SAC alleges sufficient facts to support a finding that Defendant nurses Bell, Longno, Roque, and Sivilay denied, delayed, and/or intentionally interfered with Bernard Victorianne's medical treatment.

"Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay, or intentionally interfere with medical treatment." *Lopez*, 203 F.3d at 1131 (citing *Estelle*, 429 U.S. at 104).  "A prison official is deliberately indifferent to a substantial risk of serious harm to inmates if that official is subjectively aware of the risk and does nothing to prevent the resulting harm." *Jeffers*, 267 F.3d at 913 (citing *Farmer*, 511 U.S. at 828-29).  "[M]ere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eight Amendment rights." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (*rev'd on other grounds*, *WMX Tech., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997)).  "Medical malpractice does not become a constitutional violation merely because the victim is a

1   prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions

2   sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.*

3        The SAC alleges that

4        The discharge document from Alvarado Hospital, which became a part of
         the Central Jail record for Bernard Victorianne, advised: 'GET PROMPT
5        MEDICAL ATTENTION if any of the following occur: agitation, anxiety,
         unable to sleep; unintended weight loss; seizure; chest pain or shortness
6        of breath; unexplained fever; excess drowsiness or inability to be
         awakened; slow breathing; shortness of breath; redness, swelling or
7        tenderness.

8   (ECF No. 82 ¶ 21). The SAC alleges that "On September 13, 2012, . . . Bernard was

9   examined by medical staff. He told the staff that he had come from the hospital after

10  ingesting a baggie of methamphetamine." *Id.* ¶ 22.

11        **1. Defendant Longno**

12        The SAC alleges that "Defendant Aileen Longno noted in Bernard's medical

13  records that he had ingested meth and noted that Bernard had alteration in thought

14  process/content, ineffective health maintenance, risk for imbalance fluid volume." *Id.*

15  ¶ 23. The SAC alleges that Defendant Longno monitored Bernard in a "Sobering Cell"

16  on September 13, 2012. *Id.* ¶ 25. The SAC alleges that "[i]t was noted by the

17  defendant nurses that Bernard Victorianne was intoxicated for drug use and that he

18  admitted being under the influence of street drugs." *Id.* The SAC alleges that

19  Defendant Longno noted in Bernard Victorianne's medical chart that his bood pressure

20  and pulse were "abnormally high vital signs." *Id.* The SAC alleges that "[i]t was noted

21  that he was 'standing by the door, talking, mumbling, appeared to be responding to

22  internal stimuli . . .' 'occasionally yelling' and was assessed to have a 'potential for

23  injury.'" *Id.* ¶ 26.

24        The SAC alleges that Defendant Longno was aware of the serious risks to

25  Bernard Victorianne's health caused by the baggie of meth he ingested and alleges that

26  Defendant Longno observed Bernard Victorianne exhibiting agitated and anxious

27  behaviors. Bernard Victorianne's jail record noted that if Bernard Victorianne exhibited

28  these behaviors, prompt medical attention was necessary. The facts alleged in the SAC

are sufficient to support an inference that Defendant Longno interfered with, delayed, or denied Bernard Victorianne's access to medical treatment. The motion to dismiss Plaintiff's claim against Defendant Longno for deliberate indifference to serious medical needs is denied.

## 2. Defendant Sivilay

The SAC alleges that Defendant Sivilay monitored Bernard in a "Sobering Cell" on September 13, 2012. *Id.* ¶ 25. The SAC alleges that Defendant Sivilay took Bernard Victorianne's vitals on September 13, 2012 and his pulse and blood pressure were abnormally high. *Id.* ¶ 27. The SAC alleges that "Defendant nurse Sivilay cleared Bernard Victorianne to go to mainline" despite Bernard Victorianne's " abnormally high vital signs, . . . auditory hallucinations, . . . an assessment of having an alteration in thought process, . . . an assessment of having a 'potentional for injury' and with notes in Bernard Victorianne's medical record that he was standing by the door of the "Sobering Cell", talking, mumbling, appeared to be responding to internal stimuli, and occasionally yelling . . . ." *Id.* ¶¶26-27.

The SAC alleges that all medical staff were aware of the serious risks to Bernard Victorianne's health caused by the baggie of meth he ingested. The facts alleged in the SAC are sufficient to support an inference that Defendant Sivilay either observed Bernard Victorianne exhibiting agitated and anxious behaviors or was aware of these behaviors upon reviewing his medical records. Bernard Victorianne's jail record noted that if Bernard Victorianne exhibited these behaviors, prompt medical attention was necessary. The facts alleged in the SAC are sufficient to support an inference that Defendant Sivilay interfered with, delayed, or denied Bernard Victorianne's access to medical treatment. The motion to dismiss Plaintiff's claim against Defendant Sivilay for deliberate indifference to serious medical needs is denied.

## 3. Defendant Roque

The SAC alleges that "[o]n September 14, 2012, Defendant Corazon Roque noted in Bernard Victorianne's medical chart, specifically on a standardized Psychiatric

1   Outpatient Evaluation Form, that he had a history of 'Illicit Drug Use' and hand wrote
2   'Meth cleared from sober(ing) cell 9/13/12." *Id.* ¶ 29.  The SAC alleges that Defendant
3   Roque wrote, "Brought here from 4th floor for psych eval, alert and oriented 3x, in no
4   acute distress, ambulatory, denies psych problem . . . per floor deputy I/P (inmate
5   patient) exhibiting bizarre behavior, agitated, irritable with difficulty following
6   directions." *Id.*  The SAC alleges that "[o]n the standardized form Defendant Roque
7   placed circles around the words 'Angry,' 'Irritable,' and 'Paranoia.'" *Id.* The SAC
8   alleges that the psychiatric evaluation form indicated that Bernard Victorianne had no
9   history of psychological issues.  *Id.* ¶ 30.  The SAC alleges that "[o]n September 18 .
10  . . Defendant nurse Roque noted that Bernard was hyper-verbal, talking nonsense and
11  appeared to be hallucinating." *Id.* ¶¶ 36, 38.  Bernard Victorianne died on the morning
12  of September 19, 2012.  *Id.* ¶ 61.

13       The SAC alleges that all medical staff were aware of the serious risks to Bernard
14  Victorianne's health caused by the baggie of meth he ingested.  The facts alleged in the
15  SAC are sufficient to support an inference that Defendant Roque either observed
16  Bernard Victorianne exhibiting agitated and anxious behaviors and signs of
17  methamphetamine overdose or was aware of these symptoms upon reviewing his
18  medical records.  Bernard Victorianne's jail record noted that if Bernard Victorianne
19  exhibited these behaviors, prompt medical attention was necessary.  The facts alleged
20  in the SAC are sufficient to support an inference that Defendant Roque interfered with,
21  delayed, or denied Bernard Victorianne's access to medical treatment.  The motion to
22  dismiss Plaintiffs' claim against Defendant Roque for deliberate indifference to serious
23  medical needs is denied.

24                    **4. Defendant Bell**
25       The SAC alleges that on September 18, 2012, "Bernard told [Defendant Bell] that
26  he was 'on fire; he was burning and something was burning his insides.'  Bernard kept
27  asking Defendant Bell for water.  Bernard reached to his stomach several times and
28  stated to Defendant Bell, 'Pull it out - get it out of me.'" *Id.* ¶ 40.  The SAC alleges that

"Defendants Huang and Bell gave Bernard Haldol, Ativan, and Benadryl.  Defendants Huang and Bell took no further action."  *Id.* ¶ 41.  Bernard Victorianne died the following morning.  *Id.* ¶ 61.

The SAC alleges that all medical staff were aware of the serious risks to Bernard Victorianne's health caused by the baggie of meth he ingested.  The facts alleged in the SAC are sufficient to support a finding that Defendant Bell either observed Bernard Victorianne exhibiting agitated and anxious behaviors and signs of methamphetamine overdose or was aware of these symptoms upon reviewing his medical records.  Bernard Victorianne's jail record noted that if Bernard Victorianne exhibited these behaviors, prompt medical attention was necessary.  The facts alleged in the SAC are sufficient to support an inference that Defendant Bell interfered with, delayed, or denied Bernard Victorianne's access to appropriate medical treatment.   The motion to dismiss Plaintiffs' claim against Defendant Bell for deliberate indifference to serious medical needs is denied.

### 5.  Defendant Richter

Defendant Richter contends that "Plaintiffs have failed to allege facts sufficient to establish that there was any harm caused by Dr. Richter's treatment of Bernard" or that "Dr. Richter purposefully failed to respond to Bernard's medical needs."   (ECF No. 122-1 at 8-9).  Defendant Richter contends that Bernard Victorianne was evaluated by other medical professions after he was examined by Defendant Richter, therefore no causal relationship has been established between Defendant Richter's care and Bernard Victorianne's death.  *Id.* at 9.  Defendant Richter contends that he was called to treat Bernard Victorianne's psychiatric condition, not medical condition, on September 16, 2012, therefore had no reason to suspect that a medical basis for Bernard Victorianne's symptoms, such as methamphetamine overdose, had been ruled out.  (ECF No. 133 at 3).

Plaintiffs contend that Defendant Richter was aware, based on Bernard Victorianne's medical records, of the obvious and substantial risk of harm to Bernard

Victorianne.  (ECF No. 132 at 6).  Plaintiffs contend that Defendant Richter failed to treat Bernard Victorianne for ingesting methamphetamine or transfer him to a hospital and, as a result, Bernard Victorianne died.  *Id.*

The SAC alleges

> On September 16, 2012, at 10:39 a.m., approximately 4 days after Bernard Victorianne ingested methamphetamine, Defendant Richter visited Bernard's cell to conduct a psychological evaluation.  Defendant Richter noted that Bernard Victorianne was "responding to internal stimuli, while aggressively talking with the wall."  Richter noted that the room appeared highly disorganized.  Richter noted that an attempt to speak to Bernard Victorianne should be made the next day.  Defendant Richter noted "f/u with this patient tomorrow and likely consider transfer."  Defendant Richter took no further action.

(ECF No. 82 ¶ 34).  The SAC alleges that all medical staff were aware of the serious risks to Bernard Victorianne's health caused by the baggie of meth he ingested.  The facts alleged in the SAC are sufficient to support an inference that Defendant Richter observed Bernard Victorianne exhibiting agitated and anxious behaviors.  Bernard Victorianne's jail record noted that if Bernard Victorianne exhibited these behaviors, prompt medical attention was necessary.  The facts alleged in the SAC are sufficient to support an inference that Defendant Richter interfered with, delayed, or denied Bernard Victorianne's access to medical treatment.  The motion to dismiss Plaintiffs' claim against Defendant Richter for deliberate indifference to serious medical needs is denied.

### 6. Defendant Nuhic

Defendant Nuhic contends that "Dr. Nuhic evaluated, diagnosed and prescribed medication consistent with his diagnosis to Bernard."  (ECF No. 101-1 at 10).  Defendant Nuhic contends that Plaintiffs do not allege that Defendant Nuhic was aware that Bernard Victorianne had ingested methamphetamine, that Defendant Nuhic was deliberately indifferent to Bernard Victorianne, or that Defendant Nuhic's treatment caused harm to Bernard Victorianne.  *Id.*

Plaintiffs contend that "[r]ather than reading Bernard Victorianne's chart and report that Bernard ingested drugs and that Bernard was to return to the hospital immediately if he exhibited symptoms of overdose, Defendant Nuhic prescribed three

powerful drugs that are used for three separate mental disorders . . . ." (ECF No. 111 at 14).   Plaintiffs contend that "Defendant Nuhic treated Bernard Victorianne for allergies, anxiety, depression, and schizophremia.   The fact that Defendant Nuhic drugged Bernard Victorianne for conditions Bernard did not suffer from evidences deliberate indifference." *Id.*

> The SAC alleges
>
> On September 17, 2012, at 4:40 p.m., approximately 5 days after Bernard Victorianne ingested methamphetamine, Defendant Nuhic visited Bernard's cell for a psychological evaluation.   Nuhic observed that Bernard appeared to be 'internally preoccupied' talking to himself while lying on the cell floor. Defendant Nuhic prescribed Ativan, Benadryl, and Haldol.   Defendant Nuhic scheduled a follow up in 2-3 days.   Nuhic took no further action.

*Id.* ¶ 35.   Bernard Victorianne died on the morning of September 19, 2012.   *Id.* ¶ 61.

The SAC alleges that all medical staff were aware of the serious risks to Bernard Victorianne's health caused by the baggie of meth he ingested.   The facts alleged in the SAC are sufficient to support an inference that Defendant Nuhic observed Bernard Victorianne exhibiting agitated and anxious behaviors or was aware of these behaviors upon reviewing his medical records.   Bernard Victorianne's jail record noted that if Bernard Victorianne exhibited these behaviors, prompt medical attention was necessary. The facts alleged in the SAC are sufficient to support an inference that Defendant Nuhic interfered with, delayed, or denied Bernard Victorianne's access to medical treatment. The motion to dismiss Plaintiffs' claim against Defendant Nuhic for deliberate indifference to serious medical needs is denied.

### 7.  Defendant Huang

Defendant Huang contends that "[t]here are no allegations that Dr. Huang came to the conclusion that Bernard was suffering from methamphetamine toxicity." (ECF No. 125-1 at 10).   Defendant Huang contends that because he did not conclude that Bernard was suffering from a methamphetamine overdose, Plaintiffs cannot establish that Defendant Huang was deliberately indifferent to Bernard Victorianne's medical needs and cannot establish causation between Defendant Huang's treatment and

1    Bernard Victorianne's death.  *Id.* at 11.

2           Plaintiffs contend that "Plaintiffs have alleged the obviousness of the risk through

3    extensive medical documentation of Bernard's ingestion of methamphetamine."  (ECF

4    No. 139 at 7).  Plaintiffs contend that "Defendant Huang chose to ignore the warnings

5    [in Bernard Victorianne's medical chart]; prescribe unnecessary medications; and sent

6    Bernard on a stretcher to segregation where no one would medically monitor him."  *Id.*

7           The SAC alleges that on September 18, 2012, Defendant Huang examined

8    Bernard Victorianne after he was transferred to Medical because he was in medical

9    distress.  (ECF No. 82 ¶¶ 36, 39).  The SAC alleges that "Defendant Huang reviewed

10   Bernard's medical records and determined that his behavior might be consistent with

11   seizures.  Huang noted that Bernard was suffering from the effects of stimulant or

12   hallucinogen; possibly bath salts.  Huang noted that Bernard was scared and agitated."

13   *Id.* ¶ 39.  The SAC alleges that "Bernard told Defendants Huang and Bell that he was

14   'on fire . . . something was burning his insides.'"  *Id.* ¶ 40.  The SAC alleges that

15   "Defendants Huang and Bell gave Bernard Haldol, Ativan, and Benadryl.  Defendants

16   Huang and Bell took no further action."  *Id.* ¶ 41.  The SAC alleges that Defendant

17   Huang released Bernard Victorianne from Medical so he could be placed in solitary

18   confinement.  *Id.* ¶ 42.  Bernard Victorianne died the following morning.  *Id.* ¶ 61.

19          The SAC alleges that all medical staff were aware of the serious risks to Bernard

20   Victorianne's health caused by the baggie of meth he ingested.  The facts alleged in the

21   SAC are sufficient to support an inference that Defendant Huang either observed

22   Bernard Victorianne exhibiting agitated and anxious behaviors and signs of

23   methamphetamine overdose or was aware of these symptoms upon reviewing his

24   medical records.  Bernard Victorianne's jail record noted that if Bernard Victorianne

25   exhibited these behaviors, prompt medical attention was necessary.  The facts alleged

26   in the SAC are sufficient to support an inference that Defendant Huang interfered with,

27   delayed, or denied Bernard Victorianne's access to medical treatment.  The motion to

28   dismiss Plaintiffs' claim against Defendant Huang for deliberate indifference to serious

1  medical needs is denied.

2  **B.  Wrongful Death Under 42 U.S.C. § 1983**

3      Plaintiff Estate of Bernard Victorianne's claim for wrongful death pursuant to 42

4  U.S.C. § 1983 is based on alleged violations of Bernard Victorianne's rights to be free

5  from cruel and unusual punishment and loss of life without due process as a result of

6  Defendants' failure to render appropriate medical care.  The Court has determined that

7  Plaintiffs do not allege facts to support the wrongful death claim under § 1983 as a

8  separate cause of action from the claim for deliberate indifference to serious medical

9  needs.  The motion to dismiss Plaintiff's claim for wrongful death pursuant to 42 U.S.C.

10  § 1983 against Defendants Longno, Sivilay, Roque, Bell, Richter, Nuhic, and Huang

11  is granted.

12  **C.  Right of Association Under 42 U.S.C § 1983**

13      The Court has determined that the SAC alleges sufficient facts to infer that the

14  Defendant nurses and doctors knew that Victorianne had consumed methamphetamine

15  and by disregarding the risk, delayed, denied, or obstructed Victorianne's access to

16  medical care and thus caused his death.  The SAC alleges sufficient facts to infer that

17  each of the Defendant nurses and doctors had time to deliberate before acting or failing

18  to act in a deliberately indifferent manner.  *See Lemire*, 726 F.3d at 1075 ("Parents and

19  children may assert Fourteenth Amendment substantive due process claims if they are

20  deprived of their liberty interest in the companionship and society of their child or

21  parent through official conduct.").  The motion to dismiss Plaintiff's claim for violation

22  of the right of association pursuant to 42 U.S.C. § 1983 is denied.

23  **D.  Tort Claims for Negligence and Wrongful Death (CCP 377.60)**

24      The Court has determined that the SAC has alleged sufficient facts to support a

25  finding that either (1) Plaintiffs  claim was timely filed under the CTCA, or (2)

26  equitable estoppel prevents Defendants from raising Plaintiffs' failure to timely file a

27  claim because the delay was caused by Defendants' own misconduct.

28      Defendants contend that the allegations in the SAC are insufficient to state a

claim against them for wrongful death or negligence because Plaintiffs fail to allege that Defendants' conduct constituted a failure to summon or render care that was the proximate cause of Bernard Victorianne's death. Defendants contend that the SAC does not allege any negligent action or omission on behalf of the Defendants. Defendants contend that the SAC does not allege facts from which an inference can be drawn that the Defendants' actions were causally related to Bernard Victorianne's death. Plaintiffs contend that Defendants' negligent actions in treating or delaying treatment of Bernard Victorianne are concurring causes of the injury and are therefore regarded as the legal cause of the injury.

"'Professional negligence' means a negligent act or omission to act by a health care provider in the rendering of professional services, where the act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed . . . ." Cal. C.C. P. § 340.5. The elements of a statutory claim for wrongful death under California Code of Civil Procedure § 377.60 include "(1) a wrongful act or neglect on the part of one or more persons that (2) causes (3) the death of another person . . . ." *Norgart*, 981 P.2d at 83.

The SAC alleges that Defendants had a duty to act with ordinary care and prudence so as not to cause harm or injury to Bernard Victorianne. (ECF No. 81 ¶ 281). The SAC alleges that Defendants Longno, Sivilay, Roque, Bell, Richter, Nuhic, and Huang knew or should have known that Bernard Victorianne exhibited symptoms of a methamphetamine overdose and failed to provide appropriate medical care or transfer Bernard Victorianne to a hospital. *Id.* ¶¶ 282-283. The SAC alleges that Defendants' failure to provide or summon medical care was the proximate cause of Bernard Victorianne's suffering and death. *Id.* ¶¶ 300-301. The SAC alleges that Defendants' negligent conduct was the proximate cause of Plaintiffs Zelda Victorianne and Bernard Victorianne III's emotional suffering and loss of their son. *Id.* ¶ 302. The SAC alleges sufficient facts to support an inference that Defendants Longno, Sivilay, Roque, Bell,

Richter, Nuhic, and Huang were negligent and that Defendants' negligence was the proximate cause of Plaintiffs' injuries. The motions to dismiss Plaintiff's claims of negligence and wrongful death (CCP 377.60) against Defendants Longno, Sivilay, Roque, Bell, Richter, Nuhic, and Huang are denied.

**C. Motion to Strike References to the Estate of Bernard Victorianne**

Defendants Bell, Longno, Roque, and Sivilay move the Court to strike references in the SAC to the "Estate of Bernard Victorianne." The Court has determined that references to the "Estate of Bernard Victorianne" in the SAC do not meet the standard for striking material from a pleading under Federal Rule of Civil Procedure 12(f). The motion to strike references to the "Estate of Bernard Victorianne" is denied.

**D. Conclusion**

The motion to dismiss the claim by the Estate of Bernard Victorianne for deliberate indifference to serious medical needs against Defendants Bell, Longno, Roque, Sivilay, Richter, Nuhic, and Huang is denied. The motion to dismiss the claim by the Estate of Bernard Victorianne for wrongful death pursuant to 42 U.S.C. § 1983 against Defendants Longno, Sivilay, Roque, Bell, Richter, Nuhic, and Huang is granted. The motion to dismiss the claim by Plaintiffs Zelda Victorianne and Bernard Victorianne for violation of the right of association against Defendants Bell, Longno, Roque, Sivilay, Richter, Nuhic, and Huang is denied. The motions to dismiss Plaintiff's claims of negligence and wrongful death (CCP 377.60 *et seq.*) against Defendants Longno, Sivilay, Roque, Bell, Richter, Nuhic, and Huang are denied. The motion to strike references to the "Estate of Bernard Victorianne" is denied.

## IX. Conclusion

IT IS HEREBY ORDERED that the Motion to Dismiss and to Strike Parts of the Second Amended Complaint (ECF No. 84) filed by Defendants William Gore, Leslee Hall, and the County of San Diego is granted as to Plaintiffs' claims against Defendants Gore, Hall, and the County of San Diego for negligent hiring, training, and supervision and negligent investigation, is granted as to punitive damages against the County of San

Diego and is otherwise denied.

IT IS FURTHER ORDERED that the Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 101) filed by Defendant Zvjezdan Nuhic is granted as to the Estate of Bernard Victorianne's claim for wrongful death under 42 U.S.C. § 1983 and is otherwise denied.

IT IS FURTHER ORDERED that the Motion to Dismiss and to Strike Parts of the Second Amended Complaint (ECF No. 102) filed by Defendant Earl Goldstein, M.D. is granted as to Zelda Victorianne and Bernard Victorianne III's claims of failure to investigate and otherwise denied.

IT IS FURTHER ORDERED that the Motion to Dismiss and to Strike Parts of the Second Amended Complaint (ECF No. 106) filed by Defendant Rebecca Sivilay is granted as to the Estate of Bernard Victorianne's claim for wrongful death under 42 U.S.C. § 1983 and is otherwise denied.

IT IS FURTHER ORDERED that the Motion to Dismiss and to Strike Parts of the Second Amended Complaint (ECF No. 107) filed by Defendant Patrick Gardner is granted as to the Estate of Bernard Victorianne's claim for failure to investigate, is granted as to Plaintiff's negligence claim, and is otherwise denied.

IT IS FURTHER ORDERED that the Motion to Dismiss and to Strike Parts of the Second Amended Complaint (ECF No. 116) filed by Defendants Guynemer Almazan, Arthur Ayala, Ernesto Flores, Laudente Gallegos, Edmundo Garcia, Tony Lien, and Keith Russell is granted as to the Estate of Bernard Victorianne's claim for wrongful death under 42 U.S.C. § 1983 and is otherwise denied.

IT IS FURTHER ORDERED that the Motion to Dismiss and to Strike Parts of the Second Amended Complaint (ECF No. 117) filed by Defendant Bruce Leicht is granted as to Zelda Victorianne and Bernard Victorianne III's claims of failure to investigate and otherwise denied.

IT IS FURTHER ORDERED that the Motion to Dismiss and to Strike Parts of the Second Amended Complaint (ECF No. 118) filed by Defendants Deborah Bell,

Aileen Longno, and Corazon Roque is granted as to the Estate of Bernard Victorianne's claim for wrongful death under 42 U.S.C. § 1983 and is otherwise denied.

IT IS FURTHER ORDERED that the Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 122) filed by Kenneth Richter is granted as to the Estate of Bernard Victorianne's claim for wrongful death under 42 U.S.C. § 1983 and is otherwise denied.

IT IS FURTHER ORDERED that the Motions to Dismiss Plaintiffs' Second Amended Complaint (ECF Nos. 125, 126) filed by Defendant Peter Huang are granted as to the Estate of Bernard Victorianne's claim for wrongful death under 42 U.S.C. § 1983 and are otherwise denied.

DATED:  February 3, 2016

**WILLIAM Q. HAYES**
United States District Judge